Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, MAUI COUNTY | ) ) ) ) ) | |
| Defendants | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, and HAWAII FIREARMS COALITION, by and through their undersigned counsel, and complains of the Defendants as follows:

## I

## PARTIES

**Plaintiffs**

1.  Plaintiff Jason Wolford (Jason Wolford) is a natural person, an adult male resident of the State of Hawaii and resides in Maui County and is a citizen of the United States. But for the laws challenged in this lawsuit, he would carry in all the places discussed in this lawsuit;

2.  Plaintiff Alison Wolford (Alison Wolford) is a natural person, an adult female resident of the State of Hawaii and resides in Maui County and is a citizen of the United States. But for the laws challenged in this lawsuit, she would carry in all the places discussed in this lawsuit;

3.  Plaintiff Atom Kasprzycki (Kasprzycki) is a natural person, an adult male resident of the State of Hawaii and resides in Maui county and is a citizen of the United States. But for the laws challenged in this lawsuit, he would carry in all the places discussed in this lawsuit;

4.  Plaintiff Hawaii Firearms Coalition (HIFICO) is a member

2

driven organization incorporated under the laws of the State of Hawaii with its principal place of business in Honolulu, Hawaii, Hawaii Firearms Coalition promotes legislative and legal action, as well as research, publishing, and advocacy, in support of people's civil liberties. Hawaii Firearms Coalition litigates firearm-regulation cases, and it has consistently advocated for a principled interpretation of the United States Constitution to prevent government from violating the basic civil rights of its citizens. Members of HFC have provided informed analysis in a variety of firearm related cases, including *Roberts vs. City and County of Honolulu*, Civ. No. 15-00467 ACK-RLP, and *Roberts vs. Ballard*, et al., Civ. No. 18-00125. HIFICO has over 416 members in Hawaii. HIFICO has 33 members in Maui and all the other Hawaiian Counties with valid concealed carry permits. But for the laws challenged within this lawsuit, they would carry in the challenged provisions. HIFICO brings this action on behalf of those members with a Hawaii concealed carry permit, from any county, including the named Plaintiffs herein;

**Defendants**

5.  Defendant Anne E. Lopez is the Attorney General of the State of Hawaii ("State") and is sued in her official capacity and is responsible for enforcing

the State of Hawaii's customs, policies, practices and laws related to the State of Hawaii on the acquisition, possession, registration, carrying of weapons openly and concealed, and criminal laws including those related to the carrying and use of firearms and private properties allowing or disallowing the carriage of arms. Defendant Lopez may be served at the Office of Attorney General located at 425 Queen St, Honolulu, Hawaii 96813;

6. Defendant County of Maui ("County") is a municipal corporation incorporated under the laws of the State of Hawaii. The County is authorized by law to control and maintain the Maui Police Department, an agency of the County, who acts on the County's behalf in the area of law enforcement. Maui county also employs County Deputy prosecuting Attorneys who are responsible for initiating, through penal summons, law enforcement officer initiated tickets and citations, complaints, informations, and indictments, criminal charges against persons and entities. The County is therefore ultimately responsible for Maui Police Department ("MPD"), and the Maui County Prosecutor's Office and their actions, and therefore, must assume the risks incidental to the maintenance of MPD, and the County Prosecuting Attorney's office, their employees, laws, customs and policies. The County can be served by serving the Department of the Corporation Counsel,

County of Maui at 200 South High Street, Kalana O Maui Bldg, 3rd Floor,

Wailuku, HI 96793;

## II

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

8. Venue lies in this Court pursuant to 28 U.S.C. § 1391;

## III

## STATEMENT OF LAW

## SECOND AMENDMENT

9. The Second Amendment to the United States Constitution provides: "A

well regulated Militia, being necessary to the security of a free State, the right

of the people to keep and bear Arms shall not be infringed.";

10. The Second Amendment guarantees individuals a fundamental right to

keep and carry arms for self-defense and defense of others in the event of a

violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008);

*McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577

U.S. 1027 (2016);

11. Firearms are protected by the Second Amendment. *District of Columbia*

*v. Heller*, 554 U.S. 570 (2008);

12.  The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).  The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

13. "[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135;

14.  In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 142 S.Ct. at 2135 n.8;

15.   The "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). This is because the Second Amendment "presumptively protects" carrying firearms. *Id.* At 2129. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S.Ct. at 2129;

16.   It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127; *see also id.* At 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined;

17.   The *Bruen* Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. In doing so, *Bruen* explicitly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. 142 S.Ct.

at 2133-34. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble. A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." 142 S.Ct. at 2134. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id;*

18. If a state seeks to restrict firearms in a particular location as a "sensitive place," then it must prove that its current restriction is sufficiently analogous to "well-established and representative historical analogue." In *Bruen*, the Court identified only five such locations that may have a historical basis: "schools and government buildings" as well as "legislative assemblies, polling places, and courthouses." *Id.* At 2133, citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). *Bruen* held that the lower "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Id;*

19. *Bruen* further establishes several requirements to determine whether a historical regulation is sufficiently analogous. First, the relevant time period

for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135-36. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S.Ct. at 2136, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). "20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S.Ct. at 2154 & n.28;

20.  Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation but cannot be used alone to provide the appropriate historical analogue required by *Bruen*.  In other words, only those restrictions with roots at the time of the Founding are sufficiently "enduring" and "well-established" to comport with the Second Amendment's "unqualified command." *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961));

21.  Second, the historical analogue must be "representative." Historical "outlier" requirements of a few jurisdictions or of the Territories are to be disregarded.  *Bruen*, 142 S.Ct. at 2133, 2153, 2147 n.22 & 2156.  Courts should not "uphold every modern law that remotely resembles a historical

analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." *Drummond v. Robinson*, 9 f.4th 217 (3rd. Cir 2021),- individual self-defense is the central component of the Second Amendment right;

22.  Third, the historical analogue must be "relevantly similar," which is to say that it must burden ordinary, law-abiding citizens right to carry in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132.  *Bruen* thus held that the inquiry into whether a proper analogue exists is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era.  *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'" considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 2137. "Thus, 'postratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.'" *Id.*, quoting *Heller v. District of Columbia*, 670 F.3d , 670 F.3d 1224, 1274, n.6 (Kavanaugh, J., dissenting);

23.  Fourth, the historical analysis required by the Supreme Court is fundamentally a legal inquiry that examines legal history, which is appropriately presented in briefs. See *Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "legal questions" that judges can address) (emphasis in original); see also id. at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent"). Accordingly, the required analysis does not require fact-finding by a court;

24.  The text of the Second Amendment, as authoritatively interpreted by the Supreme Court, indisputably covers possession (keep) and the wear, carry, and transport (bear) of firearms, including handguns by ordinary, law-abiding citizens.  Beyond the five locations specifically identified by the Supreme Court in *Bruen* as possibly having an historical basis, the State bears the burden to demonstrate that there is an enduring, well-established, representative historical analogue to the restriction imposed by the government. And the historical analogue must be "relevantly similar" to the contemporary restriction imposed by the government, burdening the Second Amendment right in a similar manner and for similar reasons. Under this test established in *Bruen*, the State cannot meet its burden to justify its bans on

the wear, carry, and transport of firearms in or at the locations challenged here;

## IV

## __INTRODUCTION__

### H.R.S. §134  Firearms

25.  Hawaii law, specifically Hawaii Revised Statutes Section 134 *et seq*, is a comprehensive set of laws covering all aspects of firearms in Hawaii including everything from acquisition, possession, ownership, usage and carriage of arms;

26.  Prior to the United States Supreme Court decision in *Bruen*, Hawaii law, specifically HRS 134-9, dealt with the carriage of weapons, and it read, and today reads-

"  **§134-9  Licenses to carry.**  (a)  In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted.  Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted.  The chief of police of the appropriate county, or the chief's

designated representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made.  Unless renewed, the license shall expire one year from the date of issue.

(b)   The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:

(1)   Be qualified to use the firearm in a safe manner;

(2)   Appear to be a suitable person to be so licensed;

(3)   Not be prohibited under section 134-7 from the ownership or possession of a firearm; and

(4)   Not have been adjudged insane or not appear to be mentally deranged.

(c)   No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.

(d)   A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.";

27.   Prior to *Bruen*, based upon information and belief, the counties only issued open carry permits for armored vehicle drivers and not to the general public;

28.  Prior to *Bruen*, the counties had only issued less than a half-dozen carry concealed permits in the prior decades, see *Young v. County of Hawaii*, 142 S.Ct. 2895[1];

29.  Because there was effectively not a single person in the State of Hawaii with a concealed permit to carry a firearm, there were no Hawaii Revised Statutes regarding where concealed arms could be carried, i.e. there were no "sensitive places" specified under the HRS- since Hawaii didn't let anyone carry a concealed weapon it was not necessary to specify where a concealed carry permit holder could carry a firearm;

30.  Following *Bruen*, while county police chiefs promulgated onerous and burdensome rules pursuant to HRS 134-9(b) and started to issue a handful of concealed carry permits, the State legislature met.

31.  In Maui County, presently, concealed carry permit applicants must pass a shooting test in order to qualify for a carry permit; and Plaintiffs Jason

---

[1] *Young* was vacated and reversed by the U.S. Supreme Court following the *Bruen* decision. *See e.g. Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018) ("Hawaii counties appear to have issued only *four* concealed carry licenses in the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq*;").

Wolford, Alison Wolford and Atom Kasprzycki all have current, valid concealed carry permits.

32.  The state legislature, in response to *Bruen* passed SB 1230 and on June 2, 2023 Governor Green signed the bill into law;

## SB1230

33.  SB1230 takes effect on July 1, 2023, except for Sections 4 and 7 which take effect on January 1, 2024 related to permits to acquire and permits to carry concealed and openly[2].  SB1230 created fifteen broad categories of sensitive places including adjacent land and parking lots that render carry concealed permits almost completely useless;

34.  SB1230 creates HRS 134-A which reads-

"**Carrying or possessing a firearm in certain locations and premises prohibited; penalty.**  (a) A person with a license issued under section 134-9, or authorized to carry a firearm in accordance with title 18 United States Code section 926B or 926C, shall not intentionally, knowingly, or recklessly

---

[2] The current counties' rules regarding the issuance of concealed carry permits and SB1230's laws regarding carry concealed permits, are all thoroughly strict and onerous but are not challenged here.  The three natural person Plaintiffs all qualify currently and under SB1230's requirements as well.

carry or possess a loaded or unloaded firearm, whether the firearm is

operable or not, and whether the firearm is concealed or unconcealed, while

in any of the following locations and premises within the State:

(1)     Any building or office owned, leased, or used by the State or a county,

and adjacent grounds and parking areas, including any portion of a building

or office used for court proceedings, legislative business, contested case

hearings, agency rulemaking, or other activities of state or county

government;

(2)     Any public or private hospital, mental health facility, nursing home,

clinic, medical office, urgent care facility, or other place at which medical or

health services are customarily provided, including adjacent parking areas;

(3)     Any adult or juvenile detention or correctional facility, prison, or jail,

including adjacent parking areas;

(4)     Any bar or restaurant serving alcohol or intoxicating liquor as defined

in section 281-1 for consumption on the premises, including adjacent

parking areas;

(5)     Any stadium, movie theater, or concert hall, or any place at which a

professional collegiate, high school, amateur, or student sporting event is

being held, including adjacent parking areas;

(6)     All public library property, including buildings, facilities, meeting rooms, spaces used for community programming, adjacent grounds, and parking areas;

(7)     The campus or premises of any public or private community college, college, or university, and adjacent parking areas, including buildings, classrooms, laboratories, research facilities, artistic venues, and athletic fields or venues;

(8)     The campus or premises or any public school, charter school, private school, preschool, summer camp, or child care facility as defined in section 346-151, including adjacent parking areas, but not including:

(A)     A private residence at which education is provided for children who are all related to one another by blood, marriage, or adoption; or

(B)     A dwelling when not used as a child care facility;

(9)     Any beach, playground, park, or adjacent parking area, including any state park, state monument, county park, tennis court, golf course, swimming pool, or other recreation area or facility under control, maintenance, and management of the State or a county, but not including an authorized target range or shooting complex;

(10)   Any shelter, residential, or programmatic facility or adjacent parking area operated by a government entity or charitable organization serving

unhoused persons, victims of domestic violence, or children, including children involved in the juvenile justice system;

(11)   Any voter service center as defined in section 11-1 or other polling place, including adjacent parking areas;

(12)   The premises of any bank or financial institution as defined in section 211D-1, including adjacent parking areas;

(13)   Any place, facility, or vehicle used for public transportation or public transit, and adjacent parking areas, including buses, paratransit vans, bus shelters and terminals (but not including bus stops located on public sidewalks), trains, rail stations, and airports;

(14)   Any amusement park, aquarium, carnival, circus, fair, museum, water park, or zoo, including adjacent parking areas;

(15)   Any public gathering, public assembly, or special event conducted on property open to the public, including any demonstration, march, rally, vigil, protest, picketing, or other public assembly, for which a permit is obtained from the federal government, the State, or a county, and the sidewalk or street immediately adjacent to the public gathering, public assembly, or special event; provided that there are signs clearly and conspicuously posted at visible places along the perimeter of the public gathering, public assembly or special event";

35. SB1230 HRS 134-A (b) provides that the areas in 134-A(a) shall not apply to a person in an exempt category, such as law enforcement officers;

36. SB1230 HRS 134-A(b) also provides affirmative defenses to carrying in the locations listed in 134-A(a);

37. SB1230 HRS 134-A(c) provides "The presence of a person in any location or premises listed in subsection (a) shall be prima facie evidence that the person knew it was a location or premises listed in subsection (a);

38. SB1230 HRS 134-A(d) provides "Where only a portion of a building or office is owned, leased, or used by the State or a county, this section shall not apply to the portion of the building or office that is not owned, leased, or used by the State or a county, unless carrying or possessing a firearm within that portion is otherwise prohibited by this section";

39. SB1230 HRS 134-A(f) provides "Any person who violates this section shall be guilty of a misdemeanor";

40. HRS 701-107 provides "(3) A crime is a misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined in a statute other than this Code which provides for a term of imprisonment the maximum of which is one year";

41.  SB1230 HRS 134-E provides "**Carrying or possessing a firearm on**

**private property of another person without authorization; penalty.** (a) A

person carrying a firearm pursuant to a license issued under section 134-9

shall not intentionally, knowingly, or recklessly enter or remain on private

property of another person while carrying a loaded or unloaded firearm,

whether the firearm is operable or not, and whether the firearm is concealed

or unconcealed, unless the person has been given express authorization to

carry a firearm on the property by the owner, lessee, operator, or manager of

the property.

(b) For purposes of this section, express authorization to carry or possess a

firearm on private property shall be signified by:

(1) Unambiguous written or verbal authorization; or

(2) The posting of clear and conspicuous signage at the entrance of the

building or on the premises, by the owner, lessee, operator, or manager of

the property, or agent thereof, indicating that carrying or possessing a

firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners' association, community

association, planned community association, condominium association,

cooperative, or any other nongovernmental entity with covenants, bylaws, or

administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person", means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner, lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-11(a).

(e) Any person who violates this section shall be guilty of a misdemeanor."

## V

## CHALLENGED PROVISIONS OF SB1230

42.  Plaintiffs do not challenge the prohibitions in all areas under SB1230, instead, Plaintiffs challenge only a limited subset that impose particularly egregious restrictions on their Second Amendment right to bear arms. Plaintiffs do not challenge all of SB1230 or all of the Hawaii Revised Statutes or every county code.  Plaintiffs do not concede that any part of SB1230 or any State law or county code is constitutional under the Second Amendment or in any other way;

43.  Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint;

**Plaintiff Jason Wolford**

44.  Plaintiff Jason Wolford realleges and incorporates by reference all of the foregoing allegations of this complaint;

45.  Plaintiff Jason Wolford challenges the following provisions of SB1230-

A) SB1230 HRS 134-A(a)(1) Any building or office owned, leased, or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for…, or other activities of state or county government, ***only*** *to the extent that there may be a building or office owned or leased or used by the State or a county, and adjacent grounds and*

22

*parking areas, including any portion of a building or office <u>used for other</u>*

<u>*activities of state or county government*</u> *when this provision overlaps or is*

*otherwise covered by any of the other challenged provisions below*;

B) SB1230 HRS 134-A-(a)(4), specifically limited to "Any... restaurant

serving alcohol or intoxicating liquor as defined in section 281-1 for

consumption on the premises, including adjacent parking areas."

C) SB1230 HRS 134-A-(a)(9), specifically limited to "Any beach, park, or

adjacent parking area, including any state park,...county park,...under

control, maintenance, and management of the State or county, ..."

D) SB1230 HRS 134-A-(a)(12), specifically limited to "The premises of

any bank or financial institution as defined in section 211D-1, including

adjacent parking areas."

E) SB1230 HRS 134-E, "**<u>Carrying or possessing a firearm on private</u>**

**<u>property of another person without authorization; penalty.</u>** (a) A person

carrying a firearm pursuant to a license issued under section 134-9 shall not

intentionally, knowingly, or recklessly enter or remain on private property of

another person while carrying a loaded or unloaded firearm, whether the

firearm is operable or not, and whether the firearm is concealed or

unconcealed, unless the person has been given express authorization to carry

a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by:

(1) Unambiguous written or verbal authorization; or

(2) The posting of clear and conspicuous signage at the entrance of the building or on the premises, by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners' association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person", means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner,

24

lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-11(a).

(e) Any person who violates this section shall be guilty of a misdemeanor."

## Plaintiff Alison Wolford

46.    Plaintiff Alison Wolford realleges and incorporates by reference all of the foregoing allegations of this complaint;

47.    Plaintiff Alison Wolford challenges the following provisions of SB1230-

A) SB1230 HRS 134-A(a)(1) Any building or office owned, leased, or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for…, or other activities of state or county government, *only to the extent that there may be a building or office*

owned or leased or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for <u>other activities</u> of state or county government when this provision overlaps or is otherwise covered by any of the other challenged provisions below;

B)  SB1230 HRS 134-A-(a)(4), specifically limited to "Any… restaurant serving alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, including adjacent parking areas."

C)  SB1230 HRS 134-A-(a)(9), specifically limited to "Any beach, park, or adjacent parking area, including any state park,…county park,…under control, maintenance, and management of the State or county, …"

D)  SB1230 HRS 134-A-(a)(12), "The premises of any bank or financial institution as defined in section 211D-1, including adjacent parking areas."

E)  SB1230 HRS 134-E, "**Carrying or possessing a firearm on private property of another person without authorization; penalty.**

(a) A person carrying a firearm pursuant to a license issued under section 134-9 shall not intentionally, knowingly, or recklessly enter or remain on private property of another person while carrying a loaded or unloaded firearm, whether the firearm is operable or not, and whether the firearm is concealed or unconcealed, unless the person has been given express

authorization to carry a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by:

(1) Unambiguous written or verbal authorization; or

(2) The posting of clear and conspicuous signage at the entrance of the building or on the premises, by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners' association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person", means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner,

lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-11(a).

(e) Any person who violates this section shall be guilty of a misdemeanor."

## Plaintiff Atom Kasprzycki

48.   Plaintiff Kasprzycki realleges and incorporates by reference all of the foregoing allegations of this complaint;

49.   Plaintiff Kasprzycki challenges the following provisions of SB1230-A) SB1230 HRS 134-A(a)(1) Any building or office owned, leased, or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for…, or other activities of state or county government, **only** *to the extent that there may be a building or office owned or leased or used by the State or a county, and adjacent grounds and*

*parking areas, including any portion of a building or office used for <u>other</u>*

*<u>activities</u> of state or county government when this provision overlaps or is*

*otherwise covered by any of the other challenged provisions below*;

B) SB1230 HRS 134-A-(a)(4), specifically limited to "Any… restaurant serving alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, including adjacent parking areas."

C) SB1230 HRS 134-A-(a)(9), specifically limited to "Any beach, park, or adjacent parking area, including any state park,…county park,…under control, maintenance, and management of the State or county, …"

D) SB1230 HRS 134-A-(a)(12), "The premises of any bank or financial institution as defined in section 211D-1, including adjacent parking areas."

E) SB1230 HRS 134-E, "**<u>Carrying or possessing a firearm on private</u>**

**<u>property of another person without authorization; penalty.</u>**

(a) A person carrying a firearm pursuant to a license issued under section 134-9 shall not intentionally, knowingly, or recklessly enter or remain on private property of another person while carrying a loaded or unloaded firearm, whether the firearm is operable or not, and whether the firearm is concealed or unconcealed, unless the person has been given express authorization to carry a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by:

(1) Unambiguous written or verbal authorization; or

(2) The posting of clear and conspicuous signage at the entrance of the building or on the premises, by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners' association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person", means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner, lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided

nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-11(a).

(e) Any person who violates this section shall be guilty of a misdemeanor."

## Plaintiff HIFICO

50.  Plaintiff HIFICO realleges and incorporates by reference all of

the foregoing allegations of this complaint;

51.  Plaintiff HIFICO challenges the following provisions of SB1230 on behalf of the named Plaintiffs, who are HIFICO members, and all HIFICO members with valid carry concealed permits within the state of Hawaii-A) SB1230 HRS 134-A(a)(1) Any building or office owned, leased, or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for…, or other activities of state or county government, **only** *to the extent that there may be a building or office*

owned or leased or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for _other_ _activities_ of state or county government when this provision overlaps or is otherwise covered by any of the other challenged provisions below;

B)  SB1230 HRS 134-A-(a)(4), specifically limited to "Any… restaurant serving alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, including adjacent parking areas."

C)  SB1230 HRS 134-A-(a)(9), specifically limited to "Any beach, park, or adjacent parking area, including any state park,…county park,…under control, maintenance, and management of the State or county, …"

D)  SB1230 HRS 134-A-(a)(12), "The premises of any bank or financial institution as defined in section 211D-1, including adjacent parking areas."

E)  SB1230 HRS 134-E, "**Carrying or possessing a firearm on private** **property of another person without authorization; penalty.** (a) A person carrying a firearm pursuant to a license issued under section 134-9 shall not intentionally, knowingly, or recklessly enter or remain on private property of another person while carrying a loaded or unloaded firearm, whether the firearm is operable or not, and whether the firearm is concealed or unconcealed, unless the person has been given express authorization to carry

a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by:

(1) Unambiguous written or verbal authorization; or

(2) The posting of clear and conspicuous signage at the entrance of the building or on the premises, by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners' association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person", means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner,

lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-11(a).

(e) Any person who violates this section shall be guilty of a misdemeanor."

## COUNT I

## U.S. CONST., AMEND. II

52.  Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

53.  The State of Hawaii has not gotten the United States Supreme Court's message from *Bruen.* Prior to *Bruen,* Hawaii had treated, for more than a century, the Second Amendment as dead, buried and forgotten having almost never issued any concealed carry permits[3]. Once *Bruen* was decided and county police chiefs began to issue a trickle of concealed carry permits,

---

[3] And apart from armored car drivers, no open carry permits.

under new county specific onerous carry concealed permit regulations, the state legislature acted to ensure that even if people managed to overcome the burdensome requirements to actually obtain a concealed carry permit, the permits would be rendered utterly useless.  Hawaii merely switched gears from almost never issuing any concealed carry permits so that there was no one with a permit, to making permits now begrudgingly issued to be so limited as to make it so that permit holders could not carry anywhere.

Notwithstanding the United States Constitution and the Second Amendment and the *Bruen* decision, Hawaii just simply does not want anyone to be able to carry a firearm anywhere within the state- which is their fundamental, ancient, constitutionally protected and guaranteed right.

In response to *Bruen,* the state legislature has sought to severely restrict law abiding peoples' right to defend themselves in the event of confrontation. The legislature specifically found and stated that it intended to restrict carrying and possessing arms, which it characterized as "dangerous", by law-abiding persons with concealed carry licenses[4].  This included in areas "traditionally" restricted, without specific reference to *Bruen,* and expansively including "other places frequented by children", which could

---

[4] The State believes that Second Amendment rights are by their very nature dangerous and that those who exercise Second Amendment rights are by their very nature dangerous people.

mean anywhere from grocery stores to beaches to shopping malls.  The legislature specifically referenced "…the risks to public health, safety, and welfare *associated with firearms* and gun violence,…" (Emphasis added), without examining, or even pretending to legislate with an eye toward crimes committed with or using a firearm [5].  Additionally, the legislature specifically stated that its act, specifically with regard to carrying on or in private property and the new requirement that a private property owner specifically "opt-in" with express authorization to exercise a constitutionally, protected right, is "…based on the legislature's assessment of public sentiment and broadly shared preferences within the State,…".  *Bruen* is <u>only</u> referenced when the court noted that the Second Amendment is not a "regulatory straightjacket" and that there can be a "variety" of gun regulations".  See SB 1230 Section 1.  The Second Amendment's ancient, protected, fundamental, constitutional, unqualified command and right and *Bruen*'s analysis is not ever otherwise mentioned.  The State of Hawaii's "public sentiment" has its roots in a century [6] of massive infringement and

---

[5] See Exhibit 1 SB1230.  A search for the word "crime" only produces results associated with expanding the types of crimes that render a person disqualified from owning or possessing a firearm.

[6] In *Young* the State argued that arms could only be used in self-defense, under *Heller,* in one's own home.  This radical hostility to a fundamental constitutional right, that, even at the founding era was ancient, stems from some regrettable carryover from the former Hawaiian kingdom wherein a king disarmed everyone

utter annihilation of the Second Amendment and SB1230 is an extreme over-reaction to the *Bruen* decision and a desire to basically confine *Bruen* and the Second Amendment to one's own house.  The State of Hawaii has not changed its tune and its Chief law Enforcement officer still relies on a king's prerogative to disarm his subjects[7].  The Attorney General's representative, in testimony regarding SB1230 stated, repeatedly, that Hawaii had a long history of more than a century, since 1852 when it was a kingdom, of eliminating Second Amendment rights (see Exhibit 2). Following *Bruen,* counties in Hawaii promulgated severely restrictive concealed carry licensure regulations.  With SB1230, the state legislature enacted a set of comprehensive, strict and severe concealed carry regulations, in Section 4, set to take effect on January 1, 2024.  Despite the onerous concealed carry regulations presently in place and soon to be in

---

except loyal subjects in 1852 in his newly minted and thankfully short-lived kingdom. SB1230 is squarely and broadly directed at law-abiding firearm owners and the law-abiding people in a massive effort to eliminate or reduce the number of people exercising their Second Amendment rights and locations where arms can be carried in the event of confrontation.  SB1230 does not purport to address, at all, crimes committed with firearms such as murder or assault except that Terroristic Threatening, a class C felony is now elevated to a class B felony if committed with a firearm.

[7] See *Young* Amicus Brief of Hawaii Rifle Association at the United States Supreme Court proving that the 1852 penal code emanated from the prior kingdom constitutions wherein the king had all arms and weapons of war confined to himself and only loyal subjects, on the king's business, would be allowed to carry arms.

place, the legislature enacted further draconian restrictions, on those law-abiding people, who will have undergone some form of licensure to carry concealed in the state, as to when and where they can exercise their Second Amendment rights.  In fact, the sponsor of SB1230 has also even tried to repeal the Second Amendment.  See SCR #42 attached as Exhibit 3.

54.  This Count addresses violations of the Second Amendment to the United States Constitution and is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, each of the Defendants have acted under "color of state law" within the meaning of Section 1983.  Each and every Defendant, in their various capacities, the Attorney General and the county police and prosecutors, have the statutory duty to enforce the criminal laws of Hawaii, including the restrictions set forth in SB1230, as alleged above, and they do indeed enforce and threaten to enforce these laws by virtue of their authority under the laws of Hawaii. As such, each and every Defendant acts under color of law within the meaning of 42 U.S.C. § 1983;

55.  The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court has squarely held that the Second Amendment bestows an

individual right to keep and bear arms and that right may be exercised by all responsible, law-abiding Americans. *District of Columbia v. Heller,* 554 U.S. 570 (2008). The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In *Bruen*, the Supreme Court held that the Second Amendment right to keep and bear arms fully extends to general carry of arms in public;

56.   In *Bruen*, the Supreme Court articulated a framework for determining if firearms regulations are constitutional. It begins with the plain text. If the plaintiffs' proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). "Nothing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134—or for that matter, any distinction between locations at all. That makes the Second Amendment unlike other Amendments. *See* U.S. Const. amend. III ("No

Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law."); U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). And it means that any locational restrictions on Second Amendment rights must come from history, not from the plain text.

57.  There is no "well-established, representative historical analogue" for the SB1230 bans on firearms or arms in and at –

(A) SB1230 HRS 134-A(a)(4) "Any… restaurant serving alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, including adjacent parking areas." enacted pursuant to SB1230. This ban imposed by Section HRS 134-A(a)(4), as enacted by SB1230, and as specifically limited and specified herein, is facially unconstitutional under the Second Amendment in so far as it bans the possession, wear, carry, or transport of firearms by permit holders at these locations[8].  This ban imposed by Section HRS 134-A(a)(4), as enacted by SB1230, is also unconstitutional as applied to each Plaintiff;

---

[8] The exceptions located at SB1230 HRS 134-A(b) do not apply and are not at issue.

(B) SB1230 HRS 134-A-(a)(9), "Any beach[9], park, or adjacent parking area, including any state park,…county park,…under control, maintenance, and management of the State or county, …", as enacted by SB1230.  This ban imposed by Section HRS 134-A(a)(9), as enacted by SB1230, and as specifically limited and specified herein, is facially unconstitutional under the Second Amendment in so far as it bans the possession, wear, carry, or transport of firearms by permit holders at these locations[10].  This ban, imposed by Section HRS 134-A(a)(9) is also unconstitutional as applied to each Plaintiff;

(C) SB1230 HRS 134-A-(a)(12), "The premises of any bank or financial institution as defined in section 211D-1, including adjacent parking areas." as enacted by SB1230.  This ban imposed by Section HRS 134-A(a)(12), as enacted by SB1230 is facially unconstitutional under the Second

---

[9] There are no private beaches in Hawaii.  See *Application of Ashford*, 50 Haw. 314 (1968).  Private land cannot extend closer to the ocean than the high water mark. What this means with regard to beaches, for example, is that where there is only a public beach a licensed carrier could not walk along or on the beach- at all, ever. The beach is also county or state land, as there are no private beaches, implicating HRS 134-A(a)(9) and since there may be a county or state structure, such as a life guard station or a police substation or a park ranger station, for other State or county "activities", along with a parking lot or "adjacent areas", HRS 134-A(a)(1) is also implicated to the extent raised by this lawsuit.

[10] The exceptions located at SB1230 HRS 134-A(b) do not apply and are not at issue.

Amendment in so far as it bans the possession, wear, carry, or transport of firearms by permit holders at these locations[11].  This ban, imposed by Section HRS 134-A(a)(12) is also unconstitutional as applied to each Plaintiff;

(D) SB1230 HRS 134-A-(a)(1), "Any building or office owned, leased, or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for…, or other activities of state or county government, ***only*** *to the extent that there may be a building or office owned or leased or used by the State or a county, and adjacent grounds and parking areas, including any portion of a building or office used for* <u>*other activities*</u> *of state or county government when this provision overlaps or is otherwise covered by any of the other challenged provisions herein*" as enacted by SB1230.  This ban imposed by Section HRS 134-A(a)(1), as enacted by SB1230 is facially unconstitutional under the Second Amendment in so far as it bans the possession, wear, carry, or transport of firearms by permit holders at these locations[12].  This ban, imposed by

---

[11] The exceptions located at SB1230 HRS 134-A(b) do not apply and are not at issue.

[12] The exceptions located at SB1230 HRS 134-A(b) do not apply and are not at issue.

Section HRS 134-A(a)(1) is also unconstitutional as applied to each Plaintiff;

58.  There is no "well-established, representative historical analogue" for the SB1230 requirement, under the new HRS 134-E, that private property owners "opt-in" to allow the exercise of a fundamental constitutional right to keep and bear arms and that those exercising their Second Amendment rights may only enter, remain on or be on private property after having received express authorization, as described and required herein;

59.  Plaintiff Jason Wolford, repeats and realleges the allegations of the preceding paragraphs as if set forth herein and also states as follows and as reflected in the attached declaration attached as Exhibit 4 (all facts and statements contained in the declaration are incorporated herein and henceforth as allegations in this paragraph in the complaint)-

A) Is a male, married, retired, United States citizen, resident of the state of Hawaii, resident of the county of Maui;

B) is a law abiding citizen;

C) Is not legally prohibited from acquiring, owning, possessing, carrying[13] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

D) Owns several firearms, lawfully, and is familiar with firearms and has the following training: USCCA Instructor- Training Counselor. Concealed Carry and Home Defense Fundamentals, Countering the Mass Shooter Threat, Emergency First Aid, Defensive Shooting Fundamentals (DSF) level 1, NRA Instructor-Pistol; Rifle; Shotgun; Chief Range Safety Officer, SASS Range Safety Officer; SABRE Civilian Pepper Spray Instructor;

E) Has a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to his declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and he has been, is and expects to be fully qualified to obtain another concealed carry permit and has not been, is not now, nor expected to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

---

[13] Except as indicated here specifically with regard not to him, but to the places he intends to carry concealed with a permit and activities he intends to perform but for the enactment of SB1230.

F) Has in the past regularly frequented the following beaches listed below, and has, as a carry concealed license holder since 2022, while armed, and will in the future, own, possess, and carry a firearm with his concealed carry permit. He has every intention and desire to continue to carry his personal firearm in and at all these locations in the future, as he has in the past, and places like them, but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) Kahana Bay;

ii) Kaanapali Beach;

iii) Kapalua Beach;

iv) Napili Bay

v) Launiopoko

vi) DT Fleming park-  This park has a county or state government lifeguard building on the grounds;

G) Jason Wolford has in the past regularly frequented the following areas which are listed as a "park", has in the past, as a carry concealed license holder since 2022, carried a concealed weapon with his permit in

these areas listed herein, and fully intends to in the future, own, possess, and carry a firearm with his concealed carry permit in these locations. He has every intention and desire to continue to carry his personal firearm in and at all these locations, and locations like them, with a permit, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230. He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) Keopoulani Park;

ii) Napili Park;

iii) Rice Park;

iv) Lahaina Recreational Center;

v) Maui Lani Regional Park

vi) DT Fleming beach "park" has a county or state government lifeguard building on the grounds;

H) Jason Wolford has in the past regularly frequented the following areas which are, according to information and belief, restaurants that serves alcohol or intoxicating liquor as defined in section 281-1 for consumption on the premises, and he has, in the past carried a concealed

arm with his permit in the locations referenced herein, and he intends to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with his concealed carry permit in these locations and locations like them. He has every intention and desire to continue to carry his personal firearm in and at all these locations, and locations like them, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i)   Monkey Pod;

ii)  Hula Grill;

iii) Down the Hatch;

iv)  Tiffanys;

v)   Tante's;

vi)  Ruth Chris;

vii)    Miko's

(I) Jason Wolford has in the past regularly frequented the following areas which are, according to information and belief, banks or financial

institutions as defined in section 211D-1, and has in the past carried a concealed arm with his permit and intends to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with his concealed carry permit in these locations and locations like them. He has every intention and desire to continue to carry his personal firearm and permit in and at all these locations, and locations like them, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i)   First Hawaiian Bank (including specifically, but not limited to the branches at Kahana, Lahaina and Kahului);

ii)  Bank of Hawaii (including specifically, but not limited to the branches at Kahana, Lahaina and Kahului);

J) Jason Wolford has in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property owners to "opt-in" and post signage allowing the exercise of the Second

Amendment right to carry an arm for self- defense or in case of confrontation, and he has carried a concealed arm with a permit in the past and intends to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with his concealed carry permit in these locations and similar locations.  He has every intention and desire to continue to carry his personal firearm and permit in and at all these locations, and locations like them, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) Ace Hardware, which shares a parking lot with Maui County DMV, see Exhibit 5;

ii) Maui mall;

K) Jason Wolford has in the past regularly frequented adjacent properties and parking lots of all of the above locations with a firearm concealed with his concealed carry permit and fully intends to do so again, but for the enactment of SB1230.  Additionally, Jason Wolford has in the past regularly frequented adjacent properties and parking lots while not going to any of the above locations, such as a beach or park or

bank or restaurant, but the other location shares an adjacent property or parking lot, and he has carried a concealed weapon with his concealed carry permit and he fully intends to do so again the future, but for the enactment of SB1230. Those locations include the gym The Club Maui Kahana Location which shares a parking lot with two banks.

60.  Plaintiff Alison Wolford, repeats and realleges the allegations of the preceding paragraphs as if set forth herein and also states as follows and as reflected in the attached declaration attached as Exhibit 6 (all facts and statements contained in the declaration are incorporated herein and henceforth as allegations in this paragraph in the complaint)-

A) Is a female, married, United States citizen, resident of the state of Hawaii, resident of the county of Maui who works for the Maui Memorial Medical center;

B) is a law abiding citizen;

C) Is not legally prohibited from acquiring, owning, possessing, carrying[14] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

---

[14] Except as indicated here specifically with regard not to her, but to the places and activities she intends to perform but for the enactment of SB1230.

D) Owns several firearms, lawfully, and is familiar with firearms and has the following training: NRA Instructor-Pistol; Rifle; Shotgun; CCW; Chief Range Safety Officer NRA Refuse to be a Victim; NRA Range Development USCCA Instructor-Concealed Carry Home Defense; Women's Firearms Training Counselor USCCA RSO SASS RSO;

E) Has a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to her declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and she has been, is and expects to be fully qualified to obtain another concealed carry permit and has not been, is not now, nor expected to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

F) Alison Wolford has in the past regularly frequented the following beaches listed below, and has, as a carry concealed license holder since 2022, carried while armed and with her permit, and will in the future, own, possess, and carry a firearm with her concealed carry permit.  She has every intention and desire to continue to carry her personal firearm in and at all these locations in the future, and places like them, but she will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective

date of SB1230.  She intends to and will use her carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) Kahana Bay;

ii) Kaanapali Beach;

iii) Airport Beach;

iv) Kapalua Beach;

v) Napili Bay;

vi) Launiopoko;

vii)   DT Flemings beach park, which also has a county or state lifeguard building on the grounds;

G) Alison Wolford has in the past regularly frequented the following areas which are listed as a "park", has in the past, as a carry concealed license holder since 2022, carried a concealed weapon with her permit in these areas listed herein, and fully intends to in the future, own, possess, and carry a firearm with his concealed carry permit in these locations.  She has every intention and desire to continue to carry her personal firearm concealed and with a permit in and at all these locations, and locations like them, in the future but she will decline to do so because of the credible fear of arrest and prosecution after July 1,

2023, the effective date of SB1230. She intends to and will use his carry

concealed permit to carry arms concealed in the locations referenced

herein, but for the implementation and enactment of SB1230;

i) Keopoulani Park;

ii) Napili Park;

iii) Rice Park;

iv) Lahaina Recreational Center;

v) DT Fleming (Beach park)

vi) Maui Lani Regional Park

vii)    DT Fleming has a county or state government lifeguard building on

the grounds;

H) Alison Wolford has in the past regularly frequented the following

areas which are, according to information and belief, restaurants that

serves alcohol or intoxicating liquor as defined in section 281-1 for

consumption on the premises, and she has, in the past carried a

concealed arm with her permit in the locations referenced herein, and

she intends to, as a carry concealed license holder since 2022, in the

future, own, possess, and carry a firearm with her concealed carry

permit in these locations and locations like them.  She has every

intention and desire to continue to carry her personal firearm in and at

all these locations, and locations like them, in the future but she will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. She intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i)   Monkey Pod;

ii)  Hula Grill;

iii) Down the Hatch;

iv) Tiffanys;

v)   Tante's;

vi) Ruth Chris;

vii)   Miko's

I) Alison Wolford has in the past regularly frequented the following areas which are, according to information and belief, banks or financial institutions as defined in section 211D-1, and has in the past carried a concealed arm with her permit and intends to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with her concealed carry permit in these locations and locations like them.  She has every intention and desire to continue to carry her personal firearm in and at all these locations, and locations like them, in

the future but she will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230. Se intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) First Hawaiian Bank (including specifically, but not limited to the branches at Kahana, Lahaina and Kahului);

ii) Bank of Hawaii (including specifically, but not limited to the branches at Kahana, Lahaina and Kahului);

iii) Maui Federal Credit Union (including specifically but not limited to the branches at Lahaina, Kahului, and Wailuku);

J) Alison Wolford has in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property owners to "opt-in" and post signage allowing the exercise of the Second Amendment right to carry an arm for self- defense or in case of confrontation, and she has carried a concealed arm with a permit in the past and intends to, as a carry concealed license holder since 2022, in

the future, own, possess, and carry a firearm with her concealed carry permit in these locations and similar locations. She has every intention and desire to continue to carry her personal firearm in and at all these locations, and locations like them, in the future but she will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230. She intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230;

i) Ross, See Exhibit 5, this location shares a parking lot with Maui DMV, and also see https://www.mauicounty.gov/2125/DMV-Wait-Timesm last accessed on June 21, 2023;

ii) Safeway

iii) Costco

61. Plaintiff Atom Kasprzycki, as reflected in the attached declaration attached as Exhibit 7 (all facts and statements contained in the declaration are incorporated herein and henceforth as allegations in this paragraph in the complaint)-

A) Is a male, married, self-employed, United States citizen, resident of the state of Hawaii, resident of the county of Maui;

B) is a law abiding citizen and member of HIFICO (see Exhibit 8);

C) Is not legally prohibited from acquiring, owning, possessing, carrying[15] or lawfully using arms including firearms under current Hawaii and federal law and also under the proposed SB1230 HRS enactments;

D) Owns several firearms, lawfully, and is familiar with firearms and has the following training: NRA Basic Pistol Safety Course Certificate of Completion, Concealed Carry Handgun Course, North Carolina CCW course, Nebraska Hunter's Education;

E) Has a concealed carry permit issued from the county of Maui in 2022, a redacted copy of which is appended to his declaration, and will renew that one and will obtain another concealed carry permit once SB1230's concealed carry permit laws go into effect in January 2024, and he has been, is and expects to be fully qualified to obtain another concealed carry permit and has not been, is not now, nor expected to be disqualified from owning, possessing or carrying arms nor from obtaining a renewed or new concealed carry permit in the state of Hawaii or elsewhere ;

F) Has in the past regularly frequented the following beaches listed below, and has, as a carry concealed license holder since 2022, carried a concealed weapon and permit, and will in the future, own, possess, and carry a firearm

---

[15] Except as indicated here specifically with regard not to him, but to the places and activities he intends to perform but for the enactment of SB1230.

with his concealed carry permit.  He has every intention and desire to continue to carry his personal firearm in and at all these locations in the future, and places like them, but he will decline to do so because of the credible fear of arrest and prosecution after July 1, 2023, the effective date of SB1230.  He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB 1230;

i)  Kaopala Beach;

ii) Kaanapali Beach;

iii)Launipoko Beach;

iv) DT Fleming beach park- This beach and park has a state or county lifeguard building on the grounds;

G) Atom Kasprzycki has in the past regularly frequented the following areas which are listed as a "park", has in the past, as a carry concealed license holder since 2022, carried concealed with his permit in these areas listed herein, and fully intends to in the future, own, possess, and carry a firearm with his concealed carry permit in these locations.  He has every intention and desire to continue to carry his personal firearm in and at all these locations, and locations like them, in the future but he will decline to do so because of the credible fear of arrest and

prosecution after July1, 2023, the effective date of SB1230. But for

H.R.S. §134-A (9) he would carry in all these locations;

i)  Lauiupoko Park;

ii) Lahaina Baynan Court Park

iii)Lahaina Aquatic Center;

iv)DT Fleming (Beach park)- This beach and park has a county or state

  lifeguard building on the grounds;


H) Atom Kasprzycki has in the past regularly frequented the following

areas which are, according to information and belief, restaurants that

serves alcohol or intoxicating liquor as defined in section 281-1 for

consumption on the premises, and he has, in the past carried a concealed

arm with his permit in the locations referenced herein, and he intends to,

as a carry concealed license holder since 2022, in the future, own,

possess, and carry a firearm with his concealed carry permit in these

locations and locations like them. He intends to and will use his carry

concealed permit to carry arms concealed in the locations referenced

herein, but for the implementation and enactment of SB1230. He has

every intention and desire to continue to carry his personal firearm in

and at all these locations, and locations like them, in the future but he

will decline to do so because of the credible fear of arrest and

prosecution after July1, 2023, the effective date of SB1230. But for

H.R.S. §134-A (4) he would carry in all these locations;

i)  Sansei;

ii) Alaloa Lounge;

iii) Maui Brewing company (This place shares a parking lot with the a
     medical facility and other private establishments)

I)      Atom Kasprzycki has in the past regularly frequented the
following areas which are, according to information and belief, banks or
financial institutions as defined in section 211D-1, and has in the past
carried a concealed arm with his permit and intends to, as a carry
concealed license holder since 2022, in the future, own, possess, and
carry a firearm with his concealed carry permit in these locations and
locations like them.  He intends to and will use his carry concealed
permit to carry arms concealed in the locations referenced herein, but
for the implementation and enactment of SB1230. He has every
intention and desire to continue to carry his personal firearm in and at
all these locations, and locations like them, in the future but he will
decline to do so because of the credible fear of arrest and prosecution
after July1, 2023, the effective date of SB1230;

i)  First Hawaiian Bank (including specifically, but not limited to the

branches at Lahaina, Kahana, Kahului and Makawao);

ii) Bank of Hawaii (including specifically, but not limited to the branch at Kahana);

J) Atom Kasprzycki has in the past regularly frequented the following areas which are, according to information and belief, all other locations considered private property, not covered otherwise by HRS 134-A(a) but specifically covered under HRS 134-E that requires private property owners to "opt-in" and post signage allowing the exercise of the Second Amendment right to carry an arm for self- defense or in case of confrontation, and he has carried a concealed arm with a permit in the past and intends to, as a carry concealed license holder since 2022, in the future, own, possess, and carry a firearm with his concealed carry permit in these locations and similar locations.  He intends to and will use his carry concealed permit to carry arms concealed in the locations referenced herein, but for the implementation and enactment of SB1230. He has every intention and desire to continue to carry his personal firearm in and at all these locations, and locations like them, in the future but he will decline to do so because of the credible fear of arrest and prosecution after July1, 2023, the effective date of SB1230. But for HRS 134-E he would carry in all these locations;

61

i) The Club Maui Kahana gym

ii) Kasprzycki's office, Kasprzycki Designs Inc, shares a parking lot with a bank, Bank of Hawaii;

# VII

## COUNT II

### First Amendment, Fourteenth Amendment, Compelled Speech

62.   Plaintiff Kasprzycki owns and operates his own business, Kasprzycki Designs Inc;

63.  Kasprzycki owns the office space;

64.  Kasprzycki has many clients and some do not support the exercise of Second Amendment rights through the carrying of concealed weapons with a permit and some do support the exercise of Second Amendment rights through the carrying of concealed weapons with a permit;

65.  Kasprzycki is an architect by trade and does not want to involve his business and or his business property in issues related to the Second Amendment and or the First Amendment and he does not wish to be forced to express support or disapproval of the carrying of concealed arms with a permit and he does not wish to be forced to post signage, or to otherwise be forced to communicate with clients, to expressly consent to allow or

disallow the carrying of concealed arms with a permit. Once H.R.S. §134-E goes into effect, Kasprzycki will not put up a sign or otherwise give prior written or verbal consent to carry a firearm. But for H.R.S. §134-E Kasprzycki would allow people to carry firearms in his business.

66.   The First Amendment prohibits the State from telling people what they must say. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013);

66.   Kasprzycki's business property and office is open to the public for business purposes;

67.   SB1230's HRS 134-E compels the speech of private property owners and lessees.  It requires property owners and lessees to espouse a belief one way or the other on the carriage of firearms outside the home by requiring them to expressly consent or post a sign and therefore it is compelled speech and unconstitutional under the First and Fourteenth amendment;

## VIII

## (DECLARATORY JUDGMENT)

68.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

69. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a);

70. Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future;

71. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

72. This Court possesses an independent basis for jurisdiction over the parties;

73. Plaintiffs seek a judgment declaring that Defendants' policies/laws, including specifically those portions of SB1230 challenged herein, which deny Plaintiffs their Second Amendment rights to carry arms in case of confrontation in the locations specified herein are unconstitutional under the Second Amendment;

74. Alternatively, a declaration that those specified aspects of SB1230 herein are unconstitutional as applied to each Plaintiff;

75. A declaration and judgment that those portions of SB1230 specified herein are unconstitutional as violative of the Second Amendment;

76. A declaration and judgment that, with regard to Plaintiff Kasprzycki, SB1230's enactment of HRS 134-E, is facially unconstitutional under the First Amendment and Fourteenth amendment;

77. Alternatively, a declaration and judgment that, with regard to Plaintiff Kasprzycki, SB1230's enactment of HRS 134-E, is unconstitutional under the First Amendment and Fourteenth amendment as applied to him;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Defendants' policies complained about above;

2. Plaintiffs request this Court, enjoin the above challenged SB1230 provisions and any other relevant provision of SB1230 and or Hawaii law, both facially and as applied to Plaintiffs;

3. Declaratory relief that the complained of SB1230 provisions and any related HRS provisions are unconstitutional both facially and as applied to Plaintiffs.

4.  Awarding Plaintiffs' attorney fees and costs pursuant to 42 U.S.C. §1988;

5.  Nominal Damages.

6.  Compensatory Damages

7.  Such other relief consistent with the injunction as appropriate; and

8.  Such other further relief as the Court deems just and appropriate.

Dated: June 23, 2023.

Respectfully submitted,


/s/ *Kevin O'Grady*

Kevin Gerard O'Grady

Law Office of Kevin O'Grady, LLC
1164Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com


/s/ *Alan Beck*

Alan Alexander Beck

Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Counsel for Plaintiffs

# VERIFICATION

I, Jason Wolford, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on June 22, 2023

JASON WOLFORD

## VERIFICATION

I, Alison Wolford, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.


Executed on June 22, 2023


ALISON WOLFORD

# VERIFICATION

I, Atom Kasprzycki, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on June 22, 2023

_____

ATOM KASPRZYCKI

**VERIFICATION**

I, Andrew Namiki Roberts, as Director of Hawaii Firearms Coalition, and on behalf of HIFICO members statewide, declare as follows:

1. I am the Director of the Hawaii Firearms Coalition as an institutional Plaintiff in the present case and a nonresident alien.

2 . I have personal knowledge of myself, my activities, and my intentions, as well as the activities of HIFICO and its members, including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions, and the activities of HIFICO and its members are true and correct.

Executed on June 22, 2023

ANDREW NAMIKI ROBERTS

72