THE SENATE
THIRTY-SECOND LEGISLATURE, 2023
STATE OF HAWAII

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

# A BILL FOR AN ACT

RELATING TO FIREARMS.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

1       SECTION 1.  The legislature finds that there are compelling

2   interests in protecting public health, safety, and welfare from

3   the serious hazards associated with firearms and gun violence.

4   Although the United States Supreme Court has held that the

5   Second Amendment provides for an individual right to keep and

6   bear arms for lawful purposes, the Second Amendment is not "a

7   regulatory straightjacket".  *New York State Rifle & Pistol*

8   *Ass'n, Inc*. *v. Bruen*, 142 S.Ct. 2111, 2133 (2022).  States

9   retain authority to enact "a 'variety' of gun regulations", *id*.

10  at 2162 (Kavanaugh, J., concurring), such as prohibitions

11  against the carrying of firearms in sensitive locations and laws

12  and regulations designed to ensure that those who carry firearms

13  are "'law-abiding, responsible citizens'", *id*. at 2131, 2156

14  (internal citation omitted).

15      The purpose of this Act is to clarify, revise, and update

16  Hawaii's firearms laws to mitigate the serious hazards to public

17  health, safety, and welfare associated with firearms and gun

18  violence, while respecting and protecting the lawful exercise of

EXHIBIT 1

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   individual rights.  To accomplish this purpose, this Act amends

2   and enacts requirements and processes for obtaining a license to

3   carry a firearm, updates criteria governing when firearm

4   ownership, possession, or control is prohibited, defines

5   locations and premises within the State where carrying or

6   possessing a firearm is prohibited, prohibits leaving an

7   unsecured firearm in a vehicle unattended, and enacts, amends,

8   and clarifies other provisions relating to firearms.

9       In prohibiting carrying or possessing firearms in certain

10  locations and premises within the State, this Act is intended to

11  protect areas in which carrying or possessing dangerous weapons

12  has traditionally been restricted, such as schools and other

13  places frequented by children, government buildings, polling

14  places, and other analogous locations.

15      This Act also respects the right of private individuals and

16  entities to choose for themselves whether to allow or restrict

17  the carrying of firearms on their property by providing that

18  firearms shall not be carried on private property of another

19  person without the express authorization of the owner, lessee,

20  operator, or manager of the property.  Recognizing the risks to

21  public health, safety, and welfare associated with firearms and



S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1    gun violence, and based on the legislature's assessment of

2    public sentiment and broadly shared preferences within the

3    State, this Act establishes a default rule with respect to

4    carrying firearms on private property of another person that

5    provides for private entities to "opt-in" to authorize the

6    public carry of firearms on their property.

7        This Act also adjusts certain regulatory fees relating to

8    firearms.  These adjustments are warranted because prior fee

9    amounts were established by statute decades ago and have not

10    been adjusted to reflect inflation and increased costs

11    associated with background checks and investigations.

12    SECTION 2.  Chapter 134, Hawaii Revised Statutes, is

13    amended by adding seven new sections to part I to be

14    appropriately designated and to read as follows:

15    "**§134-A  Carrying or possessing a firearm in certain**

16    **locations and premises prohibited; penalty.**  (a)  A person with

17    a license issued under section 134-9, or authorized to carry a

18    firearm in accordance with title 18 United States Code section

19    926B or 926C, shall not intentionally, knowingly, or recklessly

20    carry or possess a loaded or unloaded firearm, whether the

21    firearm is operable or not, and whether the firearm is concealed

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   or unconcealed, while in any of the following locations and

2   premises within the State:

3       (1)  Any building or office owned, leased, or used by the

4            State or a county, and adjacent grounds and parking

5            areas, including any portion of a building or office

6            used for court proceedings, legislative business,

7            contested case hearings, agency rulemaking, or other

8            activities of state or county government;

9       (2)  Any public or private hospital, mental health

10           facility, nursing home, clinic, medical office, urgent

11           care facility, or other place at which medical or

12           health services are customarily provided, including

13           adjacent parking areas;

14      (3)  Any adult or juvenile detention or correctional

15           facility, prison, or jail, including adjacent parking

16           areas;

17      (4)  Any bar or restaurant serving alcohol or intoxicating

18           liquor as defined in section 281-1 for consumption on

19           the premises, including adjacent parking areas;

20      (5)  Any stadium, movie theater, or concert hall, or any

21           place at which a professional, collegiate, high

1        school, amateur, or student sporting event is being

2        held, including adjacent parking areas;

3   (6)  All public library property, including buildings,

4        facilities, meeting rooms, spaces used for community

5        programming, adjacent grounds, and parking areas;

6   (7)  The campus or premises of any public or private

7        community college, college, or university, and

8        adjacent parking areas, including buildings,

9        classrooms, laboratories, research facilities,

10       artistic venues, and athletic fields or venues;

11  (8)  The campus or premises of any public school, charter

12       school, private school, preschool, summer camp, or

13       child care facility as defined in section 346-151,

14       including adjacent parking areas, but not including:

15      (A)  A private residence at which education is

16           provided for children who are all related to one

17           another by blood, marriage, or adoption; or

18      (B)  A dwelling when not used as a child care

19           facility;

20  (9)  Any beach, playground, park, or adjacent parking area,

21       including any state park, state monument, county park,

1  tennis court, golf course, swimming pool, or other

2  recreation area or facility under control,

3  maintenance, and management of the State or a county,

4  but not including an authorized target range or

5  shooting complex;

6  (10)  Any shelter, residential, or programmatic facility or

7  adjacent parking area operated by a government entity

8  or charitable organization serving unhoused persons,

9  victims of domestic violence, or children, including

10  children involved in the juvenile justice system;

11  (11)  Any voter service center as defined in section 11-1 or

12  other polling place, including adjacent parking areas;

13  (12)  The premises of any bank or financial institution as

14  defined in section 211D-1, including adjacent parking

15  areas;

16  (13)  Any place, facility, or vehicle used for public

17  transportation or public transit, and adjacent parking

18  areas, including buses, paratransit vans, bus shelters

19  and terminals (but not including bus stops located on

20  public sidewalks), trains, rail stations, and

21  airports;

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    (14)  Any amusement park, aquarium, carnival, circus, fair,

2          museum, water park, or zoo, including adjacent parking

3          areas; or

4    (15)  Any public gathering, public assembly, or special

5          event conducted on property open to the public,

6          including any demonstration, march, rally, vigil,

7          protest, picketing, or other public assembly, for

8          which a permit is obtained from the federal

9          government, the State, or a county, and the sidewalk

10         or street immediately adjacent to the public

11         gathering, public assembly, or special event; provided

12         that there are signs clearly and conspicuously posted

13         at visible places along the perimeter of the public

14         gathering, public assembly, or special event.

15   (b)  This section shall not apply to a person in an exempt

16  category identified in section 134-11(a).  It shall be an

17  affirmative defense to any prosecution under this section that a

18  person is:

19   (1)  Carrying or possessing an unloaded firearm in a police

20         station in accordance with section 134-23(a)(6), 134-

21         24(a)(6), or 134-25(a)(6);

# S.B. NO.

1    (2)   Carrying or possessing an unloaded firearm at an

2        organized, scheduled firearms show or exhibit;

3    (3)   Lawfully carrying or possessing a firearm for hunting

4        in compliance with section 134-5;

5    (4)   A private security officer expressly authorized to

6        carry or possess a weapon in a location or premises

7        listed in subsection (a) by the owner, lessee,

8        operator, or manager of the location or premises;

9        provided that the private security officer is acting

10       within the private security officer's scope of

11       employment;

12   (5)   Carrying or possessing an unloaded firearm in a

13       courthouse for evidentiary purposes with the prior

14       express authorization of the court;

15   (6)   Lawfully present within the person's own home, other

16       than a college or university dormitory or shelter or

17       residential facility serving unhoused persons or

18       victims of domestic violence;

19   (7)   Carrying a firearm pursuant to a license issued under

20       section 134-9 or in accordance with title 18 United

21       States Code section 926B or 926C in the immediate area

S.B. NO.

1   surrounding the person's vehicle within a parking area

2   for the limited purpose of storing or retrieving the

3   firearm;

4   (8)   Possessing a firearm in an airport or any place,

5   facility, or vehicle used for public transportation or

6   public transit; provided that the firearm is unloaded

7   and in a locked hard-sided container for the purpose

8   of transporting the firearm;

9   (9)   Walking through a public gathering, public assembly,

10   or special event if necessary to access the person's

11   residence, place of business, or vehicle; provided

12   that the person does not loiter or remain longer than

13   necessary to complete their travel or business; or

14   (10)   Carrying a concealed firearm in accordance with title

15   18 United States Code section 926B or 926C in a

16   location or premises within the State that is not a

17   State or county property, installation, building,

18   base, or park, and not a location or premises where a

19   private person or entity has prohibited or restricted

20   the possession of concealed firearms on their

21   property.

# S.B. NO.

1    (c)   The presence of a person in any location or premises

2    listed in subsection (a) shall be prima facie evidence that the

3    person knew it was a location or premises listed in subsection

4    (a).

5    (d)   Where only a portion of a building or office is owned,

6    leased, or used by the State or a county, this section shall not

7    apply to the portion of the building or office that is not

8    owned, leased, or used by the State or a county, unless carrying

9    or possessing a firearm within that portion is otherwise

10   prohibited by this section.

11   (e)   As used in this section, "private security officer"

12   means any person employed and duly licensed to engage in the

13   private detective or guard business pursuant to chapter 463.

14   (f)   Any person who violates this section shall be guilty

15   of a misdemeanor.

16   (g)   If any ordinance of any county of the State

17   establishing locations where the carrying of firearms is

18   prohibited is inconsistent with this section or with section

19   134-E, the ordinance shall be void to the extent of the

20   inconsistency.

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1   **§134-B   Duty to maintain possession of license while**

2   **carrying a firearm; duty to disclose; penalty.**   (a)   A person

3   carrying a firearm pursuant to a license issued under section

4   134-9 or in accordance with title 18 United States Code section

5   926B or 926C shall have in the person's immediate possession:

6       (1)   The license issued under section 134-9 or

7           documentation regarding the person's qualifications

8           under title 18 United States Code section 926B or

9           926C;

10      (2)   Government-issued photo identification; and

11      (3)   Except with respect to firearms that are a part of the

12          official equipment of any federal agency as provided

13          under section 134-11(b), documentary evidence that the

14          firearm being carried is registered under this

15          chapter,

16  and shall, upon request from a law enforcement officer, present

17  government-issued photo identification and the license or

18  credentials and evidence of registration.

19      (b)   When a person carrying a firearm, including a person

20  carrying a firearm pursuant to a license issued under section

21  134-9 or in accordance with title 18 United States Code section



1  926B or 926C, is stopped by a law enforcement officer or is a

2  driver or passenger in a vehicle stopped by a law enforcement

3  officer, the person carrying a firearm shall immediately

4  disclose to the law enforcement officer that the person is

5  carrying a firearm, and shall, upon request:

6      (1)  Identify the specific location of the firearm; and

7      (2)  Present to the law enforcement officer a license to

8           carry a firearm issued under section 134-9 or

9           documentation regarding the person's qualifications

10          under title 18 United States Code section 926B or

11          926C.

12     (c)  Any person who violates this section shall be guilty

13  of a petty misdemeanor.

14     **§134-C  Leaving unsecured firearm in vehicle unattended;**

15  **penalty.**  (a)  No person shall intentionally, knowingly, or

16  recklessly store or otherwise leave a loaded or unloaded firearm

17  out of the person's immediate possession or control inside a

18  vehicle without first securely locking the firearm in a safe

19  storage depository that is out of sight from outside of the

20  vehicle.

1     (b)  For purposes of this section, "safe storage

2  depository" means a safe or other secure impact- and

3  tamper-resistant container that, when locked, is incapable of

4  being opened without a key, keypad, combination, or other

5  unlocking mechanism and is capable of preventing an unauthorized

6  person from obtaining access to or possession of the firearm

7  contained therein.  A vehicle's trunk or glove box alone, even

8  if locked, is not a safe storage depository.

9     (c)  This section shall not apply to a person in an exempt

10  category identified in section 134-11(a).

11     (d)  Any person who violates subsection (a) shall be guilty

12  of a petty misdemeanor.

13     **§134-D**  **Unlawful conduct while carrying a firearm; penalty.**

14  (a)  A person carrying a firearm shall not:

15     (1)  Consume alcohol or intoxicating liquor;

16     (2)  Consume a controlled substance;

17     (3)  Be under the influence of alcohol or intoxicating

18          liquor; or

19     (4)  Be under the influence of a controlled substance.

20     (b)  As used in this section:

# S.B. NO.

1    "Alcohol" and "intoxicating liquor" shall have the same

2    meaning as in section 281-1.

3    "Controlled substance" means a drug, substance, or

4    immediate precursor in schedules I through III of part II of

5    chapter 329.

6    (c)  Any person who violates this section shall be guilty

7    of a misdemeanor; provided that any person who violates this

8    section by consuming or being under the influence of alcohol or

9    an intoxicating liquor shall be guilty of a petty misdemeanor.

10    §134-E  Carrying or possessing a firearm on private

11    property of another person without authorization; penalty.  (a)

12    A person carrying a firearm pursuant to a license issued under

13    section 134-9 shall not intentionally, knowingly, or recklessly

14    enter or remain on private property of another person while

15    carrying a loaded or unloaded firearm, whether the firearm is

16    operable or not, and whether the firearm is concealed or

17    unconcealed, unless the person has been given express

18    authorization to carry a firearm on the property by the owner,

19    lessee, operator, or manager of the property.

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (b)  For purposes of this section, express authorization to

2  carry or possess a firearm on private property shall be

3  signified by:

4      (1)  Unambiguous written or verbal authorization; or

5      (2)  The posting of clear and conspicuous signage at the

6           entrance of the building or on the premises,

7  by the owner, lessee, operator, or manager of the property, or

8  agent thereof, indicating that carrying or possessing a firearm

9  is authorized.

10      (c)  For purposes of this section:

11  "Private entity" means any homeowners' association,

12  community association, planned community association,

13  condominium association, cooperative, or any other

14  nongovernmental entity with covenants, bylaws, or administrative

15  rules, regulations, or provisions governing the use of private

16  property.

17  "Private property" does not include property that is owned

18  or leased by any governmental entity.

19  "Private property of another person" means residential,

20  commercial, industrial, agricultural, institutional, or

21  undeveloped property that is privately owned or leased, unless

1   the person carrying a firearm is an owner, lessee, operator, or

2   manager of the property, including an ownership interest in a

3   common element or limited common element of the property;

4   provided that nothing in this chapter shall be construed to

5   limit the enforceability of a provision in any private rental

6   agreement restricting a tenant's possession or use of firearms,

7   the enforceability of a restrictive covenant restricting the

8   possession or use of firearms, or the authority of any private

9   entity to restrict the possession or use of firearms on private

10  property.

11      (d)   This section shall not apply to a person in an exempt

12  category identified in section 134-11(a).

13      (e)   Any person who violates this section shall be guilty

14  of a misdemeanor."

15      §134-F   **Annual report on licenses to carry.**   (a)   No later

16  than April 1, 2024, and April 1 of each year thereafter, the

17  department of the attorney general shall publish a report on its

18  publicly available website that includes, if available:

19      (1)   The number of licenses to carry applied for, issued,

20            revoked, and denied, further categorized by the age,

1   gender, race, and county of residence of each

2   applicant or licensee;

3 (2) The specific reasons for each revocation and denial;

4 (3) Analysis of denials based on applicants' failure to

5   meet the standards of section 134-9(d), and

6   recommendations to remedy any disparities in denial

7   rates by age, gender, or race;

8 (4) The number of appeals and appeals granted; and

9 (5) The number of violations of section 134-A.

10 (b) No later than February 1 of each year, the chief of

11 police of each county shall supply the department of the

12 attorney general with the data the department requires to

13 complete the report under subsection (a).

14 **§134-G Failure to conceal a firearm by a concealed carry**

15 **licensee; penalty.** (a) A person commits the offense of failure

16 to conceal a firearm by a concealed carry licensee if a person

17 is carrying a firearm pursuant to a license issued under section

18 134-9(a) and intentionally, knowingly, or recklessly causes

19 alarm to another person by failing to conceal the firearm, even

20 briefly, whether the firearm was loaded or not, and whether

21 operable or not.

S.B. NO.

1      (b)   It shall be a defense to any prosecution under this

2 section if the person:

3      (1)   Was within the person's private residence; or

4      (2)   Caused the firearm to be unconcealed for the purpose

5            of self-defense in accordance with section 703-304 or

6            defense of another person in accordance with section

7            703-305.

8      (c)   Failure to conceal a firearm by a concealed carry

9 licensee shall be a petty misdemeanor."

10     SECTION 3.  Section 134-1, Hawaii Revised Statutes, is

11 amended as follows:

12     1.  By adding three new definitions to be appropriately

13 inserted and to read:

14     ""Concealed" means, in relation to a firearm, that the

15 firearm is entirely hidden from view of the public and not

16 discernible by ordinary observation, in a manner that a

17 reasonable person without law enforcement training would be

18 unable to detect the presence of the firearm.

19     "Criminal offense relating to firearms" means:

20     (1)   Any criminal offense under this chapter punishable as

21            a misdemeanor;

# S.B. NO.

1    (2)   Criminally negligent storage of a firearm under

2            section 707-714.5; and

3    (3)   Any other criminal offense punishable as a misdemeanor

4            under federal or state law or the law of another

5            state, a United States territory, or the District of

6            Columbia that has as an element of the offense the

7            use, attempted use, threatened use, or possession of a

8            firearm.

9    "Unconcealed" means not concealed."

10    2.   By amending the definition of "crime of violence" to

11  read:

12    ""Crime of violence" means [any]:

13    (1)   Any offense[, as defined in title 37,] under federal

14            or state law or the law of another state, a United

15            States territory, or the District of Columbia that

16            [involves injury] has as an element of the offense

17            the:

18        (A)   Injury or threat of injury to the person of

19               another[, including sexual]; or

20        (B)   Use, attempted use, or threatened use of physical

21               force against the person or property of another

# S.B. NO.

|   |   |   |
|---|---|---|
| 1 |  | or the creation of a substantial risk of causing |
| 2 |  | bodily injury; |
| 3 | (2) | Reckless endangering in the second degree under |
| 4 |  | section 707-714; |
| 5 | (3) | Terroristic threatening in the second degree under |
| 6 |  | section 707-717; |
| 7 | (4) | Sexual assault in the fourth degree under section 707- |
| 8 |  | 733 [and harassment]; |
| 9 | (5) | Endangering the welfare of a minor in the second |
| 10 |  | degree under section 709-904; |
| 11 | (6) | Endangering the welfare of an incompetent person under |
| 12 |  | section 709-905; |
| 13 | (7) | Harassment under section 711-1106(1)(a); |
| 14 | (8) | Harassment by stalking under section 711-1106.5[.]; |
| 15 | (9) | Criminal solicitation under section 705-510; provided |
| 16 |  | that the solicitation was for a crime described or |
| 17 |  | listed in paragraphs (1) to (8); |
| 18 | (10) | Criminal conspiracy under section 705-520; provided |
| 19 |  | that the conspiracy was for a crime described or |
| 20 |  | listed in paragraphs (1) to (8); and |

# S.B. NO.

1       (11)  Offenses under federal law, or the law of another

2             state, a United States territory, or the District of

3             Columbia, that are comparable to the offenses

4             described or listed in paragraphs (1) to (10)."

5      SECTION 4.   Section 134-2, Hawaii Revised Statutes, is

6  amended to read as follows:

7      "**§134-2 Permits to acquire.**   (a)   No person shall acquire

8  the ownership of a firearm, whether usable or unusable,

9  serviceable or unserviceable, modern or antique, registered

10  under prior law or by a prior owner or unregistered, either by

11  purchase, gift, inheritance, bequest, or in any other manner,

12  whether procured in the State or imported by mail, express,

13  freight, or otherwise, until the person has first procured from

14  the chief of police of the county of the person's place of

15  business or, if there is no place of business, the person's

16  residence or, if there is neither place of business nor

17  residence, the person's place of sojourn, a permit to acquire

18  the ownership of a firearm as prescribed in this section.   When

19  title to any firearm is acquired by inheritance or bequest, the

20  foregoing permit shall be obtained before taking possession of

21  [a] the firearm; provided that upon presentation of a copy of

S.B. NO.

1   the death certificate of the owner making the bequest, any heir

2   or legatee may transfer the inherited or bequested firearm

3   directly to a dealer licensed under section 134-31 or licensed

4   by the United States Department of Justice without complying

5   with the requirements of this section.

6        (b)   The permit application form shall [include the]:

7        (1)   Include:

8              (A)   The applicant's name, address, [sex,] gender,

9                    height, weight, date of birth, place of birth,

10                   country of citizenship, social security number,

11                   alien or admission number[, and information];

12             (B)   Information regarding the applicant's mental

13                   health history;

14             (C)   Any aliases or other names previously used by the

15                   applicant;

16             (D)   Information that is or may be relevant in

17                   determining whether the applicant is disqualified

18                   under section 134-7 from the ownership,

19                   possession, or control of a firearm; and

20             (E)   Information that is or may be relevant in

21                   determining whether the applicant lacks the

S.B. NO.

1   essential character or temperament necessary to

2   be entrusted with a firearm as set forth in

3   subsection (e); and [shall require]

4 (2) Require the fingerprinting and photographing of the

5   applicant by the police department of the county of

6   registration; provided that where fingerprints and a

7   photograph are already on file with the department,

8   these may be waived.

9 (c) An applicant for a permit shall [sign]:

10 (1) Sign a waiver at the time of application, allowing the

11   chief of police of the county issuing the permit or a

12   designee of the chief of police access to [any] all

13   records that have a bearing on the mental health of

14   the applicant[.  The permit application form and the

15   waiver form shall be prescribed by the attorney

16   general and shall be uniform throughout the State.];

17   and

18 (2) Identify any health care providers who possess or may

19   possess the records described in paragraph (1).

20 (d) The chief of police of the respective counties [may]

21 shall issue permits to acquire firearms to [citizens]:

(1)    Citizens, nationals, or lawful permanent residents of

the United States of the age of twenty-one years or

more[, or duly];

(2)    Duly accredited official representatives of foreign

nations[, or duly];

(3)    Duly commissioned law enforcement officers of the

State who are aliens; provided that any law

enforcement officer who is the owner of a firearm and

who is an alien shall transfer ownership of the

firearm within forty-eight hours after termination of

employment from a law enforcement agency[. The chief

of police of each county may issue permits to aliens];

(4)    Aliens of the age of eighteen years or more for use of

rifles and shotguns for a period not exceeding sixty

days, upon a showing that the alien has first procured

a hunting license under chapter 183D, part II[. The

chief of police of each county may issue permits to

aliens]; and

(5)    Aliens of the age of twenty-one years or more for use

of firearms for a period not exceeding six months,

upon a showing that the alien is in training for a

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1          specific organized sport-shooting contest to be held

2          within the permit period.

3    The attorney general [shall] may adopt rules, pursuant to

4    chapter 91, as to what constitutes sufficient evidence that an

5    alien is in training for a sport-shooting contest.

6    Notwithstanding any law to the contrary and upon joint

7    application, the chief of police may, upon request, issue

8    permits to acquire firearms jointly to spouses who otherwise

9    qualify to obtain permits under this section.

10    (e)  The permit application form shall be signed by the

11    applicant and [by the] issuing authority.  One copy of the

12    permit shall be retained by the issuing authority as a permanent

13    official record.  Except for sales to dealers licensed under

14    section 134-31, [or] dealers licensed by the United States

15    Department of Justice, [or] law enforcement officers, [or where

16    a license is granted under section 134-9,] or where any firearm

17    is registered pursuant to section 134-3(a), no permit shall be

18    issued to an applicant earlier than fourteen calendar days after

19    the date of the application; provided that a permit shall be

20    issued or the application denied before the [twentieth] fortieth

21    day from the date of application.  Permits issued to acquire any

S.B. NO.

1   pistol or revolver shall be void unless used within [ten] thirty

2   days after the date of issue.  Permits to acquire a pistol or

3   revolver shall require a separate application and permit for

4   each transaction.  Permits issued to acquire any rifle or

5   shotgun shall entitle the permittee to make subsequent purchases

6   of rifles or shotguns for a period of one year from the date of

7   issue without a separate application and permit for each

8   acquisition, subject to the disqualifications under section 134-

9   7 and [subject to] revocation under section 134-13; provided

10   that if a permittee is arrested for committing a felony [or

11   any], a crime of violence, a criminal offense relating to

12   firearms, or for the illegal sale or distribution of any drug,

13   the permit shall be impounded and [shall be] surrendered to the

14   issuing authority.  The issuing authority shall perform an

15   inquiry on an applicant by using the International Justice and

16   Public Safety Network, including the United States Immigration

17   and Customs Enforcement query, [the] National Crime Information

18   Center, and [the] National Instant Criminal Background Check

19   System, pursuant to section 846-2.7 before any determination to

20   issue a permit or to deny an application is made.  The issuing

21   authority shall not issue a permit to acquire the ownership of a

# S.B. NO.

1  firearm if an applicant is disqualified under section 134-7 from

2  the ownership, possession, or control of a firearm, or if the

3  issuing authority determines that issuance would not be in the

4  interest of public health, safety, or welfare because the person

5  lacks the essential character or temperament necessary to be

6  entrusted with a firearm.  In determining whether a person lacks

7  the essential character or temperament necessary to be entrusted

8  with a firearm, the issuing authority shall consider whether the

9  person poses a danger of causing a self-inflicted bodily injury

10  or unlawful injury to another person, as evidenced by:

11      (1)  Information from a health care provider indicating

12          that the person has had suicidal or homicidal thoughts

13          or tendencies within the preceding five years;

14      (2)  Statements or actions by the person indicating any

15          dangerous propensity or violent animus toward one or

16          more individuals or groups, including groups based on

17          race, color, national origin, ancestry, sex, gender

18          identity, gender expression, sexual orientation, age,

19          disability, religion, or any other characteristic, and

20          the propensity or animus is of a nature or to an

21          extent that would objectively indicate to a reasonable

S.B. NO.

1      observer that it would not be in the interest of the

2      public health, safety, or welfare for the person to

3      own, possess, or control a firearm or ammunition; or

4    (3)  Other information that would lead a reasonable,

5      objective observer to conclude that the person

6      presents or would present a danger to the community as

7      a result of acquiring or possessing a firearm or

8      intends or is likely to use a firearm for an unlawful

9      purpose or in an unlawful manner.

10    (f)  In all cases where a pistol or revolver is acquired

11  from another person within the State, the permit shall be signed

12  in ink by the person to whom title to the pistol or revolver is

13  transferred and shall be delivered to the person who is

14  transferring title to the firearm, who shall verify that the

15  person to whom the firearm is to be transferred is the person

16  named in the permit and enter on the permit in the space

17  provided the following information:  name, address, and

18  telephone number of the person who transferred the firearm;

19  name, address, and telephone number of the person to whom the

20  title to the firearm was transferred;  names of the manufacturer

21  and importer; model; type of action; caliber or gauge; and

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1   serial number, as applicable.  The person who is transferring

2   title to the firearm shall sign the permit in ink and cause the

3   permit to be delivered or sent by registered mail to the issuing

4   authority within forty-eight hours after transferring the

5   firearm.

6        In all cases where receipt of a firearm is had by mail,

7   express, freight, or otherwise from sources [~~without~~] <u>outside</u>

8   the State, the person to whom the permit has been issued shall

9   make the prescribed entries on the permit, sign the permit in

10  ink, and cause the permit to be delivered or sent by registered

11  mail to the issuing authority within forty-eight hours after

12  taking possession of the firearm.

13       In all cases where a rifle or shotgun is acquired from

14  another person within the State, the person who is transferring

15  title to the rifle or shotgun shall submit, within forty-eight

16  hours after transferring the firearm, to the authority that

17  issued the permit to acquire, the following information, in

18  writing:  name<u>, address, and telephone number</u> of the person who

19  transferred the firearm[~~,~~]<u>;</u> name<u>, address, and telephone number</u>

20  of the person to whom the title to the firearm was transferred;

S.B. NO.

1   names of the manufacturer and importer; model; type of action;

2   caliber or gauge; and serial number, as applicable.

3   (g)   [Effective July 1, 1995, no] No person shall be issued

4   a permit under this section for the acquisition of a [pistol or

5   revolver] firearm unless the person, [at any time prior to]

6   within the four years before the issuance of the permit, has

7   completed:

8   (1)   An approved hunter education course as authorized

9         under section 183D-28[+], unless the applicant seeks

10        to acquire a pistol or revolver, in which case the

11        applicant shall complete a training satisfying the

12        requirements of paragraph (2), (3), or (4);

13  (2)   A firearms safety or training course or class

14        available to the general public offered by a law

15        enforcement agency of the State or of any county;

16  (3)   A firearms safety or training course offered to law

17        enforcement officers, security guards, investigators,

18        deputy sheriffs, or any division or subdivision of law

19        enforcement or security enforcement by a state or

20        county law enforcement agency; or

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (4)   A firearms training or safety course or class

2            conducted by a [~~state certified or National Rifle~~

3            ~~Association certified firearms instructor~~] firearms

4            instructor certified or verified by the chief of

5            police of the respective county or a designee of the

6            chief of police or certified by a nongovernmental

7            organization approved for such purposes by the chief

8            of police of the respective county or a designee of

9            the chief of police, or conducted by a certified

10           military firearms instructor; provided that the

11           firearms training or safety course or class provides,

12           at a minimum, a total of at least two hours of firing

13           training at a firing range and a total of at least

14           four hours of classroom instruction, which may include

15           a video, that focuses on:

16        (A)   The safe use, handling, and storage of firearms

17            and firearm safety in the home[~~.~~], as well as a

18            component on mental health, suicide prevention,

19            and domestic violence issues associated with

20            firearms and firearm violence; and

21        (B)   Education on the firearm laws of the State.

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     An affidavit signed by the certified <u>or verified</u>

2     firearms instructor who conducted or taught the

3     course, providing the name, address, and phone number

4     of the instructor and attesting to the successful

5     completion of the course by the applicant shall

6     constitute evidence of certified successful completion

7     under this paragraph[.]<u>; provided that an instructor</u>

8     <u>shall not submit an affidavit signed by the instructor</u>

9     <u>for the instructor's own permit application.</u>

10   (h)   No person shall sell, give, lend, or deliver into the

11  possession of another any firearm except in accordance with this

12  chapter.

13   (i)   No fee shall be charged for permits, or applications

14  for permits, under this section, except for a single fee

15  chargeable by and payable to the issuing county[, for

16  individuals applying for their first permit,] in an amount equal

17  to the fee charged by the Hawaii criminal justice data center

18  pursuant to section 846-2.7.  In the case of a joint

19  application, the fee provided for in this section may be charged

20  to each person [to whom no previous permit has been issued].  <u>If</u>

21  <u>an application under this section is denied, the chief of police</u>

# S.B. NO.

1 or a designee of the chief of police shall notify the applicant

2 of the denial in writing, stating the ground or grounds for the

3 denial and informing the applicant of the right to seek review

4 of the denial through a hearing pursuant to subsection (k).

5 (j)  In all cases where a permit application under this

6 section is denied because an applicant is prohibited from

7 owning, possessing, receiving, or controlling firearms under

8 federal or state law, the chief of police of the applicable

9 county shall, within ten business days from the date of denial,

10 send written notice of the denial, including the identity of the

11 applicant and the reasons for the denial, to the:

12 (1)  Prosecuting attorney in the county where the permit

13     was denied;

14 (2)  Attorney general;

15 (3)  United States Attorney for the District of Hawaii; and

16 (4)  Director of public safety.

17 If the permit to acquire was denied because the applicant

18 is subject to an order described in section 134-7(f), the chief

19 of police shall, within three business days from the date of

20 denial, send written notice of the denial to the court that

21 issued the order.

# S.B. NO.

1   When the director of public safety receives notice that an

2   applicant has been denied a permit because of a prior criminal

3   conviction, the director of public safety shall determine

4   whether the applicant is currently serving a term of probation

5   or parole, and if the applicant is serving such a term, send

6   written notice of the denial to the applicant's probation or

7   parole officer.

8   (k)  If an application under this section is denied, a

9   person or entity aggrieved by the denial shall be entitled to a

10  hearing before the chief of police of the appropriate county or

11  a designee of the chief of police.  A person or entity aggrieved

12  by the denial shall submit a request for a hearing in writing to

13  the chief of police of the appropriate county no later than

14  thirty days following the date of the decision or determination

15  notice.  The hearing shall constitute a contested case hearing

16  for purposes of chapter 91.  Following the hearing and final

17  decision, an aggrieved party shall be entitled to a judicial

18  review proceeding in state circuit court in accordance with

19  section 91-14.

S.B. NO.

1  (1)  The permit application form and the waiver form

2  required under this section shall be prescribed by the issuing

3  authority."

4  SECTION 5.  Section 134-4, Hawaii Revised Statutes, is

5  amended by amending subsection (d) to read as follows:

6  "(d)  No person shall intentionally, knowingly, or

7  recklessly lend a firearm to any person who is prohibited from

8  ownership [or], possession, or control of a firearm under

9  section 134-7."

10  SECTION 6.  Section 134-7, Hawaii Revised Statutes, is

11  amended to read as follows:

12  "§134-7  Ownership [or], possession, or control prohibited,

13  when; penalty.  (a)  No person who is a fugitive from justice or

14  [is a person] prohibited from possessing [firearms] a firearm or

15  ammunition under title 18 United States Code section 922 or any

16  other provision of federal law shall own, possess, or control

17  any firearm or ammunition [therefor].

18  (b)  No person who [is under indictment for, or has waived

19  indictment for, or has been bound over to the circuit court

20  for,] is being prosecuted for one or more charges for a felony,

21  a crime of violence, a criminal offense relating to firearms, or

1   an illegal sale or distribution of any drug in a court in this

2   State or elsewhere, or who has been convicted in this State or

3   elsewhere of having committed a felony, [or any] a crime of

4   violence, a criminal offense relating to firearms, or an illegal

5   sale or distribution of any drug shall own, possess, or control

6   any firearm or ammunition [therefor].

7       (c)   No person [who:] shall own, possess, or control any

8   firearm or ammunition if the person:

9       (1)   Is or has been under treatment or counseling for

10             addiction to, abuse of, or dependence upon any

11             dangerous, harmful, or detrimental drug, intoxicating

12             compound as defined in section 712-1240, or

13             intoxicating liquor;

14      (2)   Has been acquitted of a crime on the grounds of mental

15             disease, disorder, or defect pursuant to section 704-

16             411[,] or any similar provision under federal law, or

17             the law of another state, a United States territory,

18             or the District of Columbia;

19      (3)   Is or has been diagnosed [as having a significant

20             behavioral, emotional, or mental disorders as defined

21             by the most current diagnostic manual of the American



# S.B. NO.

1    ~~Psychiatric Association or for treatment for organic~~

2    ~~brain syndromes;~~] with or treated for a medical,

3    behavioral, psychological, emotional, or mental

4    condition or disorder that causes or is likely to

5    cause impairment in judgment, perception, or impulse

6    control to an extent that presents an unreasonable

7    risk to public health, safety, or welfare if the

8    person were in possession or control of a firearm; or

9    (4)   Has been adjudged to:

10        (A)   Meet the criteria for involuntary hospitalization

11              under section 334-60.2; or

12        (B)   Be an "incapacitated person", as defined in

13              section 560:5-102,

14   [~~shall own, possess, or control any firearm or ammunition~~

15   ~~therefor,~~] unless the person [~~has been medically documented to~~

16   ~~be~~] establishes, with appropriate medical documentation, that

17   the person is no longer adversely affected by [~~the addiction,~~

18   ~~abuse, dependence, mental disease, disorder, or defect.~~] the

19   criteria or statuses identified in this subsection.

20        (d)   No person who is less than twenty-five years old and

21   has been adjudicated by the family court to have committed a

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    felony, [two or more crimes] a crime of violence, a criminal

2    offense relating to firearms, or an illegal sale or distribution

3    of any drug shall own, possess, or control any firearm or

4    ammunition [therefor].

5         (e)  No minor [who:] shall own, possess, or control any

6    firearm or ammunition if the minor:

7         (1)  Is or has been under treatment for addiction to any

8              dangerous, harmful, or detrimental drug, intoxicating

9              compound as defined in section 712-1240, or

10             intoxicating liquor;

11        (2)  Is a fugitive from justice; or

12        (3)  Has been determined not to have been responsible for a

13             criminal act or has been committed to any institution

14             on account of a mental disease, disorder, or

15             defect[,],

16   [shall own, possess, or control any firearm or ammunition

17   therefor,] unless the minor [has been medically documented to

18   be] establishes, with appropriate medical documentation, that

19   the minor is no longer adversely affected by the addiction,

20   mental disease, disorder, or defect.

# S.B. NO.

1    For the purposes of enforcing this section, and

2    notwithstanding section 571-84 or any other law to the contrary,

3    any agency within the State shall make its records relating to

4    family court adjudications available to law enforcement

5    officials.

6    (f)  No person who has been restrained pursuant to an order

7    of any court, including a gun violence protective order issued

8    pursuant to part IV, from contacting, threatening, or physically

9    abusing any person, shall possess, control, or transfer

10   ownership of any firearm or ammunition [~~therefor~~], so long as

11   the protective order, restraining order, or any extension is in

12   effect[, ~~unless the order, for good cause shown, specifically~~

13   ~~permits the possession of a firearm and ammunition~~].  The

14   protective order or restraining order shall specifically include

15   a statement that possession, control, or transfer of ownership

16   of a firearm or ammunition by the person named in the order is

17   prohibited.  The person shall relinquish possession and control

18   of any firearm and ammunition owned by that person to the police

19   department of the appropriate county for safekeeping for the

20   duration of the order or extension thereof.  At the time of

21   service of a protective order or restraining order involving

S.B. NO.

1   firearms and ammunition issued by any court, a police officer

2   may take custody of any and all firearms and ammunition in plain

3   sight, those discovered pursuant to a consensual search, and

4   those firearms surrendered by the person restrained.  If the

5   person restrained is the registered owner of a firearm and knows

6   the location of the firearm, but refuses to surrender the

7   firearm or [refuses to] disclose the location of the firearm,

8   the person restrained shall be guilty of a misdemeanor.  In any

9   case, when a police officer is unable to locate the firearms and

10  ammunition either registered under this chapter or known to the

11  person granted protection by the court, the police officer shall

12  apply to the court for a search warrant pursuant to chapter 803

13  for the limited purpose of seizing the firearm and ammunition.

14       [For the purposes of this subsection, good cause shall not

15  be based solely upon the consideration that the person subject

16  to restraint pursuant to an order of any court is required to

17  possess or carry firearms or ammunition during the course of the

18  person's employment.  Good cause consideration may include but

19  not be limited to the protection and safety of the person to

20  whom a restraining order is granted.]

# S.B. NO.

1    (g)  Any person disqualified from ownership, possession,

2    control, or the right to transfer ownership of firearms and

3    ammunition under this section shall surrender or dispose of all

4    firearms and ammunition in compliance with section 134-7.3.

5    (h)  Any person who otherwise would be prohibited under

6    subsection (b) from owning, possessing, or controlling a firearm

7    and ammunition solely as a result of a conviction for a crime

8    that is not a felony, and who is not prohibited from owning,

9    possessing, or controlling a firearm or ammunition for any

10   reason under any other provision of this chapter or under title

11   18 United States Code section 922 or another provision of

12   federal law, shall not be prohibited under this section from

13   owning, possessing, or controlling a firearm and ammunition if

14   twenty years have elapsed from the date of the conviction.

15   [(h)] (i)  Any person violating subsection (a) or (b) shall

16   be guilty of a class C felony; provided that any felon violating

17   subsection (b) shall be guilty of a class B felony.  Any person

18   violating subsection (c), (d), (e), (f), or (g) shall be guilty

19   of a misdemeanor."

20   SECTION 7.  Section 134-9, Hawaii Revised Statutes, is

21   amended to read as follows:

**S.B. NO.** 1230
S.D. 2
H.D. 1
C.D. 1

1     "**§134-9 Licenses to carry.** (a) [~~In an exceptional case,~~

2  ~~when an applicant shows reason to fear injury to the applicant's~~

3  ~~person or property, the~~] The chief of police of [~~the~~

4  ~~appropriate~~] a county [~~may~~] shall grant a license to an

5  applicant [~~who is a citizen of the United States of the age of~~

6  ~~twenty-one years or more or to a duly accredited official~~

7  ~~representative of a foreign nation of the age of twenty-one~~

8  ~~years or more~~] to carry a pistol or revolver and ammunition

9  [~~therefor~~] concealed on the licensee's person within [~~the county~~

10  ~~where the license is granted.  Where the urgency or the need has~~

11  ~~been sufficiently indicated, the respective~~] the State, if the

12  applicant:

13    (1)  Satisfies each of the criteria established by or

14          pursuant to subsection (d);

15    (2)  Is not prohibited under section 134-7 from the

16          ownership, possession, or control of a firearm and

17          ammunition;

18    (3)  Is not found to be lacking the essential character or

19          temperament necessary to be entrusted with a firearm

20          as set forth in subsection (h);

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      (4)  Is a citizen, national, or lawful permanent resident

2          of the United States or a duly accredited official

3          representative of a foreign nation;

4      (5)  Is a resident of the State; and

5      (6)  Is of the age of twenty-one years or more.

6      (b)  The chief of police of a county may grant to an

7 applicant [of good moral character who is a citizen of the

8 United States of the age of twenty-one years or more, is engaged

9 in the protection of life and property, and is not prohibited

10 under section 134-7 from the ownership or possession of a

11 firearm,] a license to carry a pistol or revolver and ammunition

12 [therefor] unconcealed on the licensee's person within the

13 county where the license is granted[.], if the applicant:

14      (1)  Sufficiently establishes the urgency or need to carry

15          a firearm unconcealed;

16      (2)  Is engaged in the protection of life and property;

17      (3)  Satisfies each of the criteria established by or

18          pursuant to subsection (d);

19      (4)  Is not prohibited under section 134-7 from the

20          ownership, possession, or control of a firearm and

21          ammunition;

S.B. NO.

1        (5)   Is not found to be lacking the essential character or

2             temperament necessary to be entrusted with a firearm

3             as set forth in subsection (h);

4        (6)   Is a citizen, national, or lawful permanent resident

5             of the United States; and

6        (7)   Is of the age of twenty-one years or more.

7        (c)   The chief of police of the appropriate county, or [~~the~~

8 ~~chief's~~] a designated representative[~~,~~] of the chief of police,

9 shall perform an inquiry on an applicant by using the National

10 Instant Criminal Background Check System, to include a check of

11 the Immigration and Customs Enforcement databases [~~where~~] if the

12 applicant is not a citizen of the United States, before any

13 determination to grant a concealed or unconcealed license is

14 made.  [~~Unless renewed, the license shall expire one year from~~

15 ~~the date of issue.~~

16    ~~(b)  The chief of police of each county shall adopt~~

17 ~~procedures to require that any person granted a license to carry~~

18 ~~a concealed weapon on the person shall:~~]

19    (d)  To be eligible to receive a license to carry a

20 concealed or unconcealed pistol or revolver on the licensee's

21 person, the applicant shall:

S.B. NO.

1      (1)      [~~Be qualified to use the firearm in a safe manner;~~]

2            Submit the appropriate carry license application, in

3            person, to the chief of police of the appropriate

4            county, with:

5            (A)    All fields on the application form completed and

6                 all questions answered truthfully, under penalty

7                 of law;

8            (B)    All required signatures present on the

9                 application;

10           (C)    Any required documents attached to the

11                application; and

12          (D)    Payment of the nonrefundable license application

13                fee required under this section;

14      (2)      [~~Appear to be a suitable person to be so licensed;~~] Be

15            the registered owner of the firearm or firearms for

16            which the license to carry will be issued; provided

17            that this paragraph shall not apply to detectives,

18            private detectives, investigators, and guards with an

19            active license issued pursuant to chapter 463;

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        (3)   Not be prohibited under section 134-7 from the

2               ownership [or], possession, or control of a firearm;

3               [and]

4        (4)   [Not have been adjudged insane or not appear to be

5               mentally deranged.] Have completed a course of

6               training as described in subsection (e) and be

7               certified as qualified to use the firearm or firearms

8               for which the license to carry will be issued in a

9               safe manner; and

10       (5)   Sign an affidavit expressly acknowledging that:

11           (A)   The applicant has read and is responsible for

12                  understanding and complying with the federal,

13                  state, and county laws governing the permissible

14                  use of firearms and associated requirements,

15                  including:

16               (i)   The prohibition on carrying or possessing a

17                      firearm in certain locations and premises;

18              (ii)   The prohibition on carrying more than one

19                      firearm on the licensee's person at one

20                      time;

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1        (iii) The prohibition on carrying a firearm on

2               private property of another person without

3               the express authorization of the owner,

4               lessee, operator, or manager of the private

5               property;

6        (iv) The requirement to maintain possession of

7               the license on the licensee's person while

8               carrying a firearm;

9        (v) The requirement to disclose information

10              regarding the carrying of a firearm when

11              stopped by law enforcement;

12       (vi) The provision for absolute liability for

13             injury or property damage proximately caused

14             by a legally unjustified discharge of a

15             firearm under section 663-9.5; and

16      (vii) Laws regarding the use of deadly force for

17             self-defense or the defense of another;

18    (B) A license to carry issued under this section

19         shall be void if a licensee becomes disqualified

20         from the ownership, possession, or control of a

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1  firearm pursuant to section 134-7(a), (b), (d),

2  or (f);

3    (C)  The license shall be subject to revocation under

4       section 134-13 if a licensee for any other reason

5       becomes disqualified under section 134-7 from the

6       ownership, possession, or control of a firearm;

7       and

8    (D)  A license that is revoked or that becomes void

9       shall be returned to the chief of police of the

10      appropriate county within forty-eight hours after

11      the license is revoked or becomes void.

12  [(c)  No person shall carry concealed or unconcealed on the

13 person a pistol or revolver without being licensed to do so

14 under this section or in compliance with sections 134-5(c) or

15 134-25.

16    (d)  A fee of $10 shall be charged for each license and

17 shall be deposited in the treasury of the county in which the

18 license is granted.]

19    (e)  The course of training for issuance of a license under

20 this section may be any course acceptable to the licensing

21 authority that meets all of the following criteria:

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

(1) The course shall include in-person instruction on firearm safety; firearm handling; shooting technique; safe storage; legal methods to transport firearms and secure firearms in vehicles; laws governing places in which persons are prohibited from carrying a firearm; firearm usage in low-light situations; situational awareness and conflict management; and laws governing firearms, including information regarding the circumstances in which deadly force may be used for self-defense or the defense of another;

(2) The course shall include a component on mental health and mental health resources;

(3) Except for the component on mental health and mental health resources, the course shall be conducted by one or more firearms instructors certified or verified by the chief of police of the respective county or a designee of the chief of police or certified by a nongovernmental organization approved for those purposes by the chief of police of the respective county or a designee of the chief of police, or

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1      conducted by one or more certified military firearms

2      instructors;

3   (4)   The course shall require participants to demonstrate

4      their understanding of the covered topics by achieving

5      a score of at least seventy per cent on a written

6      examination; and

7   (5)   The course shall include live-fire shooting exercises

8      on a firing range and shall include a demonstration by

9      the applicant of safe handling of, and shooting

10      proficiency with, each firearm that the applicant is

11      applying to be licensed to carry.

12   (f)   Upon passing the course of training identified in

13 subsection (e), the applicant shall obtain from the instructor,

14 and include as part of the applicant's application package, a

15 certification as to the following:

16   (1)   The applicant's name, as confirmed by reviewing the

17      applicant's government-issued photo identification;

18   (2)   The date and location of the firearm proficiency test;

19   (3)   The firearm or firearms that the applicant used in the

20      firearm proficiency test;

S.B. NO.

1      (4)   The applicant's score; provided that an indication

2             that the applicant passed or failed, without the score

3             itself, shall be insufficient information for the

4             purposes of the application; and

5      (5)   The instructor's qualifications to administer the

6             firearm proficiency test.

7    The certification of the above information, signed by the

8    firearms instructor who conducted or taught the course,

9    providing the name, address, and phone number of the instructor,

10   shall constitute evidence of successful completion of the

11   course; provided that the instructor shall not submit a

12   certification signed by the instructor for the instructor's own

13   license application.  The course of training for issuance of a

14   license under this section shall be undertaken at the licensee's

15   expense.

16      (g)   An applicant for a license under this section shall:

17      (1)   Sign a waiver at the time of application, allowing the

18             chief of police of the county issuing the license or a

19             designee of the chief of police access to any records

20             that have a bearing on the mental health of the

21             applicant; and

# S.B. NO. <small>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</small>

1       (2)   Identify any health care providers who possess or may

2            possess the records described in paragraph (1).

3       (h)  In determining whether a person lacks the essential

4  character or temperament necessary to be entrusted with a

5  firearm, the licensing authority shall consider whether the

6  person poses a danger of causing a self-inflicted bodily injury

7  or unlawful injury to another person, as evidenced by:

8       (1)  Information from a health care provider indicating

9            that the person has had suicidal or homicidal thoughts

10           or tendencies within the preceding five years;

11      (2)  Statements or actions by the person indicating any

12           dangerous propensity or violent animus toward one or

13           more individuals or groups, including groups based on

14           race, color, national origin, ancestry, sex, gender

15           identity, gender expression, sexual orientation, age,

16           disability, religion, or any other characteristic, and

17           the propensity or animus is of a nature or to an

18           extent that would objectively indicate to a reasonable

19           observer that it would not be in the interest of the

20           public health, safety, or welfare for the person to

21           own, possess, or control a firearm or ammunition; or

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

(3)    Other information that would lead a reasonable,
       objective observer to conclude that the person
       presents or would present a danger to the community as
       a result of carrying a firearm in public or intends or
       is likely to use a firearm for an unlawful purpose or
       in an unlawful manner.

(i)  A nonrefundable fee of $150 shall be charged for each
license application submitted under this section.  The fee shall
be chargeable by and payable to the appropriate county and shall
be used for expenses related to police services.  The issuing
authority shall waive the fee required by this subsection upon a
showing of financial hardship by the applicant.

(j)  If the applicant satisfies each of the requirements
for a concealed carry license, an application for a concealed
carry license submitted to the chief of police of the
appropriate county under this section shall be approved within a
reasonable time after receipt of all required application
materials.  If the applicant does not satisfy one or more of the
requirements for a concealed carry license, the license shall be
denied within a reasonable time after receipt of the application
materials.  If an application is denied, the chief of police or

# S.B. NO. 1230

1   a designee of the chief of police shall notify the applicant of

2   the denial in writing, stating the ground or grounds for the

3   denial and informing the applicant of the right to seek review

4   of the denial through a hearing pursuant to subsection (k).  If

5   the chief of police does not grant or deny a submitted

6   application for a concealed carry license within one hundred

7   twenty days following the date of the application, the

8   application shall be deemed denied as of that date for purposes

9   of subsection (k).

10       (k)  If an application under this section is denied, a

11   person or entity aggrieved by the denial shall be entitled to a

12   hearing before the chief of police of the appropriate county or

13   a designee of the chief of police.  A person or entity aggrieved

14   by the denial shall submit a request for a hearing in writing to

15   the chief of police of the appropriate county no later than

16   thirty days following the date of the decision or determination

17   notice.  The hearing shall constitute a contested case hearing

18   for purposes of chapter 91.  Following the hearing and final

19   decision, an aggrieved party shall be entitled to a judicial

20   review proceeding in state circuit court in accordance with

21   section 91-14.



# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1       (1)   If an application pursuant to this section is

2  approved, the chief of police shall issue the applicant a

3  license that contains, at minimum:

4       (1)   The licensee's name;

5       (2)   The licensee's address;

6       (3)   A photograph of the licensee taken within ninety days

7            before issuance of the license;

8       (4)   The county of issuance;

9       (5)   A notation as to whether the license permits concealed

10          or unconcealed carry;

11      (6)   The serial number of each registered firearm that the

12          licensee may carry pursuant to the license; and

13      (7)   The license expiration date.

14  The license issued under this subsection shall not constitute a

15  government-issued photo identification document under federal or

16  state law.

17      (m)   Unless renewed, a concealed or unconcealed license

18  shall expire four years from the date of issue.

19      (n)   A license to carry issued under this section shall be

20  void if a licensee becomes disqualified from the ownership,

21  possession, or control of a firearm pursuant to section 134-

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1  7(a), (b), (d), or (f).  If a licensee for any other reason

2  becomes disqualified under section 134-7 from the ownership,

3  possession, or control of a firearm, the license shall be

4  subject to revocation under section 134-13.  A license that is

5  void or revoked shall be returned to the chief of police of the

6  appropriate county within forty-eight hours after the license

7  becomes void or is revoked.

8      (o)  The chief of police of each county shall adopt

9  procedures to implement this section.

10     (p)  The chief of police of each county shall establish

11  procedures and criteria for the renewal of licenses issued under

12  this section.  No license renewal shall be granted if an

13  applicant for a renewed license does not satisfy, or no longer

14  satisfies, the eligibility criteria for a new license set forth

15  in subsections (a) through (d).  As a precondition for the

16  renewal of licenses issued under this section, the chief of

17  police of each county may establish reasonable continuing

18  education, training, and certification requirements, including

19  requirements pertaining to the safe handling of firearms and

20  shooting proficiency.  A nonrefundable fee of $50 shall be

21  charged for each license renewal application submitted under



S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1   this section.  The fee shall be chargeable by and payable to the

2   appropriate county and shall be used for expenses related to

3   police services.  The issuing authority shall waive the fee

4   required by this subsection upon a showing of financial hardship

5   by the applicant.

6       (q)  No person carrying a firearm pursuant to a license

7   issued under this section shall intentionally, knowingly, or

8   recklessly carry more than one firearm on the licensee's person

9   at one time.

10      (r)  A license issued by the chief of police of a county

11  within the State under subsection (a) to carry a pistol or

12  revolver and ammunition concealed on the licensee's person shall

13  be valid for use in each county within the State."

14      SECTION 8.  Section 134-13, Hawaii Revised Statutes, is

15  amended to read as follows:

16      "§134-13  Revocation of permits[.] and licenses.  (a)  All

17  permits and licenses provided for under this part [may] shall be

18  revoked[, for good cause,] by the issuing authority [or], and

19  may be revoked by [the judge of] any court[.], if the issuing

20  authority or court determines that the permit or license is

21  subject to revocation because the permit or license holder does



S.B. NO.

1   not satisfy, or no longer satisfies, the applicable

2   qualifications or requirements associated with the permit or

3   license.

4        (b)  If the issuing authority determines that a permit or

5   license is subject to revocation, the issuing authority shall

6   notify the permit or license holder of the determination in

7   writing, stating the grounds for the determination and informing

8   the permit or license holder of the right to seek a hearing

9   before the issuing authority regarding the determination before

10  revocation.  Unless the permit or license holder submits a

11  request for a hearing in writing to the issuing authority no

12  later than thirty days following the date of the written notice

13  that the permit or license is subject to revocation, the permit

14  or license shall be immediately revoked by the issuing

15  authority.  Any hearing regarding a determination on whether a

16  permit or license is subject to revocation shall constitute a

17  contested case hearing for purposes of chapter 91.  A person or

18  entity aggrieved by a revocation under this section may apply

19  for judicial review in state circuit court in accordance with

20  section 91-14.

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1       (c)  If a permit or license is revoked pursuant to this

2   section, the former permit or license holder shall return the

3   permit or license to the issuing authority within forty-eight

4   hours following receipt of the notice of revocation."

5       SECTION 9.  Section 134-17, Hawaii Revised Statutes, is

6   amended to read as follows:

7       "§134-17  **Penalties.**  (a)  If any person [gives false

8   information or offers false evidence of the person's identity in

9   complying with any of the requirements of this part, that person

10  shall be guilty of a misdemeanor, provided, however that if any

11  person intentionally gives false information or offers false

12  evidence concerning their] intentionally, knowingly, or

13  recklessly makes any materially false, fictitious, or fraudulent

14  statement or representation in connection with any of the

15  requirements of this part, that person shall be guilty of a

16  misdemeanor; provided that if any person intentionally,

17  knowingly, or recklessly makes any materially false, fictitious,

18  or fraudulent statement or representation regarding the person's

19  psychiatric or criminal history in [complying] connection with

20  any of the requirements of this part, that person shall be

21  guilty of a class C felony.

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    [(b)  Any person who violates section 134-3(a) shall be

2  guilty of a petty misdemeanor.

3    (c)] (b)  Any person who violates [section]:

4    (1)  Section 134-2, 134-4, 134-10, [or] 134-13(c), or 134-

5        15 shall be guilty of a misdemeanor[.  Any person who

6        violates section];

7    (2)  Section 134-3(a) or 134-9(q) shall be guilty of a

8        petty misdemeanor; or

9    (3)  Section 134-3(b) shall be guilty of a petty

10        misdemeanor and the firearm shall be confiscated as

11        contraband and disposed of, if the firearm is not

12        registered within five days of the person receiving

13        notice of the violation."

14    SECTION 10.  Section 134-18, Hawaii Revised Statutes, is

15  amended to read as follows:

16    "§134-18  Qualified immunity for physicians, psychologists,

17  [or] psychiatrists, physician assistants, or advanced practice

18  registered nurses who provide information on permit or license

19  applicants.  There shall be no civil liability for any

20  physician, psychologist, [or] psychiatrist, physician assistant,

21  or advanced practice registered nurse who provides information

# S.B. NO.

1   or renders an opinion in response to an inquiry made for

2   purposes of issuing a firearm permit under section 134-2,

3   issuing or renewing a license under section 134-9, or [for

4   purposes of] investigating the continuing mental health of the

5   holder of a valid firearm permit or license; provided that the

6   physician, psychologist, [or] psychiatrist, physician assistant,

7   or advanced practice registered nurse acted without malice."

8         SECTION 11.  Section 707-716, Hawaii Revised Statutes, is

9   amended by amending subsection (2) to read as follows:

10        "(2)  Terroristic threatening in the first degree is a

11  class C felony[.]; provided that terroristic threatening in the

12  first degree is a class B felony if committed with a firearm as

13  defined in section 134-1, whether the firearm was loaded or not,

14  and whether operable or not, or a simulated firearm, while in

15  one of the locations or premises listed in section 134-A(a)."

16        SECTION 12.  Section 846-2.7, Hawaii Revised Statutes, is

17  amended by amending subsection (b) to read as follows:

18        "(b)  Criminal history record checks may be conducted by:

19        (1)   The department of health or its designee on operators

20              of adult foster homes for individuals with

21              developmental disabilities or developmental

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

disabilities domiciliary homes and their employees, as provided by section 321-15.2;

(2) The department of health or its designee on prospective employees, persons seeking to serve as providers, or subcontractors in positions that place them in direct contact with clients when providing non-witnessed direct mental health or health care services as provided by section 321-171.5;

(3) The department of health or its designee on all applicants for licensure or certification for, operators for, prospective employees, adult volunteers, and all adults, except adults in care, at healthcare facilities as defined in section 321-15.2;

(4) The department of education on employees, prospective employees, and teacher trainees in any public school in positions that necessitate close proximity to children as provided by section 302A-601.5;

(5) The counties on employees and prospective employees who may be in positions that place them in close proximity to children in recreation or child care programs and services;

# S.B. NO. <span>1230<br>S.D. 2<br>H.D. 1<br>C.D. 1</span>

1    (6)   The county liquor commissions on applicants for liquor

2        licenses as provided by section 281-53.5;

3    (7)   The county liquor commissions on employees and

4        prospective employees involved in liquor

5        administration, law enforcement, and liquor control

6        investigations;

7    (8)   The department of human services on operators and

8        employees of child caring institutions, child placing

9        organizations, and foster boarding homes as provided

10       by section 346-17;

11   (9)   The department of human services on prospective

12       adoptive parents as established under section

13       346-19.7;

14  (10)   The department of human services or its designee on

15       applicants to operate child care facilities, household

16       members of the applicant, prospective employees of the

17       applicant, and new employees and household members of

18       the provider after registration or licensure as

19       provided by section 346-154, and persons subject to

20       section 346-152.5;

# S.B. NO.

    (11)    The department of human services on persons exempt pursuant to section 346-152 to be eligible to provide child care and receive child care subsidies as provided by section 346-152.5;

    (12)    The department of health on operators and employees of home and community-based case management agencies and operators and other adults, except for adults in care, residing in community care foster family homes as provided by section 321-15.2;

    (13)    The department of human services on staff members of the Hawaii youth correctional facility as provided by section 352-5.5;

    (14)    The department of human services on employees, prospective employees, and volunteers of contracted providers and subcontractors in positions that place them in close proximity to youth when providing services on behalf of the office or the Hawaii youth correctional facility as provided by section 352D-4.3;

    (15)    The judiciary on employees and applicants at detention and shelter facilities as provided by section 571-34;

# S.B. NO.

1     (16)   The department of public safety on employees and

2            prospective employees who are directly involved with

3            the treatment and care of persons committed to a

4            correctional facility or who possess police powers

5            including the power of arrest as provided by section

6            353C-5;

7     (17)   The board of private detectives and guards on

8            applicants for private detective or private guard

9            licensure as provided by section 463-9;

10    (18)   Private schools and designated organizations on

11           employees and prospective employees who may be in

12           positions that necessitate close proximity to

13           children; provided that private schools and designated

14           organizations receive only indications of the states

15           from which the national criminal history record

16           information was provided pursuant to section 302C-1;

17    (19)   The public library system on employees and prospective

18           employees whose positions place them in close

19           proximity to children as provided by section

20           302A-601.5;

S.B. NO.

1    (20)  The State or any of its branches, political

2        subdivisions, or agencies on applicants and employees

3        holding a position that has the same type of contact

4        with children, vulnerable adults, or persons committed

5        to a correctional facility as other public employees

6        who hold positions that are authorized by law to

7        require criminal history record checks as a condition

8        of employment as provided by section 78-2.7;

9    (21)  The department of health on licensed adult day care

10       center operators, employees, new employees,

11       subcontracted service providers and their employees,

12       and adult volunteers as provided by section 321-15.2;

13    (22)  The department of human services on purchase of

14       service contracted and subcontracted service providers

15       and their employees serving clients of the adult

16       protective and community services branch, as provided

17       by section 346-97;

18    (23)  The department of human services on foster grandparent

19       program, senior companion program, and respite

20       companion program participants as provided by section

21       346-97;

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1     (24)    The department of human services on contracted and

2              subcontracted service providers and their current and

3              prospective employees that provide home and community-

4              based services under section 1915(c) of the Social

5              Security Act, title 42 United States Code section

6              1396n(c), or under any other applicable section or

7              sections of the Social Security Act for the purposes

8              of providing home and community-based services, as

9              provided by section 346-97;

10    (25)    The department of commerce and consumer affairs on

11             proposed directors and executive officers of a bank,

12             savings bank, savings and loan association, trust

13             company, and depository financial services loan

14             company as provided by section 412:3-201;

15    (26)    The department of commerce and consumer affairs on

16             proposed directors and executive officers of a

17             nondepository financial services loan company as

18             provided by section 412:3-301;

19    (27)    The department of commerce and consumer affairs on the

20             original chartering applicants and proposed executive

# S.B. NO.

1        officers of a credit union as provided by section

2        412:10-103;

3   (28)  The department of commerce and consumer affairs on:

4       (A)  Each principal of every non-corporate applicant

5           for a money transmitter license;

6       (B)  Each person who upon approval of an application

7           by a corporate applicant for a money transmitter

8           license will be a principal of the licensee; and

9       (C)  Each person who upon approval of an application

10          requesting approval of a proposed change in

11          control of licensee will be a principal of the

12          licensee,

13    as provided by sections 489D-9 and 489D-15;

14   (29)  The department of commerce and consumer affairs on

15      applicants for licensure and persons licensed under

16      title 24;

17   (30)  The Hawaii health systems corporation on:

18       (A)  Employees;

19       (B)  Applicants seeking employment;

20       (C)  Current or prospective members of the corporation

21          board or regional system board; or

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        (D)   Current or prospective volunteers, providers, or

2              contractors,

3    in any of the corporation's health facilities as

4    provided by section 323F-5.5;

5  (31)  The department of commerce and consumer affairs on:

6        (A)   An applicant for a mortgage loan originator

7              license, or license renewal; and

8        (B)   Each control person, executive officer, director,

9              general partner, and managing member of an

10             applicant for a mortgage loan originator company

11             license or license renewal,

12    as provided by chapter 454F;

13  (32)  The state public charter school commission or public

14    charter schools on employees, teacher trainees,

15    prospective employees, and prospective teacher

16    trainees in any public charter school for any position

17    that places them in close proximity to children, as

18    provided in section 302D-33;

19  (33)  The counties on prospective employees who work with

20    children, vulnerable adults, or senior citizens in

21    community-based programs;

# S.B. NO.

1    (34)  The counties on prospective employees for fire
2          department positions that involve contact with
3          children or vulnerable adults;

4    (35)  The counties on prospective employees for emergency
5          medical services positions that involve contact with
6          children or vulnerable adults;

7    (36)  The counties on prospective employees for emergency
8          management positions and community volunteers whose
9          responsibilities involve planning and executing
10         homeland security measures including viewing,
11         handling, and engaging in law enforcement or
12         classified meetings and assisting vulnerable citizens
13         during emergencies or crises;

14    (37)  The State and counties on employees, prospective
15         employees, volunteers, and contractors whose position
16         responsibilities require unescorted access to secured
17         areas and equipment related to a traffic management
18         center;

19    (38)  The State and counties on employees and prospective
20         employees whose positions involve the handling or use
21         of firearms for other than law enforcement purposes;

# S.B. NO. 1230
### S.D. 2
### H.D. 1
### C.D. 1

1    (39)   The State and counties on current and prospective

2             systems analysts and others involved in an agency's

3             information technology operation whose position

4             responsibilities provide them with access to

5             proprietary, confidential, or sensitive information;

6    (40)   The department of commerce and consumer affairs on:

7         (A)   Applicants for real estate appraiser licensure or

8                certification as provided by chapter 466K;

9         (B)   Each person who owns more than ten per cent of an

10               appraisal management company who is applying for

11               registration as an appraisal management company,

12               as provided by section 466L-7; and

13         (C)   Each of the controlling persons of an applicant

14               for registration as an appraisal management

15               company, as provided by section 466L-7;

16    (41)   The department of health or its designee on all

17             license applicants, licensees, employees, contractors,

18             and prospective employees of medical cannabis

19             dispensaries, and individuals permitted to enter and

20             remain in medical cannabis dispensary facilities as

# S.B. NO.
1230
S.D. 2
H.D. 1
C.D. 1

1           provided under sections 329D-15(a)(4) and

2           329D-16(a)(3);

3    (42)  The department of commerce and consumer affairs on

4           applicants for nurse licensure or license renewal,

5           reactivation, or restoration as provided by sections

6           457-7, 457-8, 457-8.5, and 457-9;

7    (43)  The county police departments on applicants for

8           permits to acquire firearms pursuant to section 134-2

9           [and], on individuals registering their firearms

10           pursuant to section 134-3[+], and on applicants for

11           new or renewed licenses to carry a pistol or revolver

12           and ammunition pursuant to section 134-9;

13    (44)  The department of commerce and consumer affairs on:

14         (A)  Each of the controlling persons of the applicant

15               for licensure as an escrow depository, and each

16               of the officers, directors, and principals who

17               will be in charge of the escrow depository's

18               activities upon licensure; and

19         (B)  Each of the controlling persons of an applicant

20               for proposed change in control of an escrow

21               depository licensee, and each of the officers,

# S.B. NO.

1230
S.D. 2
H.D. 1
C.D. 1

1  directors, and principals who will be in charge

2  of the licensee's activities upon approval of the

3  application,

4  as provided by chapter 449;

5  (45) The department of taxation on current or prospective

6  employees or contractors who have access to federal

7  tax information in order to comply with requirements

8  of federal law, regulation, or procedure, as provided

9  by section 231-1.6;

10  (46) The department of labor and industrial relations on

11  current or prospective employees or contractors who

12  have access to federal tax information in order to

13  comply with requirements of federal law, regulation,

14  or procedure, as provided by section 383-110;

15  (47) The department of human services on current or

16  prospective employees or contractors who have access

17  to federal tax information in order to comply with

18  requirements of federal law, regulation, or procedure,

19  as provided by section 346-2.5;

20  (48) The child support enforcement agency on current or

21  prospective employees, or contractors who have access

# S.B. NO. <sub></sub>

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1        to federal tax information in order to comply with

2        federal law, regulation, or procedure, as provided by

3        section 576D-11.5;

4  (49)  The department of the attorney general on current or

5        prospective employees or employees or agents of

6        contractors who have access to federal tax information

7        to comply with requirements of federal law,

8        regulation, or procedure, as provided by section 28-

9        17;

10  [+](50)[+]The department of commerce and consumer affairs on

11        each control person, executive officer, director,

12        general partner, and managing member of an installment

13        loan licensee, or an applicant for an installment loan

14        license, as provided in chapter 480J;

15  [+](51)[+]The University of Hawaii on current and prospective

16        employees and contractors whose duties include

17        ensuring the security of campus facilities and

18        persons; and

19  [+](52)[+]Any other organization, entity, or the State, its

20        branches, political subdivisions, or agencies as may

21        be authorized by state law."

S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

1    SECTION 13.  Act 30, Session Laws of Hawaii 2022, is

2  amended by amending section 5 to read as follows:

3    "SECTION 5.  This Act shall take effect upon its approval[,

4  provided that on June 30, 2025, section 2 of this Act shall be

5  repealed and section 134-3, Hawaii Revised Statutes, shall be

6  reenacted in the form in which it read on the day before the

7  effective date of this Act]."

8    SECTION 14.  Every provision in this Act and every

9  application of each provision in this Act is severable from each

10  other.  If any application of any provision in this Act to any

11  person or group of persons or circumstances is determined by any

12  court to be invalid, the remainder of this Act and the

13  application of the Act's provisions to all other persons and

14  circumstances shall not be affected.  All constitutionally valid

15  applications of this Act shall be severed from any applications

16  that a court determines to be invalid or unenforceable, leaving

17  the valid applications in force, because it is the legislature's

18  intent that all valid applications shall remain in force.

19    SECTION 15.  This Act shall be construed to be enforceable

20  up to but no further than the maximum possible extent consistent

21  with federal law and constitutional requirements.

# S.B. NO. <span>1230</span>
S.D. 2
H.D. 1
C.D. 1

1      SECTION 16.  In codifying the new sections added by section

2 of this Act, the revisor of statutes shall substitute

3 appropriate section numbers for the letters used in designating

4 the new sections in this Act.

5      SECTION 17.  Statutory material to be repealed is bracketed

6 and stricken.  New statutory material is underscored.

7      SECTION 18.  This Act shall take effect on July 1, 2023;

8 provided that:

9     (1)   Sections 4 and 7 shall take effect on January 1, 2024;

10        and

11    (2)   The amendments made to section 846-2.7(b), Hawaii

12        Revised Statutes, by section 12 of this Act shall not

13        be repealed when section 28 of Act 278, Session Laws

14        of Hawaii 2022, takes effect on January 1, 2024.

# S.B. NO. 1230
S.D. 2
H.D. 1
C.D. 1

**Report Title:**
Firearms; Permits; Licenses; Enforcement

**Description:**
Prohibits firearms in certain locations and premises.  Requires
possession and disclosure of a license to carry.  Prohibits
leaving an unsecured firearm in a vehicle unattended.  Prohibits
consuming or being under the influence of alcohol, an
intoxicating liquor, or a controlled substance when carrying a
firearm.  Prohibits carrying or possessing firearms on certain
private property without express authorization.  Requires annual
reports from the department of the attorney general on carry
licenses.  Amends the requirements for, and revocation of,
firearms permits and licenses.  Amends the disqualification of
persons from owning, possessing, or controlling a firearm.
Expands the qualified immunity for health care providers who
provide information on firearms applicants to include physician
assistants and advanced practice registered nurses.  (CD1)

*The summary description of legislation appearing on this page is for informational purposes only and is
not legislation or evidence of legislative intent.*