

**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, RELATING TO FIREARMS.

**BEFORE THE:**
SENATE COMMITTEE ON PUBLIC SAFETY AND INTERGOVERNMENTAL AND
MILITARY AFFAIRS

**DATE:**       Monday, February 6, 2023       **TIME:**  3:00 p.m.
**LOCATION:**  State Capitol, Room 225
**TESTIFIER(S):**   Anne E. Lopez, Attorney General, or
                    Dave Day, Special Assistant to the Attorney General

Chair Wakai and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> the
intent of this bill and provide the following comments.

The purpose of this bill is to amend chapter 134, part I, Hawaii Revised Statutes
(HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive" locations,
which is a misdemeanor, (2) require the Attorney General to publish an annual report on
licenses to carry firearms, (3) prohibit issuing authorities from issuing permits, under
section 134-2, to a person who is found to be lacking the essential character or
temperament necessary to be entrusted with a firearm, (4) require issuing authorities to
consider certain factors related to the risk of misuse by an applicant when issuing
permits under section 134-2, (5) add a definition of the term "enclosed container" to
section 134-5, (6) set forth requirements, qualifications, and procedures for an applicant
seeking a license to carry a firearm, (7) require a license issued under part I of chapter
134, to be revoked under certain circumstances, and (8) require firearms to be kept in a
locked container in a vehicle and place the container out of plain view when leaving the
firearm in an unattended vehicle.

The Department <u>strongly supports the intent of this bill.</u>  Gun violence represents
an urgent public-health and public-safety issue, and S.B. No. 1230 would play an
important role in clarifying, revising, and updating Hawaiʻi's firearms laws—addressing

EXHIBIT 2

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 2 of 26   PageID.150
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 5

the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings.

In the wake of *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) (*Bruen*), many more people are applying for licenses to carry a firearm. Under *Bruen*, those licenses shall be granted unless there is an objective statutory basis requiring denial.  This will result in a significant increase in the presence of firearms in public, with more individuals carrying concealed weapons in Hawaiʻi than ever before in our State's history.  This presents serious challenges for public health and safety.  But even after the Supreme Court's decision in *Bruen*, there are still a number of important tools available to address the serious and increasing risks posed by firearms and gun violence.  States have the authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying of firearms in sensitive locations and adopting laws to ensure that those who carry firearms are "law-abiding, responsible citizens," *id*. at 2133, 2138.  The Department believes that S.B. No. 1230 would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights—and for these reasons strongly support the intent of the bill.

Consistent with its strong support for this bill, the Department also offers the following comments.

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 5

First, the Committee may wish to consider adding a provision establishing that persons carrying a firearm in public must maintain their license on their person.  Such a provision could, in the view of the Department, help promote public safety by ensuring that those who carry firearms pursuant to a license comply with applicable registration and licensing requirements.  Similarly, the Committee may also wish to include a provision requiring persons stopped by law enforcement to inform a law enforcement officer when they are carrying a firearm concealed on their person.  Such a provision would be intended to protect the public, protect law-enforcement-officer safety, and promote situational awareness during investigatory stops.  A number of states have established similar requirements.  *Cf.* N.C. Gen. Stat. § 14-415.11(a) ("[Licensee] shall carry the permit together with valid identification whenever the person is carrying a concealed handgun, shall disclose to any law enforcement officer that the person holds a valid permit and is carrying a concealed handgun when approached or addressed by the officer, and shall display both the permit and the proper identification upon the request of a law enforcement officer."); Alaska Stat. Ann. § 11.61.220 (providing that a person must "immediately inform the peace officer of [firearm] possession" when stopped by law enforcement).

Possible wording to this effect—drawn from a similar bill, Senate Bill No. 1282—is reproduced below:

§134-   **Duty to maintain possession of license while carrying a firearm; duty to disclose; penalty.**  (a)  A person carrying a firearm pursuant to a license issued under section 134-9 or in accordance with title 18 United States Code section 926B or 926C shall have in the person's immediate possession:

(1)   The license issued under section 134-9 or credentials as required under title 18 United States Code section 926B or 926C; and

(2)   Documentary evidence that the firearm being carried is registered under this chapter,

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 4 of 26   PageID.152
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 5

and shall, upon request from a law enforcement officer, present the license or credentials and evidence of registration.

(b)      When a person carrying a firearm, including but not limited to a person carrying a firearm pursuant to a license issued under section 134-9 or in accordance with title 18 United States Code section 926B or 926C, is stopped by a law enforcement officer or is a driver or passenger in a vehicle stopped by a law enforcement officer, the person carrying a firearm shall immediately disclose to the law enforcement officer that the person is carrying a firearm, and shall, upon request:

(1)      Identify the specific location of the firearm; and

(2)      Present to the law enforcement officer a license to carry a firearm issued under section 134-9 or credentials as required under title 18 United States Code section 926B or 926C.

(c)      Any person who violates this section shall be guilty of a petty misdemeanor.

Second, the Committee may wish to consider amending the bill to require that persons who carry a firearm in public pursuant to a license to maintain insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage arising out of the ownership, maintenance, operation, or use of a firearm carried in public.  The Department believes that such a policy could help to promote safe practices and responsible gun ownership and make it more likely that persons injured by firearms will receive compensation.  A similar provision was adopted by the New Jersey Legislature in December last year.

Possible language to this effect—again, drawn from Senate Bill No. 1282—is reproduced below:

**§134-    Mandatory insurance coverage.**  (a)  Effective January 1, 2025, every person who carries a firearm in public pursuant to a license issued under section 134-9 shall maintain insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage sustained by any person arising out of the ownership,

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 5 of 5

maintenance, operation, or use of a firearm carried in public.  Liability
coverage shall be not less than $100,000 per person, with an aggregate
limit of not less than $300,000 per occurrence.

(b)     Proof of insurance as required pursuant to subsection (a)
shall, upon request, be produced by the person carrying a firearm in public
within a reasonable amount of time following any injury, death, or property
damage alleged to have been caused by the person carrying the firearm in
public.  This requirement shall be satisfied by delivering a full and
complete copy of the applicable policy or policies of insurance that meet
the standards established by subsection (a) and that were in force at the
time of the injury, death, or property damage.  Disclosure of policy
information under this subsection shall not constitute an admission that
the alleged injury, death, or property damage is subject to the policy.

Additionally, the Department notes that the term "handgun" used in page 17,
lines 2, 7, 9, 13, 16, and 21, is not defined in chapter 134, HRS.  We recommend
replacing it with a term that is already defined for chapter 134, such as "pistol or
revolver" or define the term "handgun."  The Department also recommends replacing
"firearm" on page 19, line 17, with "pistol or revolver" for consistency with subsection (a)
of section 134-9.

Thank you again for the opportunity to provide comments on the bill.  As noted
above, the Department strongly supports the intent of this bill.  The Department stands
ready to assist this Committee with this measure at any time.



**WRITTEN TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 1, RELATING TO FIREARMS.

**BEFORE THE:**
SENATE COMMITTEE ON JUDICIARY

**DATE:**      Wednesday, March 1, 2023      **TIME:** 9:30 a.m.

**LOCATION:**   State Capitol, Room 016

**TESTIFIER(S):**      **WRITTEN TESTIMONY ONLY.**
                    (For more information, contact Dave Day,
                    Special Assistant to the Attorney General, at (808) 586-1284)

---

Chair Rhoads and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> this bill.
Gun violence represents an urgent public-health and public-safety issue, and Senate
Bill No. 1230, S.D. 1, would play an important role in clarifying, revising, and updating
Hawaii's firearms laws—addressing the serious hazards to public health, safety, and
welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by
carefully limiting who may carry guns in public.  For decades, a system of discretionary
licensing was used: the police departments would evaluate an applicant and decide
whether there was a good reason why that person needed to carry a concealed firearm
in public.  This policy was preserved and supported across many different
administrations and legislative sessions, and it played an important role in helping to
reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of
discretionary licenses, concealed weapons were not commonly carried in public in
Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms
laws that exist in many other states—for example, laws prohibiting carrying firearms in
"sensitive places" like schools, playgrounds, and government buildings, or laws
prohibiting carrying a firearm in public while intoxicated.

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 7 of 26   PageID.155
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 4

In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary licensing systems for carrying guns in public cannot be used going forward.  The Supreme Court also stated that the Second Amendment requires that state law must provide clear and objective criteria for when licenses to carry firearms in public will be granted.  Moreover, after *Bruen*, the Second Amendment requires that if an applicant meets the statutory criteria that have been established by the state legislature, then a license to carry a concealed weapon in public "shall" be granted.

The Supreme Court's *Bruen* decision represents a very significant and disruptive change for our State.  In the wake of *Bruen*, many more people are applying for licenses to carry a firearm.  Under *Bruen*, those licenses shall be granted unless there is an objective statutory basis requiring denial.  This will result in a significant increase in the presence of firearms in public, with more individuals carrying concealed weapons in Hawaiʻi than ever before in our State's history.  This presents serious challenges for public health and safety.  This bill is an effort to address these challenges in the post-*Bruen* legal landscape.

Even after the Supreme Court's decision in *Bruen*, there are still a number of important tools available to address the serious and increasing risks posed by firearms and gun violence.  States have the authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying of firearms in sensitive locations and adopting laws to ensure that those who carry firearms are "law-abiding, responsible citizens," *id*. at 2133, 2138.

This bill would, among other things, amend chapter 134, part I, Hawaii Revised Statutes (HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive" locations or on the private property of another person without authorization; (2) require the Attorney General to publish an annual report on licenses to carry firearms; (3) prohibit issuing authorities from issuing permits, under section 134-2, HRS, to a person who is found to be lacking the essential character or temperament necessary to be entrusted with a firearm; (4) require issuing authorities to consider certain factors related to the risk of misuse by an applicant when issuing permits under section 134-2, HRS;

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 8 of 26   PageID.156
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 4

(5) define the term "enclosed container" in section 134-1, HRS; (6) set forth requirements, qualifications, and procedures for an applicant seeking a license to carry a pistol or revolver; (7) require a license issued under part I of chapter 134, to be revoked under certain circumstances; (8) require firearms to be kept in a locked container and placed out of plain view when left in an unattended vehicle; (9) establish a duty to maintain possession of a license while carrying a firearm; (10) require that when a person carrying a firearm is stopped by a law enforcement officer or is a driver or passenger in a vehicle stopped by a law enforcement officer, the person shall immediately disclose to the law enforcement officer that the person is carrying a firearm and, upon request, identify the specific location of the firearm and present to the law enforcement officer a license or credentials to carry a firearm; (11) amend the definition of "crime of violence" in section 134-1, HRS; (12) require a person carrying a firearm in public pursuant to a license to maintain insurance coverage; and (13) clarify and amend section 846-2.7, HRS, to provide that county police departments may conduct criminal history record checks for licenses to carry a pistol or revolver and ammunition.

* * *

The Department notes that proposed section 134-C, HRS, in the bill would require insurance coverage for those who engage in the licensed public carry of firearms (Section 2, section 134-C, HRS, page 11, line 12, through page 12, line 12).  In particular, section 134-C would require that, effective January 1, 2025, every person who carries a firearm in public pursuant to a license maintain insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage arising out of the ownership, maintenance, operation, or use of a firearm carried in public.  The Department believes that firearms insurance represents a promising policy tool that warrants strong consideration.  Several jurisdictions—including the State of New Jersey and the City of San Jose—have adopted similar measures in recent months.  However, the Department also recognizes that there are a number of areas of uncertainty that presently exist in this area.  To that end, the Committee could consider deleting the proposed section 134-C (page 11, line 12, through page 12, line 12) from the bill and instead requesting the Legislative Reference

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 4

Bureau to conduct a study analyzing the use and effectiveness of systems of insurance and other financial responsibility requirements associated with the public carry of firearms.

* * *

As outlined above, the Department <u>strongly supports</u> this bill.  Thank you for your consideration of this important measure.



**TESTIMONY OF
THE DEPARTMENT OF THE ATTORNEY GENERAL
KA ʻOIHANA O KA LOIO KUHINA
THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 2, RELATING TO FIREARMS.

**BEFORE THE:**
HOUSE COMMITTEE ON JUDICIARY AND HAWAIIAN AFFAIRS

| | | | |
|---|---|---|---|
| **DATE:** | Tuesday, March 21, 2023 | **TIME:** | 2:00 p.m. |
| **LOCATION:** | State Capitol, Room 325 | | |
| **TESTIFIER(S):** | Anne E. Lopez, Attorney General, or | | |
| | Dave Day, Special Assistant to the Attorney General | | |

Chair Tarnas and Members of the Committee:

The Department of the Attorney General (Department) <u>strongly supports</u> this bill. Gun violence represents an urgent public-health and public-safety issue, and Senate Bill No. 1230, S.D. 2, would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  This policy was preserved and supported across many different administrations and legislative sessions, and it played an important role in helping to reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings, or laws prohibiting carrying a firearm in public while intoxicated.

In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 11 of 26   PageID.159
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 4

licensing systems for carrying guns in public cannot be used going forward.  The
Supreme Court also stated that the Second Amendment requires that state law must
provide clear and objective criteria for when licenses to carry firearms in public will be
granted.  Moreover, after *Bruen*, the Second Amendment requires that if an applicant
meets the statutory criteria that have been established by the state legislature, then a
license to carry a concealed weapon in public "shall" be granted.

　　　　The Supreme Court's *Bruen* decision represents a very significant and disruptive
change for our State.  In the wake of *Bruen*, many more people are applying for licenses
to carry a firearm.  Under *Bruen*, those licenses shall be granted unless there is an
objective statutory basis requiring denial.  This will result in a significant increase in the
presence of firearms in public, with more individuals carrying concealed weapons in
Hawaiʻi than ever before in our State's history.  This presents serious challenges for
public health and safety.  This bill is an effort to address these challenges in the post-
*Bruen* legal landscape.

　　　　Even after the Supreme Court's decision in *Bruen*, there are still a number of
important tools available to address the serious and increasing risks posed by firearms
and gun violence.  States have the authority to enact "a 'variety' of gun regulations,"
*Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring), such as prohibiting the carrying
of firearms in sensitive locations and adopting laws to ensure that those who carry
firearms are "law-abiding, responsible citizens."  *Id*. at 2133, 2138.

　　　　This bill would, among other things, amend chapter 134, part I, Hawaii Revised
Statutes (HRS), to: (1) establish an offense of carrying a firearm in certain "sensitive"
locations or on the private property of another person without authorization; (2) require
the Attorney General to publish an annual report on licenses to carry firearms; (3)
prohibit issuing authorities from issuing permits, under section 134-2, HRS, to a person
who is found to be lacking the essential character or temperament necessary to be
entrusted with a firearm; (4) require issuing authorities to consider certain factors related
to the risk of misuse by an applicant when issuing permits under section 134-2, HRS;
(5) define the term "enclosed container" in section 134-1, HRS; (6) set forth
requirements, qualifications, and procedures for an applicant seeking a license to carry

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 4

a pistol or revolver; (7) require a license issued under part I of chapter 134, to be revoked under certain circumstances; (8) require firearms to be kept in a locked container and placed out of plain view when left in an unattended vehicle; (9) establish a duty to maintain possession of a license while carrying a firearm; (10) require that when a person carrying a firearm is stopped by a law enforcement officer or is a driver or passenger in a vehicle stopped by a law enforcement officer, the person shall immediately disclose to the law enforcement officer that the person is carrying a firearm and, upon request, identify the specific location of the firearm and present to the law enforcement officer a license or credentials to carry a firearm; (11) amend the definition of "crime of violence" in section 134-1, HRS; (12) require a person carrying a firearm in public pursuant to a license to maintain insurance coverage; (13) provide qualified immunity to physician assistants and advanced practice registered nurses who provide information on permit or license applicants; and (14) clarify and amend section 846-2.7, HRS, to provide that county police departments may conduct criminal history record checks for licenses to carry a pistol or revolver and ammunition.

\* \* \*

With respect to the scope of the prohibition set forth in section 134-A, the Department supports the wording in the current draft that limits the applicability of this section to "a person granted a license to carry a concealed firearm under section 134-9, or in accordance with title 18 United States Code section 926B or 926C[.]"  (Page 7, lines 5-7.)  The Department notes that an existing place-to-keep statute—section 134-25, HRS—already makes it a class B felony to carry a firearm in public "[e]xcept as provided in sections 134-5 and 134-9[.]"  Accordingly, a person licensed to carry a firearm under section 134-9, HRS, who carries a firearm in a sensitive place as defined in section 134-A would be subject to prosecution for a misdemeanor under section 134-A(h), while a person who carries a firearm in a sensitive place *without* first obtaining a license under section 134-9, HRS (unless covered by 134-5, HRS), would be subject to prosecution for a class B felony under section 134-25.

By contrast, a different bill, House Bill No. 984, H.D. 2, would apply the sensitive-places prohibition to all persons (*see* House Bill No. 984, H.D. 2, page 3, line 18), but

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 4

would then apply an enhanced sentencing provision for persons "not licensed under section 134-9[.]"  House Bill No. 984 H.D. 2, page 15, lines 6-11.  The Department believes the approach adopted in Senate Bill No. 1230, S.D. 2, discussed above, would be preferable to the approach adopted in House Bill No. 984, H.D. 2, because of the uncertainty that might be created if the unlicensed carrying of a firearm in a sensitive place were simultaneously both a misdemeanor and a class B felony.  The approach taken in Senate Bill No.1230—limiting the scope of the misdemeanor offense to licensees—also obviates the need for a separate enhanced sentencing provision.  *See* House Bill No. 984, H.D. 2, page 15, lines 6-11.

* * *

As outlined above, the Department <u>strongly supports</u> this bill.  Thank you for your consideration of this important measure.



**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-SECOND LEGISLATURE, 2023**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 1230, S.D. 2, H.D. 1, RELATING TO FIREARMS.

**BEFORE THE:**
HOUSE COMMITTEE ON FINANCE

**DATE:**     Wednesday, April 5, 2023          **TIME:**  2:00 p.m.

**LOCATION:**   State Capitol, Room 308

**TESTIFIER(S):**     Anne E. Lopez, Attorney General, or
                     David D. Day, Special Assistant to the Attorney General

Chair Yamashita and Members of the Committee:

The Department of the Attorney General (Department) strongly supports this bill. Gun violence represents an urgent public-health and public-safety issue, and this bill would play an important role in clarifying, revising, and updating Hawaii's firearms laws—addressing the serious hazards to public health, safety, and welfare posed by firearms and gun violence while respecting individual rights.

For 170 years—since 1852—Hawaiʻi has protected public health and safety by carefully limiting who may carry guns in public.  For decades, a system of discretionary licensing was used: the police departments would evaluate an applicant and decide whether there was a good reason why that person needed to carry a concealed firearm in public.  This policy was preserved and supported across many different administrations and legislative sessions, and it played an important role in helping to reduce the risks of gun violence in our communities.  Largely due to Hawaii's system of discretionary licenses, concealed weapons were not commonly carried in public in Hawaiʻi.  Accordingly, there was not as great a need for some of the types of firearms laws that exist in many other states—for example, laws prohibiting carrying firearms in "sensitive places" like schools, playgrounds, and government buildings, or laws prohibiting carrying a firearm in public while intoxicated.

In its June 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court held that discretionary

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 2 of 13

licensing systems for carrying guns in public cannot be used going forward.  The
Supreme Court stated that the Second Amendment requires that state law must provide
clear and objective criteria for when licenses to carry firearms in public will be granted.
Moreover, after *Bruen*, the Second Amendment requires that if an applicant meets the
statutory criteria that have been established by the state legislature, then a license to
carry a concealed weapon in public "shall" be granted.

The Supreme Court's *Bruen* decision represents a very significant and disruptive
change for our State.  In the wake of *Bruen*, many more people are applying for licenses
to carry a firearm.  Under *Bruen*, those licenses shall be granted unless there is an
objective statutory basis requiring denial.  This will result in a significant increase in the
presence of firearms in public, with more individuals carrying concealed weapons in
Hawaiʻi than ever before in our State's history.  This presents serious challenges for
public health and safety.  This bill is an effort to address these challenges in the post-
*Bruen* legal landscape.

Gun violence presents an urgent public-health issue, and even after the Supreme
Court's decision in *Bruen*, there are still a number of important tools available to address
the serious and increasing risks posed by firearms and gun violence.  States have the
authority to enact "a 'variety' of gun regulations," *Bruen*, 142 S. Ct. at 2162 (Kavanaugh,
J., concurring), such as prohibiting the carrying of firearms in sensitive locations and
adopting laws to ensure that those who carry firearms are "law-abiding, responsible
citizens." *Id*. at 2133, 2138.

At a fundamental level, this bill is intended to do two things.

*First*, some existing provisions of chapter 134, HRS, can no longer be applied
going forward, and should be reframed to address the immediate effects of the
Supreme Court's decision in *Bruen*.  The bill would update and revise these provisions
to preserve the intent and purpose of chapter 134, HRS, to the extent possible.  For
example, the bill would clarify the legal standards and criteria that will be applied when a
person applies for a license to carry a firearm in public.

*Second*, the bill identifies policies that we believe would help address the
significant risks presented by the increased public carrying of firearms.

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 3 of 13

As explained in greater detail below, this bill would:

- Prohibit carrying or possessing a firearm in certain sensitive locations;

- Require a person stopped by a law enforcement officer to inform the law enforcement officer if they are carrying a concealed firearm;

- Prohibit leaving an unsecured firearm in a vehicle unattended;

- Prohibit people carrying a firearm from consuming alcohol, consuming a controlled substance, being under the influence of alcohol, or being under the influence of a controlled substance;

- Prohibit carrying or possessing a firearm on private property open to the public without authorization;

- Require the Department of the Attorney General to publish an annual report regarding licenses to carry firearms;

- Revise, clarify, and focus Hawaii's mental-health disqualification for firearms possession;

- Protect public safety by ensuring that firearms are not possessed or carried by those who lack the essential character or temperament necessary to be entrusted with a firearm;

- Add new education and training requirements for applicants for a license to carry a firearm in public;

- Clarify that when a permit to acquire a firearm or a license to carry a firearm is denied, the applicant should be given reasons for the denial and will have a right to a contested case hearing;

- Prohibit a person carrying a firearm in public pursuant to a license from carrying more than one firearm on their person at one time;

- Disqualify individuals who have been convicted of a violent misdemeanor crime or a crime relating to firearms from possessing firearms for 20 years following the conviction and maintain Hawaii's lifetime prohibition on possessing firearms for persons convicted of a felony; and

- Adjust certain regulatory fees relating to firearms.

* * *

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 4 of 13

**The bill would prohibit carrying or possessing a firearm in certain sensitive locations (section 2, section 134-A, HRS, page 3, line 16, through page 10, line 9).** These include the following locations:

- State and local government buildings;

- Schools, colleges, and universities, including research facilities;

- Public or private hospitals, mental health facilities, nursing homes, clinics, medical offices, urgent care facilities, and other places at which medical or health services are customarily provided;

- Bars and restaurants serving alcohol;

- Stadiums, movie theaters, concert halls, and places at which a professional, collegiate, high school, amateur, or student sporting event is being held;

- Prisons and jails;

- Public libraries, including including buildings, facilities, meeting rooms, spaces used for community programming, and adjacent grounds;

- Beaches, playgrounds, state monuments, and other state and county parks;

- Shelters, residential, and programmatic facilities operated by a government entity or charitable organization serving unhoused persons, victims of domestic violence, or children, including children involved in the juvenile justice system;

- Voting service centers and other polling places;

- Banks;

- Places, facilities, or vehicles used for public transportation or public transit, including buses, bus terminals (but not including bus stops located on public sidewalks), trains, rail stations, and airports;

- Amusement parks, aquariums, carnivals, circuses, fairs, museums, water parks, and zoos; and

- Any public gathering, public assembly, or special event conducted on property open to the public, including but not limited to a demonstration, march, rally, vigil, protest, picketing, or other public assembly, that requires the issuance of a permit from a federal, state, or local government and the sidewalk or street immediately adjacent to the public gathering, public assembly, or special event and within one

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 18 of 26   PageID.166
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 5 of 13

thousand feet from the public gathering, public assembly, or special event;
provided that there are signs clearly and conspicuously posted at visible places
along the perimeter of the public gathering, public assembly, or special event.

These provisions are intended to protect particularly sensitive locations from the
risks of gun violence.  These locations fall into three general categories: high-density
locations; locations with vulnerable populations; and locations of governmental activity.
Parking areas adjacent to the sensitive locations identified above are also deemed
sensitive locations where possessing firearms is prohibited.  These prohibitions do not
apply to law enforcement and authorized security guards, and are subject to various
affirmative defenses.

The U.S. Supreme Court has made clear that the Second Amendment does not
prohibit states from prohibiting carrying firearms in "sensitive locations."  The collection
of sensitive locations defined in the bill is in line with the set of sensitive locations that a
number of other states have identified in recent legislation.  Although many states
protect sensitive locations from firearms, Hawaiʻi currently has no such law in place.
We believe these provisions are legally appropriate and are grounded in longstanding
history and tradition—as required by the legal test the Supreme Court established in
*Bruen*.

This prohibition would not apply to law enforcement officers.

**The bill would require a person carrying a firearm in public pursuant to a
license to maintain possession of the license and proof that the firearm being
carried is properly registered (section 2, section 134-B(a), HRS, page 10, line 11,
through page 11, line 4).**  This provision is intended to promote public safety by
making sure that those who carry firearms pursuant to a license comply with registration
and licensing requirements.  Many states have established similar requirements for
licensees.

**The bill would require a person stopped by a law enforcement officer to
inform the law enforcement officer if they are carrying a concealed firearm
(section 2, section 134-B(b), HRS, page 11, lines 5-20).**  This provision is intended to
protect the public, protect law-enforcement-officer safety, promote situational

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 19 of 26   PageID.167
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 6 of 13

awareness during investigatory stops, and avoid the risks of escalation.  Many states have already established similar public safety requirements.  *See, e.g.*, N.C. Gen. Stat. § 14-415.11(a) ("[Licensee] shall carry the permit together with valid identification whenever the person is carrying a concealed handgun, shall disclose to any law enforcement officer that the person holds a valid permit and is carrying a concealed handgun when approached or addressed by the officer, and shall display both the permit and the proper identification upon the request of a law enforcement officer."); Alaska Stat. Ann. § 11.61.220 (requiring that a person must "immediately inform the peace officer of [firearm] possession" if stopped).

**The bill would prohibit leaving an unsecured firearm in a vehicle unattended (section 2, section 134-C, HRS, page 12, lines 1-19).**  A significant concern associated with the increased public carry of firearms is the increased risk of theft of firearms from automobiles.  *See* Megan J. O'Toole et al., *Gun Thefts from Cars: The Largest Source of Stolen Guns*, Everytown Research & Policy (May 9, 2022), https://everytownresearch.org/gun-thefts-from-cars-the-largest-source-of-stolen-guns (reporting, based on FBI crime data, that "gun thefts from cars are now the largest source of stolen guns—one that continues rising in parallel with rising rates of gun sales and violence").

Under this provision, a person leaving a firearm inside a vehicle unattended would be required to securely lock the firearm in a gun safe or other secure container within the vehicle that is out of sight from outside of the vehicle.  This provision is similar to laws that have been enacted in a number of other states, including New York, California, and Connecticut.  *See, e.g.*, N.Y. Penal Law § 265.45; Conn. Gen. Stat. Ann. § 29-38g(a)(1) ("No person shall store or keep any pistol or revolver in any motor vehicle that is unattended unless such pistol or revolver is in the trunk, a locked safe or locked glove box."); Cal. Pen. Code § 25140 ("[A] person shall, when leaving a handgun in an unattended vehicle, lock the handgun in the vehicle's trunk, lock the handgun in a locked container and place the container out of plain view, lock the handgun in a locked container that is permanently affixed to the vehicle's interior and not in plain view, or lock the handgun in a locked toolbox or utility box.").

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 7 of 13

This provision would not apply to law enforcement officers.

**The bill would prohibit people carrying a firearm from consuming alcohol, consuming a controlled substance, being under the influence of alcohol, or being under the influence of a controlled substance (section 2, section 134-D, HRS, page 12, line 20, through page 13, line 19).**  This provision is intended to combat the very serious public health risks that are presented when intoxicated persons carry or use firearms.  Research demonstrates that "people who abuse alcohol or illicit drugs are at an increased risk of committing acts of violence," and "[d]rug and alcohol use by domestic abusers has been strongly linked with the perpetration of fatal and non-fatal domestic violence."  D.W. Webster & J.S. Vernick, *Keeping Firearms from Drug and Alcohol Abusers*, 15 Injury Prevention 425 (2009); *see also* B.G. Carr et al., *A Randomised Controlled Feasibility Trial of Alcohol Consumption and the Ability to Appropriately Use a Firearm*, 15 Injury Prevention 409, 409 (2009) (concluding that "[i]ntoxicated subjects were less accurate, slower to fire in reaction time scenarios, and quicker to fire in scenarios requiring judgement relative to controls" and determining that "[a]n association between firearm injury and heavy alcohol consumption has been demonstrated").

Notably, "studies consistently reported that alcohol use was significantly associated with the possession of firearms, the ownership of firearms, and the use of firearm as a suicide means, and that the association was stronger for heavy alcohol use."  Charles C. Branas et al., *Alcohol Use and Firearm Violence*, 38 Epidemiologic Reviews 32, 43-44 (2016).  Moreover, "an overwhelming proportion (70%) of [intimate-partner] homicide perpetrators were under the influence of substances when the crime occurred, . . . and the use of alcohol is a strong predictor of intimate terrorism of women."  Darryl W. Roberts, *Intimate Partner Homicide: Relationships to Alcohol and Firearms*, 25 J. Contemp. Crim. Just. 67, 70 (2009).

The majority of states either prohibit carrying a firearm while under the influence of alcohol or a controlled substance, prohibit carrying a firearm while consuming alcohol or a controlled substance, or both.  Hawaiʻi currently has no law prohibiting either.

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 21 of 26   PageID.169
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 8 of 13

**The bill would prohibit carrying or possessing a firearm on private property open to the public without authorization (section 2, section 134-E, HRS, page 13, line 20, through page 15, line 8).** The bill would create a "default rule" that a person may not carry firearms on other peoples' private property without express permission of the owner or manager of the property. The purpose of this provision is to reduce the risks of gun violence on private property, to reduce the likelihood of armed confrontations, and to respect the right of private entities and property owners to decide for themselves whether to allow the carrying of firearms on their property.

This is similar to laws adopted in New York and New Jersey in 2022. *See* N.Y. Penal Law § 265.01-d(1) ("[a] person is guilty of criminal possession of a weapon in a restricted location when such person possesses a firearm, rifle, or shotgun and enters into or remains on or in private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or has otherwise given express consent."); N.J. Stat. Ann. § 2C:58-4.6(a)(24) (prohibiting carrying a firearm onto "private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun"); *see also* Alaska Stat. § 11.61.220(a) (prohibiting possession of a firearm "that is concealed on the person within the residence of another person unless the person has first obtained the express permission of an adult residing there to bring a concealed deadly weapon within the residence").

Under this provision, an owner or operator of private property may signify authorization for others to carry a firearm on their property by providing written or verbal authorization, or by posting a conspicuous sign indicating that carrying or possessing a firearm is authorized. To be subject to this provision, the private property must be "open to the public"—this includes places like malls, hotels, other retail establishments, etc.

Consistent with this provision, survey data indicates that most people would prefer that the default rule be that guns should not be carried on others' private property

Case 1:23-cv-00265-LEK-WRP  Document 1-2  Filed 06/23/23  Page 22 of 26  PageID.170
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 9 of 13

without their express consent.  As one recent study found, "a substantial and statistically significant majority of Americans reject the default right to carry weapons onto other people's residences, unoccupied rural land, retail establishments and businesses."  Ian Ayres & Spurthi Jonnalagadda, *Guests with Guns: Public Support for "No Carry" Defaults on Private Land*, 48 Journal of Law, Medicine & Ethics 183, 189 (2020).

In light of the above, it appears that of the two possible alternatives for a rule like this—(1) a rule <u>allowing</u> the concealed carrying of firearms on others' private property unless the property owners take affirmative steps to expressly <u>deny</u> consent or (2) a rule that <u>prohibits</u> concealed carry of firearms on others' private property unless property owners expressly <u>grant</u> consent—most people would prefer option (2).  As noted above, a central purpose of this provision is to protect the important right of owners and operators of private property to decide for themselves whether they want to allow other people to carry firearms on their property.

**The bill would require the Department of the Attorney General to publish an annual report regarding licenses to carry firearms (section 2, section 134-F, HRS, page 15, line 9, through page 16, line 6).**

**The bill would establish the offense of failure to conceal a firearm by a concealed carry licensee (section 2, section 134-G, HRS, page 16, line 7, through page 17, line 2).**  The bill would make it a petty misdemeanor for a person to be carrying a firearm pursuant to a license issued under section 134-9 and to intentionally, knowingly, or recklessly cause alarm to another person by failing to conceal the firearm.

**The bill would revise, clarify, and focus Hawaii's mental-health disqualification for firearms possession (section 6, section 134-7(c), HRS, page 35, line 1, through page 36, line 13).**  Currently, section 134-7(c)(3), HRS, prohibits persons "diagnosed as having a significant behavioral, emotional, or mental disorders [sic] as defined by the most current diagnostic manual of the American Psychiatric Association or for treatment for organic brain syndromes" from possessing firearms. The bill would replace the current disqualifier provision with a new provision establishing that a person shall not possess a firearm if they have been "diagnosed with or treated for a medical, behavioral, psychological, emotional, or mental condition or disorder that

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 10 of 13

causes or is likely to cause impairment in judgment, perception, or impulse control to an extent that presents an unreasonable risk to public health, safety, or welfare if the person were in possession or control of a firearm or ammunition[.]"  The proposed revision is intended to update the statutory language to create a more targeted provision that focuses on reducing risks to public welfare.  Additionally, the term "organic brain syndrome" is no longer commonly used.  *See, e.g.*, Donald W. Black, M.D. & Jon E. Grant, M.D., M.P.H., J.D., *The Essential Companion to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* 360 (2014).

The wording of this provision is similar to an analogous Texas statute.  *See* Tex. Gov't Code § 411.172(d) (disqualification for license to carry based on "diagnos[is] by a licensed physician as suffering from a psychiatric disorder or condition that causes or is likely to cause substantial impairment in judgment, mood, perception, impulse control, or intellectual ability").

**The bill would protect public safety by ensuring that firearms are not possessed or carried by those who lack the essential character or temperament necessary to be entrusted with a firearm (section 4, page 25, line 15, through page 27, line 4, and section 7, page 41, lines 10-12; page 42, lines 13-15; and page 50, line 12, through page 51, line 15).**  The bill provides that "[i]n determining whether a person lacks the essential character or temperament necessary to be entrusted with a firearm, the issuing authority shall consider whether the person poses a danger of causing a self-inflicted bodily injury or unlawful injury to another person, as evidenced by:

(1)  Information from a healthcare provider indicating that the person has had suicidal or homicidal thoughts or tendencies within the preceding five years;

(2)  Statements by the person indicating dangerousness or violent animus towards one or more individuals or groups, including but not limited to groups based on race, color, national origin, ancestry, sex, gender identity, gender expression, sexual orientation, age, disability, religion, or other characteristic, of a nature or to an extent that would objectively indicate to a reasonable observer that it would not be in the interest of the public health,

safety, or welfare for the person to own, possess, or control a firearm or ammunition; or

(3)    Other information that would lead a reasonable, objective observer to conclude that the person presents a danger to the community or intends or is likely to use a firearm for an unlawful purpose or in an unlawful manner."

**The bill would add new education and training requirements for applicants for a license to carry a firearm in public (section 7, section 134-9, HRS, page 47, line 8, through page 48, line 21).**  This includes components on firearm safety, firearm handling, shooting technique, safe storage, legal methods to transport firearms and secure firearms in vehicles, laws governing places in which persons are prohibited from carrying a firearm, firearm usage in low-light situations, situational awareness and conflict management, and laws governing firearms, including information regarding the circumstances in which deadly force may be used for self-defense or the defense of another, mental health and mental health resources, as well as a live-fire shooting exercise on a firing range, with a demonstration by the applicant of safe handling of (and shooting proficiency with) each firearm that the applicant is applying to be licensed to carry in public.  Increased education and training is expected to play an important role in mitigating risks associated with the public carry of firearms.  This provision is intended to align with recent reforms in several other states.

The bill would also adjust the duration of a license to carry a firearm from one year to four years.  *See* Section 7, section 134-7(m), HRS, page 54, lines 2-3 (providing that "[u]nless renewed, a concealed or unconcealed license shall expire four years from the date of issue").

The bill also provides that a concealed carry license is valid throughout the State, rather than being valid only in the particular county in which it was issued.  *See* Section 7, section 134-9(a), HRS, page 41, lines 1-4.

**The bill would clarify that when a permit to acquire a firearm or a license to carry a firearm is denied, the applicant should be given reasons for the denial and will have a right to a contested case hearing (section 4, section 134-2(i) and (k), HRS, page 31, lines 14-19, and page 33, lines 3-14; section 7, section 134-9(j) and**

Case 1:23-cv-00265-LEK-WRP   Document 1-2   Filed 06/23/23   Page 25 of 26   PageID.173
Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 12 of 13

**(k), HRS, page 52, line 1, through page 53, line 9).**  This is intended to ensure efficient and fair administrative processes for applicants.

**The bill would prohibit a person carrying a firearm in public pursuant to a license under section 134-9 from carrying more than one firearm on their person at one time (section 7, section 134-9(q), HRS, page 55, lines 12-15).**  This provision is intended to address the risks to public health and safety associated with carrying multiple firearms in public without impairing the ability of a law-abiding, responsible individual to engage in effective self-defense with a firearm.

**The bill would disqualify individuals who have been convicted of a non-felony crime relating to firearms from possessing firearms for 20 years following the conviction (section 6, section 134-7(h), HRS, page 39, line 18, through page 40, line 6).**  Under current law, felonies and certain other crimes result in an indefinite disqualification from possessing firearms.  The bill would modestly expand the set of crimes that trigger a disqualification from firearms possession and establish a category of firearms crimes that also, upon conviction, result in disqualification.  These provisions are intended to reduce the risks to public health and safety posed by armed individuals who have a track record of dangerous criminal conduct—rather than being responsible, law-abiding gun owners.  The core purpose is to ensure that those who carry guns are responsible, law-abiding gun owners.  With respect to misdemeanor convictions, the bill would revise the length of the firearms prohibition associated with such convictions from an indefinite disqualification to a 20-year disqualification.  In other states, qualifying misdemeanor convictions generally result in prohibitions on firearms possession that range from 3-20 years.  The bill would maintain Hawaii's indefinite prohibition on firearms possession by felons, which parallels federal law.

**The bill would adjust certain regulatory fees relating to firearms (section 7, section 134-9(i), HRS, page 51, lines 16-21, and section 7, section 134-9(p), HRS, page 55, lines 5-11).**  The bill would provide for a nonrefundable fee of $150 for an application to carry a firearm pursuant to section 134-9, HRS, and would establish a nonrefundable fee of $50 for a license renewal application under section 134-9, HRS. These revisions are warranted because the prior fee ($10 for a license issued under

Testimony of the Department of the Attorney General
Thirty-Second Legislature, 2023
Page 13 of 13

section 134-9, HRS) was set decades ago and it should be adjusted to reflect inflation and increased costs, including costs associated with background checks and investigations and additional procedures established in this bill.  These fees shall be chargeable by and payable to the appropriate county and shall be used for expenses related to police services.

These fees are comparable to fees established in a number of other states.  *See, e.g.*, N.J. Stat. Ann. § 2C:58-4 (New Jersey: "[e]ach application [for a permit to carry handguns] shall be accompanied by a $200 application fee"); Mass. Gen. Laws Ann. ch. 140, § 131(i) (Massachusetts: "[t]he fee for the application [to carry a firearm] shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial"); Okla. Stat. tit. 21, §§ 1290.5 and 1290.12 (Oklahoma: $100 application fee and $85 renewal fee); Tenn. Code Ann. § 39-17-1351 (Tennessee: $100 application fee).

The bill would provide for a waiver of the fees upon a showing of financial hardship by the applicant.  Page 55, lines 9-11.

* * *

As outlined above, the Department strongly supports this bill.  The bill will help to maintain the longstanding public policy and legislative intent of chapter 134, HRS, amid a changing legal landscape following recent United States Supreme Court decisions.

Thank you for your consideration of this important measure.