**ATTORNEYS FOR FREEDOM LAW FIRM**
1003 Bishop Street
Suite 1260 Pauahi Tower
Honolulu, HI 96813
Phone: (808) 647-2423
Fax: (480) 857-0150
**Marc J. Victor - Bar. No. 011090**
**Jody L. Broaddus - Bar No. 011229**
**Caroline M. Elliot - Bar No. 011541**
Marc@AttorneysForFreedom.com
Jody@AttorneysForFreedom.com
Caroline@AttorneysForFreedom.com
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JASON WOLFORD, | Civil No. 1:23-cv-265-LEK-WRP |
| ALISON WOLFORD, | |
| ATOM KASPRZYCKI, and | ***AMICUS CURIAE* BRIEF OF** |
| HAWAII FIREARMS COALITION, | **OF NATIONAL ASSOCIATION FOR GUN RIGHTS** |
| Plaintiffs, | |
| vs. | |
| ANNE E. LOPEZ, in her official capacity as Attorney General for the State of Hawai'i, and | |
| MAUI COUNTY | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICUS CURIAE* ............................................................... 1

ARGUMENT ..................................................................................................... 1

I. Introduction ............................................................................................. 1

II. §134-E Violates the Second Amendment Rights of
Law-Abiding Citizens .............................................................................. 7

    A. §134-E is Presumptively Unconstitutional ..................................... 7

    B. §134-E Is Not Consistent with the Historical Tradition
of Firearms Regulation in the United States ................................. 8

    C. Summary: §134-E Violates the Second Amendment ..................... 13

III. §134-E Violates the First Amendment ..................................................... 14

CONCLUSION .................................................................................................. 17

## TABLE OF AUTHORITIES

**CASES**                                                                                                      Page

*303 Creative LLC v. Elenis*, 2023 WL 4277208 (U.S. June 30, 2023) . 6, 7, 14, 15

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013) ............................................................................... 14

*Antonyuk v. Hochul*, 2022 WL 16744700 (N.D.N.Y. 2022) ....................... 13, 16

*Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 795 (2011) ................................... 12

*Christian v. Nigrelli*, 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022) ............. 13

*D.C. v. Heller*, 554 U.S. 570 (2008) ................................................................. 10

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ............................... 11

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961) ......................................... 8

*Koons v. Platkin*, 2023 WL 3478604 (D.N.J. 2023) ......................................... 13

*Laird v. Tatum*, 408 U.S. 1 (1972) ................................................................... 16

*McCullen v. Coakley*, 573 U. S. 464 (2014) .................................................... 14

*Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876 (2018) ............................... 12

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ............................................. 8

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ............ 16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ..................................................................... *passim*

*Peruta v. California*, 137 S. Ct. 1995 (2017) .................................................... 6

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) ................ 15

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................................... 15

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994) ............... 14, 15

*West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624 (1943) ....................... 14, 16

*Wooley v. Maynard*, 430 U.S. 705 (1977) .................................................. 15, 16

**STATUTES**

H.R.S. §134-E ........................................................................................*passim*

Senate Bill 1230 ......................................................................................... 4

U.S. CONST. amend. I ............................................................... 12, 14, 15, 16

U.S. CONST. amend. II .......................................................................*passim*

**OTHER AUTHORITIES**

Omri Ben-Shahar, John A. E. Pottow, *On the Stickiness of Default Rules*, 33 Fla. St. U. L. Rev. 651 (2006) .......................................... 11

## INTEREST OF *AMICUS CURIAE*

NAGR is a nonprofit membership and donor-supported organization that seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has over 240,000 members nationwide, many of whom reside in Hawai'i. As a national organization whose sole focus is on the protection of Second Amendment rights, NAGR brings particular insight and expertise to the issues presented in this action. NAGR submits the attached brief to ensure a proper understanding of the impact of H.R.S. §134-E on its members and the constitutional issues implicated by the statute.

## ARGUMENT

### I. Introduction

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court affirmed that individuals have a constitutional right under the Second Amendment to publicly carry firearms for self-defense. The State of Hawai'i's statute regulating carrying firearms was manifestly unconstitutional under the Second Amendment standard set forth in *Bruen*. Accordingly, the State enacted Senate Bill 1230. But instead of following the Supreme Court's guidance in *Bruen*, with Senate Bill 1230, Hawai'i defied it, trading one unconstitutional set of firearms laws for another. H.R.S. §134-E is of particular concern to NAGR and its members. That provision states:

> **§134-E Carrying or possessing a firearm on private property of another person without authorization; penalty.**

(a) A person carrying a firearm pursuant to a license issued under section 134-9 shall not intentionally, knowingly, or recklessly enter or remain on private property of another person while carrying a loaded or unloaded firearm, whether the firearm is operable or not, and whether the firearm is concealed or unconcealed, unless the person has been given express authorization to carry a firearm on the property by the owner, lessee, operator, or manager of the property.

(b) For purposes of this section, express authorization to carry or possess a firearm on private property shall be signified by:

   (1)  Unambiguous written or verbal authorization; or

   (2)  The posting of clear and conspicuous signage at the entrance of the building or on the premises, by the owner, lessee, operator, or manager of the property, or agent thereof, indicating that carrying or possessing a firearm is authorized.

(c) For purposes of this section:

"Private entity" means any homeowners1 association, community association, planned community association, condominium association, cooperative, or any other nongovernmental entity with covenants, bylaws, or administrative rules, regulations, or provisions governing the use of private property.

"Private property" does not include property that is owned or leased by any governmental entity.

"Private property of another person" means residential, commercial, industrial, agricultural, institutional, or undeveloped property that is privately owned or leased, unless the person carrying a firearm is an owner, lessee, operator, or manager of the property, including an ownership interest in a common element or limited common element of the property; provided that nothing in this chapter shall be construed to limit the enforceability of a provision in any private rental agreement restricting a tenant's possession or use of firearms, the enforceability of a restrictive covenant restricting the possession or use of firearms, or the authority of any private entity to restrict the possession or use of firearms on private property.

(d) This section shall not apply to a person in an exempt category identified in section 134-ll(a).

   (e) Any person who violates this section shall be guilty of a misdemeanor.

  §134-E designates all private property in the State to be a restricted location where carrying firearms is forbidden absent affirmative steps by the property owner to allow carriage. Contrary to the Second Amendment, the State has established a presumption against carrying firearms for self-defense in public. Under §134-E, ordinary, law-abiding citizens are prevented from carrying handguns in public for self-defense in almost all corners of the State. As such, §134-E makes a mockery of the Supreme Court's holding in *Bruen*, which reaffirmed that personal security extends to more than just "those . . . who work in marbled halls, guarded constantly by a vigilant and dedicated police force," *Peruta v. California*, 137 S. Ct. 1995, 1999 (2017) (Thomas, J., dissenting from the denial of certiorari), but also emphatically extends to include ordinary, law-abiding Americans outside the home. *Bruen*, 142 S. Ct. at 2122. Since the State's expansive restrictions on carriage in public do not allow typical law-abiding citizens to carry a loaded and operable handgun outside their home in all sorts of places of everyday life, these restrictions deny individuals any meaningful right to bear arms in clear violation of the Second Amendment.

  In addition, §134-E runs afoul of the Supreme Court's recent ruling in *303 Creative LLC v. Elenis*, 2023 WL 4277208 (U.S. June 30, 2023). In that case the Court held that the government may not compel a person to speak on a matter when he would prefer to remain silent. Many of NAGR's members are in the same position as Plaintiff Kasprzycki, who does not wish to be forced to express support or disapproval of carrying concealed arms on his property. Verified Compl. ¶ 65. Yet,

6

in §134 the State mandates that they speak regarding these issues whether they want to or not. As such, the law violates the longstanding "compelled speech" doctrine the Supreme Court emphatically reaffirmed in *303 Creative*.

## II.   §134-E Violates the Second Amendment Rights of Law-Abiding Citizens

### A.   §134-E is Presumptively Unconstitutional

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129–30 (emphasis added). Another way of expressing the same thing is that when a law burdens conduct covered by the plain text of the Second Amendment, it is *presumptively unconstitutional*.

In *Bruen*, the Court stated:

> We therefore turn to whether the plain text of the Second Amendment protects [plaintiffs'] proposed course of conduct – carrying handguns publicly for self-defense. *We have little difficulty concluding that it does*. Respondents do not dispute this.

*Id.*, 142 S. Ct. at 2134 (emphasis added). "Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms." *Id.* at 2134. By including "the right to 'bear arms' "the Second Amendment also "refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive

7

Case 1:23-cv-00265-LEK-WRP   Document 54   Filed 07/14/23   Page 9 of 18   PageID.487

action in a case of conflict with another person." *Id*. Thus, the "definition of 'bear' naturally encompasses public carry" and "[t]o confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections." *Id*. at 2134–35. After all, "[m]any Americans hazard greater danger outside the home than in it." *Id*. at 2135, *citing Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012) ("[A] Chicagoan is a good deal more likely to be attacked on a sidewalk in a rough neighborhood than in his apartment on the 35th floor of the Park Tower.").

Hawai'i cannot dispute that carrying handguns in public for self-defense is covered by the plain text of the Second Amendment. NAGR's members seek to carry their firearms for purposes of self-defense as they go about their daily lives. They seek to be able to walk onto property open to the public while carrying a firearm for self-defense. In other words, they seek to "possess and carry weapons in case of confrontation" in these public places because "confrontation can surely take place outside the home." *Bruen*, 142 S. Ct. at 2135. In summary, §134-E burdens conduct protected by the Second Amendment. Therefore, it is presumptively unconstitutional.

### B. §134-E Is Not Consistent with the Historical Tradition of Firearms Regulation in the United States

The State may attempt to rebut the presumption of unconstitutionality by "demonstrating that [§134-E] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*., *quoting Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961).

8

In considering whether the government has met its historical burden, courts are to engage in "reasoning by analogy." *Bruen,* at 2132. To be a genuine "analogue," the historical tradition of regulation identified by the government must be "relevantly similar" to the restriction before the Court today. *Id.* Two "metrics" are particularly salient in determining if a historical regulation is "relevantly similar": "[1] how and [2] why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. By considering these two metrics, a court can determine if the government has demonstrated that a "modern-day regulation" is "analogous enough" to "historical precursors" that the regulation may be upheld as consistent with the Second Amendment's text and history. *Id.* at 2133. It is the government's burden to identify a sufficiently close historical analogue to justify the challenged restriction. *Id.* at 2130. The State cannot meet that burden in this case.

*Bruen* has already delineated the one aspect of our history and tradition that is sufficiently analogous to – and therefore capable of justifying (in circumstances not present here) – the carry restrictions that Hawai'i enacted with §134-E. That is the limited tradition of designating certain narrow areas as "sensitive places." *Bruen*, 142 S. Ct. at 2133. The Court explained that there was a tradition of "forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. And while "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited – e.g., legislative assemblies, polling places, and courthouses – [the Court was] also

9

aware of no disputes regarding the lawfulness of such prohibitions." *Id*. Thus, the Court held that going forward, "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new and analogous* sensitive places are constitutionally permissible." *Id*. (emphasis added). In other words, courts must assess claimed sensitive place restrictions by whether they are "relevantly similar" to longstanding restrictions on students carrying firearms in schools and firearms in legislative assemblies, polling places, and courthouses.

Hawai'i's designation of sensitive places in §134-E is inconsistent with the Second Amendment because the State is unable to justify such restrictions with historically grounded analogies. §134-E establishes an "anti-carry" presumption throughout the State and is unconstitutional to the extent that it establishes a default ban on the carry of firearms for self-defense in areas open to members of the public.

The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Bruen*, 142 S. Ct. at 2131, *quoting D.C. v. Heller*, 554 U.S. 570, 635 (2008). Because of this balance "certain policy choices" have been definitively taken "off the table." *Heller*, 554 U.S. at 636. Among these policy choices is establishing a presumption against carrying on private property open to the public because the Second Amendment itself establishes a presumption that licensed, law-abiding citizens have a "right to 'bear'

10

arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. The State cannot flip a presumption codified in the Constitution itself. But that is exactly what the State has done by dictating that all private property –even in those locations open to members of the public –is now presumptively off-limits.

The State's establishment of an anti-carry presumption for all private property is a significant restriction on the right to bear arms. After all, it establishes a "default rule" of interaction with strangers, i.e., members of the public coming to a property open to the public, and in these situations "default rules" are particularly "sticky." *See generally* Omri Ben-Shahar, John A. E. Pottow, *On the Stickiness of Default Rules*, 33 Fla. St. U. L. Rev. 651 (2006). By "sticky," legal scholars mean that individuals have a well-known tendency to stick by the default rule even when they would otherwise take a different position. *Id*. at 651–54.

The Second Amendment cannot be so easily manipulated with Hawai'i's novel presumption by deputizing private property owners to effect a carry ban by their indifference or acquiescence to the State's presumption. Consider other unconstitutional presumptions that a State would be barred from establishing. The State could not establish a default rule that praying before a meal is unlawful unless a restauranteur expressly consents. *Cf. Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) ("The [Free Exercise] Clause protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all

11

kinds to live out their faiths in daily life through the performance of (or abstention from) physical acts.") (internal quotation marks omitted). The State could not establish a default rule that an individual cannot wear a political t-shirt in an office park unless a leasing agent expressly consents. *Cf. Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) ("Minnesota's ban on wearing any 'political badge, political button, or other political insignia' plainly restricts a form of expression within the protection of the First Amendment."). As in those situations, the Bill of Rights poses no obstacle to a property owner independently banning praying or banning political t-shirts (even if other laws might), just as a property owner may be able to independently decide to bar invitees from carrying firearms. But, as in all those situations, the State may not presume to make the property owner's decision for them and place a thumb on the scale against the exercise of constitutional rights.

The key distinction here is that between the rights of a property owner and the rights of the government. Property owners generally have a right to determine whether someone may or may not carry firearms on their property. But honoring this right of property owners does not justify the government in establishing a default rule that all private property is off-limits for persons carrying firearms. That impermissibly burdens the exercise of a constitutional right. *Cf. Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 795 n.3 (2011) (reasoning that although it "perhaps follows" from parents' authority over minor children "that the state has the power to enforce parental prohibitions," "it does not follow that the state has

the power to prevent children from saying or hearing anything without their parents' prior consent").

Far from honoring the Second Amendment as the Supreme Court instructed in *Bruen*, the State's new default rule broadly sweeps away the Second Amendment rights of the people of Hawai'i and effectively shuts off most public areas from carrying for self-defense. As district courts have already found while invalidating similar statutes in New York and New Jersey, there are no relevant and analogous restrictions in American history. *See Antonyuk v. Hochul*, 2022 WL 16744700, at *79 (N.D.N.Y. Nov. 7, 2022) ("imposition of a state-wide restriction on concealed carry on all private property that is open for business to the public finds little historical precedent."); *Christian v. Nigrelli*, 2022 WL 17100631, at *9 (W.D.N.Y. Nov. 22, 2022) ("Nothing in the Nation's history or traditions presumptively closes the door on that right across all private property."); and *Koons v. Platkin*, 2023 WL 3478604 (D.N.J. May 16, 2023).

### C. Summary: §134-E Violates the Second Amendment

In summary, §134-E burdens the right of the law-abiding citizens of Hawai'i to carry firearms in public for self-defense. This conduct is covered by the plain text of the Second Amendment, and therefore §134-E is presumptively unconstitutional. The State of Hawai'i cannot rebut the presumption of unconstitutionality by demonstrating that the law is consistent with the Nation's historical tradition of firearms regulation, because there is no such tradition, as

13

the courts that have examined the historical record in great detail have already held. Therefore, §134-E is plainly unconstitutional and should be enjoined.

### III.   §134-E Violates the First Amendment

§134-E creates a default presumption across the entire State of Hawai'i that all private property is off-limits to law-abiding citizens who wish to carry firearms for self-defense. The default presumption can be rebutted only by the conspicuous expression of affirmative consent by landowners. In other words, the State has said to landowners that with respect to this conduct – and this conduct only – the normal presumptive license does not apply, and you must affirmatively speak to grant consent even if you would prefer to remain silent. The statute thus violates the First Amendment.

It is a basic First Amendment principle that freedom of speech prohibits the government from telling people what they must say. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013). "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Id.*, *quoting Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994). As the Court reaffirmed last month in *303 Creative LLC v. Elenis*, 2023 WL 4277208 (U.S. June 30, 2023), "if there is any fixed star in our constitutional constellation, it is the principle that the government may not interfere with an uninhibited marketplace of ideas." *Id.*, * 7, *quoting West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642 (1943), and *McCullen v. Coakley*, 573 U. S. 464, 476 (2014) (cleaned

14

up). Moreover, the government may not compel a person to speak when he would prefer to remain silent. *Id.* \*8. Thus, "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

The Supreme Court has consistently "prohibit[ed] the government from telling people what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). This prohibition is not limited to ideological messages; it extends equally to compelled statements of fact. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988) ("These cases cannot be distinguished simply because they involved compelled statements of opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech."). In summary, the "First Amendment envisions the United States as a rich and complex place where all persons are free to think and speak as they wish, not as the government demands." *303 Creative*, at \*16.

Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech and is therefore a "content-based" regulation of speech. *Riley*, 487 U.S. 781, 795 (1988). *See also Turner Broad. Sys.*, 512 U.S. 622, 642 (1994) (Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny as laws that suppress, disadvantage, or impose differential burdens upon speech because of its content.). Content-based regulations on speech are presumptively unconstitutional

and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

Generally, to prevail on a compelled-speech claim under the First Amendment, a plaintiff must prove three elements: (1) speech, (2) to which the speaker objects or disagrees, (3) which is compelled by governmental action that is regulatory, proscriptive, or compulsory in nature. *Wooley*, 430 U.S. 705, 714-15 (1977); *Laird v. Tatum*, 408 U.S. 1, 11 (1972); and *Barnette*, 319 U.S. at 642. The first two elements of a compelled-speech claim appear present here, regardless of whether the speech were deemed factual and not ideological in nature, and regardless of whether the speaker agreed with the truth of the message and just disagreed with having to speak it. *Antonyuk v. Hochul*, 2022 WL 16744700, at *82 (N.D.N.Y. Nov. 7, 2022). §134-E compels speech by coercing property owners to conspicuously speak the state's controversial message (visible to neighbors and passersby on the sidewalk or street) if (1) they want to welcome onto their property all license-holding visitors whom the State has spooked with the threat of a criminal charge, but (2) they are otherwise unable to give express consent to those visitors for some reason (say, because as small-business owners they do not enjoy the luxury of being able to sit at the front entrance to their property twenty-four hours a day, seven days a week, twelve months a year). *Cf. Id.* at *83.

In summary, therefore, §134-E is presumptively unconstitutional under the First Amendment. Applying strict scrutiny, the State has not offered any evidence

16

that the law is narrowly tailored to serve a compelling state interest. Therefore, the presumption is unrebutted, and the unconstitutional law should be enjoined.

## CONCLUSION

For the foregoing reasons, NAGR respectfully requests that the Court enter the relief requested by Plaintiffs.

Respectfully submitted this 14th day of July 2023.

*/s/ Marc J. Victor*
ATTORNEYS FOR FREEDOM LAW FIRM
Marc J. Victor*
Jody L. Broaddus*
Caroline M. Elliot*
1003 Bishop Street
Suite 1260 Pauahi Tower
Honolulu, HI 96813
Phone: (808) 647-2423

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Phone:  (303) 205-7870
Email:  barry@arringtonpc.com

**\***Counsel of record

Attorneys for amicus curiae National Association for Gun Rights

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all appearing parties by operation of the Court's electronic filing. Parties may access this filing through the Court's system.

*/s/ Marc J. Victor*
Marc J. Victor