Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:23-cv-00265-LEK-WRP |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, | ) | |
| Defendant. | ) | |

**Contents**

**I. Introduction** ........................................................................... 1

**II. Plaintiffs Have Standing** ........................................................................... 1

**III. Plaintiffs May Bring a Facial Challenge** ........................................................................... 5

**IV. Compelled Speech** ........................................................................... 6

**V. Banks** ........................................................................... 7

**VI. Parks and Beaches** ........................................................................... 8

**VII. Restaurants that Serve Alcohol** ........................................................................... 11

**VIII. Government Parking Lots** ........................................................................... 12

**IX. Default Rule** ........................................................................... 13

**X. Other Preliminary Injunction Prongs** ........................................................................... 14

**XI. Conclusion** ........................................................................... 15

**Table of Authorities**

*Antonyuk v. Hochul, No. 122-cv-0986, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022)* ........ 2,6, 14
*Bennett v. Spear, 520 U.S. 154 (1997).* ........ 2
*Bonidy v. United States Postal Serv., 790 F.3d 1121 (10th Cir. 2015)* ........ 9, 13
*Bowsher v. Synar, 478 U.S. 714 (1986)* ........ 5
*Brown v. Enter. Merchs. Ass'n, 564 U.S. 786 n.3 (2011)* ........ 4
*Common Cause/Georgia v. Billups, 554 F.3d 1340 (11th Cir. 2009)* ........ 3
*Christian v. Nigrelli, No. 22-cv-695, 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022)* ........ 2, 3
*Constitution Party v. Aichele, 757 F.3d 347 (3d Cir. 2014)* ........ 2
*Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976* ........ 15
*Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir. 1998)* ........ 5
*Fotoudis v. City & Cnty. of Honolulu, 54 F. Supp. 3d 1136 (D. Haw. 2014* ........ 15
*G & V Lounge v. Mich. Liquor Control Comm'n, 23 F.3d 1071 (6th Cir. 1994)* ........ 15
*Gannett Co., Inc. v. DePasquale, 443 U.S. 368 (1978).* ........ 15
*GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244 (11th Cir. 2012)* ........ 14
*Gordon v. Holder, 721 F.3d 638 (D.C. Cir. 2013)* ........ 15
*Huntington Branch, NAACP v. Huntington, 689 F.2d 391 (2d Cir. 1982)* ........ 3
*Jones v. Bonta, 34 F.4th 704 (9th Cir. 2022)* ........ 15
*Koons v. Platkin, No. 22-7464, 2023 WL 3478604 (D.N.J. May 16, 2023)* ........ 2, 6
*Maryland Shall Issue, Inc. v. Montgomery Cnty., No. TDC-21-1736, 2023 WL 4373260 (D. Md. July 6, 2023)* ........ 2
*Members of City Council v. Taxpayers for Vincent, 466 U.S. 789 (1984)* ........ 5
*N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2144 (2022)* ........ Passim
*Nordyke v. King, 681 F.3d 1041 (9th Cir. 2012)* ........ 9
*NRA v. Bondi, 61 F.4th 1317 (11th Cir. 2023), en banc granted (July 14, 2023)* ........ 1
*Preminger v. Principi, 422 F.3d 815 (9th Cir. 2005).* ........ 15
*Project 80s v. Pocatello, 942 F.2d 635 (9th Cir. 1991)* ........ 6
*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47 n.2 (2006)* ........ 5
*Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131 (3d Cir. 2009)* ........ 2
*United States v. Class, 930 F.3d 460 (D.C. Cir. 2019)* ........ 12, 13
*United States v. Ewing, 638 F.3d 1226 (9th Cir. 2011)* ........ 1
*United States v. Kokinda, 497 U.S. 720 (1990)* ........ 9
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)* ........ 3
*Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, (2000)* ........ 3
*Yukutake v. Conners, 554 F. Supp. 3d 1074 (D. Haw. 2021)* ........ 5, 11

*Zaitzeff v. City of Seattle, 17 Wash. App. 2d 1, 18, 484 P.3d 470 (2021)*.................10

**Statutes**

1786, VA, Ch. 49, An Act Forbidding and Punishing Affrays.................................10
H.R.S. § 134-A(a)(4)...........................................................................................5
H.R.S. §134-E ....................................................................................................5
HAR § 13-146-19(a) ..........................................................................................14
HAR §13-146-4..................................................................................................14

**Other Authorities**

https://dlnr.hawaii.gov/ecosystems/files/2013/09/HRS13-146_State-Parks.pdf.....11
https://firearmslaw.duke.edu/laws/1786-va-laws-33-ch-21-an-act-forbidding-and-punishing-affrays/ (last visited 7/17/2023). ..........................................................8
https://www.mauimallvillage.com/directory/ .......................................................12

Constitutional Provisions

Article III.........................................................................................................3, 7

## I. <u>Introduction</u>

Defendant's response falls short for a number of reasons, particularly its failure to address the federal courts which have enjoined laws similar to those at issue here. It heavily relies on the 11th Circuit's vacated opinion in *NRA v. Bondi*, 61 F.4th 1317 (11th Cir. 2023), en banc granted (July 14, 2023). It fails to come forth with the necessary historical analogues to justify its carry restrictions. And as shown below and in the attached Declarations of Clayton Cramer, Hawaii as well as its historians misrepresents the holdings of numerous cases, laws and legal doctrines. *See* Exhibit 1 Declarations of Clayton Cramer. And they've done this to impose a legal regime that bans carry in nearly all of the publicly accessible land in the County of Maui. *See* Exhibit 2 Map of Maui County.

## II. <u>Plaintiffs Have Standing</u>

A recurring theme of the State's brief is Plaintiffs lack of standing regarding various private property carry bans because they have not shown private businesses would allow them to carry. It produces no evidence, however, that any businesses mentioned in the complaint currently bans carry. That is true as well for banks and restaurants that serve alcohol, and plaintiffs are unaware of any evidence otherwise. Even if this were not the case, the State does not cite a single case that supports this novel standing theory. "*Article III* standing is jurisdictional." *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011). That means every court which reached the

merits in similar Second Amendment cases has implicitly found that the litigants had standing. Not a single court in the nation has endorsed the State's novel standing theory.[1] Although undeveloped, the State's theory is ultimately one of traceability and redressability. Plaintiffs' injury is clearly traceable to state law because the law restricts carry in the challenged locations. "[I]njury produced by determinative or coercive effect upon the action of someone else" is sufficient for traceability. *Bennett v. Spear*, 520 U.S. 154, 169, (1997).

> Moreover, there is room for concurrent causation in the analysis of standing, *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (holding that if a petition witness residency requirement was "at least in part responsible for frustrating [plaintiff's] attempt to fully assert his First Amendment rights in Virginia, the causation element of *Lujan* is satisfied")

*Constitution Party v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014). Plaintiffs' injury is thus plainly traceable to the State law.

Furthermore, Plaintiffs' claims are redressable. "Redressability is not a demand for mathematical certainty. It is sufficient to establish a "substantial likelihood that the requested relief will remedy the alleged injury in fact." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 143 (3d Cir. 2009) (quoting *Vt. Agency of*

---

[1] *See e.g., Koons v. Platkin*, No. 22-7464, 2023 WL 3478604 (D.N.J. May 16, 2023), *Maryland Shall Issue, Inc. v. Montgomery Cnty.*, No. TDC-21-1736, 2023 WL 4373260 (D. Md. July 6, 2023), *Antonyuk v. Hochul*, No. 122-cv-0986, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022), *Christian v. Nigrelli*, No. 22-cv-695, 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022).

*Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000)). *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) is dispositive. There, a developer and individual plaintiffs challenged a village zoning ordinance which precluded the development of low-income housing project. The Court found standing because "[t]he challenged action of the Village stands as an absolute barrier to constructing the housing for which [the developer] had contracted, a barrier which could be removed if injunctive relief were granted. *Id* at 254.

Similarly, Plaintiffs here have standing because "[i]nvalidation of the challenged ordinance, therefore, would tangibly improve the chances of" them carrying in the various locations they declared they want to carry in. *Huntington Branch, NAACP v. Huntington*, 689 F.2d 391, 395 (2d Cir. 1982). Moreover, the need to ensure consent before engaging in constitutionally protected conduct is itself a burden on that conduct and thus an injury in fact. *Cf. Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009) ("Requiring a registered voter either to produce photo identification to vote in person or to cast an absentee or provisional ballot is an injury sufficient for standing."). It is the Anti-Carry Default that prohibits firearm carry on the property absent such consent—in other words, that exercises on the government's behalf the property owner's traditional right of exclusion. *See Christian*, 2022 WL 17100631, at *9 (noting that "carrying on private property" is "generally permitted absent the owner's prohibition"); *cf. Brown v.*

*Enter. Merchs. Ass'n*, 564 U.S. 786, 795 n.3 (2011) (noting that laws "ma[king] [it] criminal to admit a person under 18 to church" would "not enforce parental authority over children's speech and religion; they impose governmental authority, subject only to a parental veto," and as such would be subject to constitutional challenge).

Moreover, Plaintiffs submit the declarations of several Maui business owners who have not put up signs but declare if H.R.S. §134-E were removed, they would allow the public to carry in their business.[2] They also have submitted declarations from the owners of restaurants that serve alcohol who declare that if H.R.S. § 134-A(a)(4) were removed, they would allow the public to carry in their restaurant.[3] Each Plaintiff has declared that if H.R.S. §134-E were enjoined they would carry at each of these businesses. *See* Exhibit 5 Supplemental Declarations of Plaintiffs. Thus, the State's concerns have largely been removed. As to the ban on bank parking lots, Kasprzycki owns the portion of the building his business is in. He would like to carry in the parking lot of his business, but he shares the parking lot with a bank. Complaint ¶ 61.[4] Therefore, there can be no dispute that he has a right to challenge the bank restriction. As a joint tenant with an equal possessory interest in the parking lot, Kasprzycki does not need to seek permission from the bank. "[T]he presence

2 *See* Exhibit 3 Declarations of Maui Businesses

3 *See* Exhibit 4 Declarations of Maui Restaurants

4 The bank Kasprzyscki shares a business with is Valley Isle Community Federal Credit Union. It was mistakenly identified as Bank of Hawaii in the complaint. *See* Exhibit 5 Supplemental Declarations of Plaintiffs

of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). This Court "need not consider the standing issue as to the" other Plaintiffs. *Bowsher v. Synar,* 478 U.S. 714, 721 (1986). However, if it did, the other Plaintiffs would have standing for the reasons stated above.

## III. Plaintiffs May Bring a Facial Challenge

Plaintiffs may bring a facial challenge against the State's carry bans. "An ordinance may be facially unconstitutional in one of two ways: "either [] it is unconstitutional in every conceivable application, or [] it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)). Judge Seabright recently found two provisions of Hawaii's registration law "facially unconstitutional" because they violated the Second Amendment in their typical application. *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1080 n.6 (D. Haw. 2021). The State's position contradicts the holdings of *Heller* and *Bruen*. The D.C. law which prohibited the ownership of handguns assuredly was constitutional as to convicted murderers as was the New York law at issue in *Bruen*. Yet in both cases, the Supreme Court had no problem striking those laws as facially unconstitutional.[5]

[5] If this Court disagrees, it should give relief on Plaintiffs' as-applied challenge.

## IV. **Compelled Speech**

The State ignores the only Court to rule on a similar law and misrepresents the holding in *Koons*. There the Court limited its analysis "to property that is *not* held open to the public" because it had already found the Default Rule violated the Second Amendment. *Koons*, at *212. Therefore, *Koons* has no persuasive value with regard to Plaintiffs' compelled speech claim because here Plaintiffs are challenging Hawaii's Default Rule as it pertains to property that is held open to the public.

The only court to rule on a compelled speech claim regarding a law similar to Hawaii's is the *Antonyuk* court. There, the Court found New York law which is identical to Hawaii's

> appears to compel Plaintiffs' speech another way: by ***coercing*** them, as busy store owners, to conspicuously speak the state's controversial message (visible to neighbors and passersby on the sidewalk or street) if (1) they want to welcome onto their property all license-holding visitors who the State has spooked with a felony charge, but (2) they are otherwise unable to give express consent to those visitors for some reason.

*Antonyuk,* at *237 (footnotes omitted).[6] This Court should follow *Antonyuk* and find that a law which requires a storeowner to display a sign or give consent to allow firearm owners to carry unconstitutionally compels speech.

---

[6] *See, also., Project 80s v. Pocatello*, 942 F.2d 635, 639 (9th Cir. 1991) ("Under the Idaho Falls and Pocatello ordinances, residents who wish to receive uninvited door-to-door solicitors must post a 'Solicitors Welcome' sign. The government's imposition of affirmative obligations on the residents' first amendment rights to receive speech is not permissible").

## V. **Banks**

This case presents the question whether it is constitutional for the State to deny Kasprzycki the right to carry a handgun in the parking lot of his private business. Kasprzycki owns an architecture business. Complaint ¶ ¶ 62, 65. His office shares a parking lot with a bank. Complaint ¶ 61. That means he is barred from carrying a handgun in his own parking lot. Furthermore, there is no "unprecedented social concern" or "dramatic technological changes" with respect to carrying handguns in banks, because banks existed in the 18th and 19th centuries, and bank robberies occurred then too. This means the State may not engage in analogical reasoning and is instead limited to identifying laws close to or identical to its modern regulation because "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. Historically, there were no bans on carry imposed by the government in banks or their parking lots, and thus there is no historical justification for Hawaii's bank restriction. The only historical laws Hawaii produced are two the State claims banned carrying in markets and fairs. Even if this were true, restrictions on carrying in markets and fairs are not distinctly similar to carrying in a bank or a bank's parking lot. Banks are enclosed buildings and their parking lots often have no one in them,

especially late at night when an individual is going to withdraw money from an ATM, or is leaving his business late at night and entering a parking lot that happens to be shared with a bank. This is not distinctly similar or even analogous to a market or fair. Moreover, the laws Hawaii cites did not prohibit carrying in markets or fairs. The 1786 law Virginia law prohibited carrying "in fairs or markets, or in other places, **in terror of the county**." *See* 1786, VA, Ch. 49, An Act Forbidding and Punishing Affrays (emphasis added).[7] This law only prohibited carrying weapons in a dangerous manner meant to terrorize people. Hawaii should know this. First, the plain language of the statute says this. And second, this law was specifically discussed in *Bruen*. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2144 (2022). "They prohibit bearing arms in a way that spreads 'fear' or 'terror' among the people." *Id at* 2145. Hawaii also cites a North Carolina 1792 law that was also discussed in *Bruen* and discounted by the majority as Justice Breyer explained "because they were modeled on the Statute of Northampton, which [the majority] believes prohibited only public carriage with the intent to terrify." *Id* at 2185. Thus, neither of the two laws cited actually prohibited the carry of arms at markets and fairs. Hawaii has failed to meet to justify its law.

## VI. Parks and Beaches

---

[7] https://firearmslaw.duke.edu/laws/1786-va-laws-33-ch-21-an-act-forbidding-and-punishing-affrays/ (last visited 7/17/2023).

Hawaii's primary argument in defending its ban on beaches and parks is that it does not need to respect Plaintiffs' rights on its own land. That is not correct. Applied to the First Amendment, that would mean Hawaii can ban protests on all public land. Even when acting as a proprietor, Hawaii "is a state actor rather than a private business, so its actions must comply with the Constitution." *Bonidy v. United States Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015). Hawaii's reliance on *Nordyke* is completely misplaced. In *Nordyke*, "Plaintiffs' Second Amendment challenge was based solely on their inability to conduct a successful gun show on county property." *Nordyke v. King*, 681 F.3d 1041, 1045 (9th Cir. 2012) (O'Scannlain concurring). In the midst of litigation, the Defendant interpreted its ordinance to allow for the sale of firearms. *Id at* 1044. Thus, the Ninth Circuit found there was no Second Amendment violation. That is the entirety of the Ninth Circuit's holding. There is nothing within *Nordyke* that supports Hawaii's theory. In fact, the cases it cites support the opposite conclusion. *Id.* at 1045. *See e.g., United States v. Kokinda*, 497 U.S. 720, 725, (1990) ("The Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints, as does a private business[.]") Hawaii's argument proves too much. Hawaii also "owns" sidewalks and streets, but the government cannot simply ban firearm carry there. *See Bruen*,142 S. Ct. at 2135. What is relevant is not the mere fact of government ownership. *Bruen* gave

specific examples of types of government buildings where firearms could be prohibited: legislative assemblies, polling places, and courthouses. By analogy "to those historical regulations," the State can potentially justify new sensitive places. *Id.* at 2133 (emphasis added). It has not.

Hawaii cites to no Founding Era laws that banned firearms in beaches or parks.[8] That alone is enough for the Court to find Hawaii has failed to satisfy its burden to justify its law. What it has cited to are a handful of outlier city ordinances from the mid to late 1800s. Outlier regulations are not to be credited. *Bruen*, at 2133, 2153, 2156, 2147 n.22.[9] Even if this Court were to find Hawaii's ban justified as to urban parks, that does not justify their wholesale ban on beaches and parks in Hawaii, especially on the outer islands, which are much less urban than on the mainland. Many of the beaches and parks Plaintiffs frequent are located away from town such as Launiupoko Beach Park and Rice Park.[10] Complaint ¶¶ 60, 61.

---

[8] The State's reliance on *Zaitzeff v. City of Seattle*, 17 Wash. App. 2d 1, 18, 484 P.3d 470 (2021) is misplaced. There the court found carrying in parks is part of the Second Amendment right and applied the now rejected "intermediate scrutiny." *Id.* at 479.

[9] *Bruen* rejected New York's reliance on three colonial statutes (1686 East New Jersey, 1692 Massachusetts, 1699 New Hampshire), *id.* at 2142–44, three late-18th-century and early-19th-century state laws that "parallel[] the colonial statutes" (1786 Virginia, 1795 Massachusetts, 1801 Tennessee), *id.* at 2144–45, three additional 19th-century state laws (1821 Tennessee, 1871 Texas, 1887 West Virginia), *id.* at 2147, 2153, five late-19th-century regulations from the Western Territories (1869 New Mexico, 1875 Wyoming, 1889 Idaho, 1889 Arizona, 1890 Oklahoma), *id.* at 2154–55, and one19th-century Western State law (1881 Kansas), *id.* at 2155–56.

[10] Spelled as Launiopoko in the complaint.

Additionally, Kasprzycki goes to Waihou Spring Trail and Polipoli Spring State Park. *See* Exhibit 5 Supplemental Declarations of Plaintiffs. Contrary to Hawaii's position, state law previously allowed for carrying a firearm for self-defense with a valid permit. HAR § 13-146-19(a) says "Firearms and other weapons may be used or possessed if in accordance with section 13-146-4". And HAR §13-146-4 simply prohibits harassing animals.[11] Hawaii has failed to justify its park and beach ban.

## VII. Restaurants that Serve Alcohol

Many of the historical laws Hawaii relies upon are laws regulating the colonial militia. Judge Seabright already rejected Hawaii's attempt to use militia law to justify the laws in *Yukutake*. "[T]he purpose and scope of these colonial-era militia laws are too dissimilar to the State of Hawaii's current registration requirement to support such a finding." *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1087 (D. Haw. 2021). Hawaii's restrictions on carrying in restaurants and their parking lots is meant to serve the Government's interest—not in military preparedness—but in protecting "public safety" and is thus not distinctly similar to the militia laws. *Id.*

Furthermore, Hawaii law prohibits people who are not drinking from carrying. None of the laws it cites disarmed sober people simply for being in a restaurant that served alcohol. Even if these laws could be used to justify this prohibition, they do

[11] Available at https://dlnr.hawaii.gov/ecosystems/files/2013/09/HRS13-146_State-Parks.pdf

nothing to justify the ban on carrying in the parking lots of restaurants. Plaintiff Jason Wolford regularly goes to Maui Mall which has several establishments which serve alcohol.[12] Complaint ¶ 59. No justification exists for prohibiting him from carrying his handgun while traveling to Whole Foods or O'Reilly Auto Parts simply because a restaurant serving alcohol happens to share a parking lot with those establishments.

## VIII. Government Parking Lots

All Plaintiffs wish to carry in the parking lot of DT Flemming beach park. *See* Complaint at ¶ ¶ 59, 60, 61. The parking lot at DT Flemming beach is not a sensitive place. The parking lot of Ross and Ace Hardware is not a sensitive place simply because it is shared with the Maui DMV. Hawaii cites two cases for support. Both have been abrogated by *Bruen* and are distinguishable on their own terms. *United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019) holds government parking lots generally are not sensitive places, but the unique nature of the parking lot at issue there required a special carve out. There, the litigant was found in a special "Maryland Avenue parking lot [that] may be used during working hours only by Capitol employees with a permit." *Id at* 464. It is located "less than 1,000 feet away from the entrance to the Capitol, and a block away from the Rayburn House Office Building." *Id.* These factors caused the Court to conclude that parking lot was "sufficiently integrated with the Capitol for *Heller I*'s sensitive

[12] https://www.mauimallvillage.com/directory/

places" to apply. *Id.* If Class "wanted to carry a gun in his car but abide by the ban," he could have done so but ***parked elsewhere***. *Id* at 465-66. (emphasis added). It was the parking lot's special features which made it "distinguishable" from other nearby areas. *Id at* 466. The parking lot of DT Fleming Beach Park plainly does not share these features. Nor does the Ross and Ace Hardware parking lot shared with the DMV. Hawaii also relies on *Bonidy v. United States Postal Serv.*, 790 F.3d 1121 (10th Cir. 2015) which found the government could ban carry in the parking lot of a post office. The 10th Circuit justified its decision because the parking lot operated as a "single unit with the postal building itself to which it is attached and which it exclusively serves." *Id* at 1125. Moreover, that case upheld the parking lot carry ban by applying "intermediate scrutiny," *Id.* at 1126, and is now abrogated.

## IX. Default Rule

As with the challenged "sensitive-place" restrictions, the State asserts "Plaintiffs fail to make the predicate showing that the Second Amendment's text confers a right to carry firearms into another's building absent their consent." And as with the challenged "sensitive-place" restrictions, that assertion is incorrect. There are no locational restrictions in the Second Amendment's text. As a result, the text supports no distinction between the right to carry firearms in locations the State might characterize as "public" and locations the State might characterize as "private." *Accord Bruen*, 142 S. Ct. at 2134 ("Nothing in the Second Amendment's

text draws a home/public distinction with respect to the right to keep and bear arms."). In either case, Hawaii must justify any restriction with evidence of a relevantly similar regulatory tradition. And in any event, Plaintiffs are challenging restrictions on privately owned property otherwise open to the public—e.g., grocery stores and gas stations—and that would be properly characterized as "public" spaces even if such a distinction were relevant. The State lacks any valid, "distinctly similar" historical analogues for the Anti-Carry Default from either the Founding or the Reconstruction era. *Id.* at 2133. This means that the laws use distinctly similar means to achieve similar purposes. Instead, the State cites to a handful of early American laws which the *Antonyuk* Court already recognized dealt with hunting on others' property. *see* 2022 WL 16744700, at *79 Hawaii construes these laws as dealing with gun carriage in general, but their plain purpose was to deal with poaching. The cited laws simply are not distinctly similar as *Bruen* requires. Finally, the three other district courts to decide this issue with New York and New Jersey's default rule all support Plaintiffs' position here, a point the State avoids addressing.[13]

## X. <u>Other Preliminary Injunction Prongs</u>

[13] Hawaii's reliance on *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012) is misplaced. The Eleventh Circuit framed that case as one that pitted the right to carry against the right to exclude, holding that "the pre-existing right codified in the Second Amendment does not include protection for a right to carry a firearm in a place of worship *against the owner's wishes*," a right that Plaintiffs do not assert. *Id* at 1265. (emphasis added)

Plaintiffs are suffering irreparable harm because they are suffering an ongoing violation of their constitutional rights.[14][15] Hawaii's remaining argument regarding Plaintiffs' perceived delay in filing is specious. Plaintiffs filed their complaint on June 23, 2023, and SB 1230 did not go into effect until July 1, 2023. As to the remaining factors, "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013).[16] As amici Hawaii Rifle Association, et al. demonstrated, Americans with CCW permits are incredibly unlikely to break the law. *See* Doc. No. [53] at *20-25.

## XI. Conclusion

The temporary restraining order should issue.

Dated: July 21, 2023.

Respectfully submitted,

*Counsel for Plaintiffs*
*/s/ Alan Beck*
Alan Alexander Beck

---

[14] As to the Second Amendment, *see e.g.*, *Jones v. Bonta*, 34 F.4th 704, 732 (9th Cir. 2022), *op. vacated on reh'g on other grounds*, 47 F.4th 1124 (9th Cir. 2022). *Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136, 1145 (D. Haw. 2014).

[15] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976)

[16] "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (citing *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 383)).