IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION,<br><br>                  Plaintiffs,<br><br><br>v.<br><br><br>ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi,<br><br>                  Defendant. | Civil No. 1:23-cv-00265-LEK-WRP<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................1

II.     STANDARD OF REVIEW ..................................................................2

III.    THE STATE IS LIKELY TO SUCCEED ON THE MERITS ......................2

        A.     PLAINTIFFS LACK STANDING WITH RESPECT TO
               SEVERAL OF THE CHALLENGED PROVISIONS ........................3

        B.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON
               THEIR CHALLENGE TO THE SENSITIVE-PLACE
               PROVISIONS ..................................................................6

        C.     PLAINTIFFS ARE UNLIKELY TO SUCCEED ON
               THEIR CHALLENGE TO THE DEFAULT RULE .........................15

IV.     IRREPARABLE INJURY ...................................................................17

V.      A STAY IS IN THE PUBLIC INTEREST .................................................17

VI.     ANY INJUNCTIVE RELIEF SHOULD BE NARROWED
        PENDING APPEAL...........................................................................18

VII.    IF THIS COURT DENIES A STAY PENDING APPEAL, IT
        SHOULD GRANT AN ADMINISTRATIVE STAY PENDING
        A MOTION FOR STAY PENDING APPEAL FILED IN THE
        NINTH CIRCUIT ............................................................................18

VIII.   CONCLUSION.................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Perez,*
  138 S. Ct. 2305 (2018) ........................................................................16

*Al Otro Lado v. Wolf*,
  945 F.3d 1223 (9th Cir. 2019) ...........................................................18

*Antonyuk v. Hochul*,
  1:22-cv-0986 (GTS/CFH), 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022) .........8

*Antonyuk v. Hochul*,
  No. 22-2908 (2d Cir. Dec. 7, 2022) ....................................................1

*Anyonyuk v. Nigrelli*,
  No. 22A557 (U.S. Jan. 11, 2023)..........................................................1

*Bonidy v. U.S. Postal Serv.*,
  790 F.3d 1121 (10th Cir. 2015) ...........................................................9

*California Rifle & Pistol Ass'n, Inc. v. City of Glendale*,
  No. 2:22-cv-07346-SB-JC, 2022 WL 18142541 (C.D. Cal. Dec. 5, 2022)..........9

*Carney v. Adams*,
  141 S. Ct. 493 (2020) ..........................................................................3

*Christian v. Nigrelli*,
  No. 22-2987 (2d Cir. Dec. 12, 2022) ...................................................1

*Duncan v. Becerra*,
  No. 17-cv-1017-BEN-JLB, 2019 WL 1510340 (S.D. Cal. Apr. 4, 2019)..........17

*East Bay Sanctuary Covenant v. Barr*,
  934 F.3d 1026 (9th Cir. 2019) ...........................................................18

*Frey v. Nigrelli*,
  No. 21-cv-05334 (NSR), 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023) .............5

*GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ...........................................................8

*Koons v. Att'y Gen.*,
  No. 23-1900 (3d Cir. June 20, 2023) ....................................................................1

*Koons v. Platkin*,
  No. 22-7464 (RMB/AMD), 2023 WL 3478604
  (D.N.J. May 16, 2023) ............................................................................... 6, 8, 10

*LA All. for Hum. Rts. v. County of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021) ...............................................................................3

*Lopez v. Candaele*,
  630 F.3d 775, 794 (9th Cir. 2010) .......................................................................5

*Mahoney v. Sessions*,
  871 F.3d 873 (9th Cir. 2017)................................................................................9

*Maryland Shall Issue, Inc. v. Montgomery Cnty.*,
  No. TDC-21-1736, 2023 WL 4373260 (D. Md. July 6, 2023)...........................13

*Maryland v. King*,
  567 U.S. 1301 (2012) .................................................................................. 16, 17

*New York State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ..................................................................... 7, 10, 12, 13

*NOSSK, Inc. v. Fitness Anywhere LLC*,
  No. 21-cv-08914-BLF, 2022 WL 1093662 (N.D. Cal. Apr. 12, 2022)................4

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) ..............................................................................5

*Quinones v. UnitedHealth Grp. Inc.*,
  782 F. App'x 646 (9th Cir. 2019) ........................................................................4

*Quinones v. UnitedHealth Grp. Inc.*,
  No. CV 14-00497 LEK-RLP, 2017 WL 2802721 (D. Haw. June 28, 2017) ........4

*Simon v. Eastern Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)................................................................................................3

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..............................................................................................3

*United States v. Class*,
   930 F.3d 460 (D.C. Cir. 2019) ...............................................................................9

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) (per curiam) .........................................................2

**Statutes**

HRS § 134-E ...............................................................................................................6

**Rules**

LR7.2............................................................................................................................4

**Other Authorities**

Daniel J. Elazar, *Banking and Federalism in the Early American
   Republic*, 28 Huntington Libr. Q. 301 (1965)......................................................11

Lev Menand, *Why Supervise Banks? The Foundations of the American
   Monetary Settlement*, 74 Vand. L. Rev. 951 (2021)............................................12

## MEMORANDUM IN SUPPORT OF MOTION

## I.     INTRODUCTION

The Hawaiʻi Attorney General ("Attorney General" or "the State") respectfully requests that this Court stay its Order dated August 8, 2023, enjoining the State from enforcing HRS §§ 134-A(a)(1), (4), (9), (12), and 134-E (ECF No. 66). Specifically, the State requests that the Court stay its Order pending appeal of the Order to the Ninth Circuit. In the alternative, the State respectfully requests that the Court enter a temporary administratively stay of its Order to give the State the opportunity to seek appellate relief on an expedited basis in the Ninth Circuit.

As explained below, a stay is warranted because the State is likely to succeed on the merits; it is irreparably harmed by its inability to enforce duly enacted laws; the issuance of a stay will not injure Plaintiffs; and a stay is in the public interest. Notably, the Second and Third Circuits have recently stayed district court orders enjoining similar laws pertaining to sensitive places. *See Antonyuk v. Hochul*, No. 22-2908 (2d Cir. Dec. 7, 2022) (staying district court order), *application to vacate stay denied sub nom. Anyonyuk v. Nigrelli*, No. 22A557 (U.S. Jan. 11, 2023); *Christian v. Nigrelli*, No. 22-2987 (2d Cir. Dec. 12, 2022); *Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023) (staying order in part). This Court should do the same, and allow appellate review to proceed in an orderly fashion.

1

## II.      STANDARD OF REVIEW

Courts consider four factors when deciding whether to grant a stay of a temporary restraining order:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (per curiam) (internal quotation marks and citation omitted).  The State has satisfied each of these factors.

## III.      THE STATE IS LIKELY TO SUCCEED ON THE MERITS

As explained in its Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order (ECF No. 55) (Opposition), the State is likely to succeed on the merits for several reasons.  *First*, Plaintiffs did not demonstrate standing in their Motion with respect to HRS §§ 134-A(a)(4), (12), and 134-E. Even if the declarations submitted with Plaintiffs' reply brief (ECF Nos. 61-3, 61-3, 61-5) are considered, and they should not be, Plaintiffs have not shown standing with respect to HRS §§ 134-A(a)(12) and 134-E.  *Second*, Plaintiffs are unlikely to succeed on their challenges to any of the sensitive-place provisions in Act 52. They have failed to show that their proposed course of conduct is covered by the plain text of the Second Amendment, and in any event the State has demonstrated

that the challenged restrictions are consistent with the Nation's historical tradition of firearms regulation. *Third*, and for similar reasons, Plaintiffs are unlikely to succeed on their challenge to the private property default rule.

### A.   PLAINTIFFS LACK STANDING WITH RESPECT TO SEVERAL OF THE CHALLENGED PROVISIONS

To establish standing, Plaintiffs must show an "injury in fact" that is "fairly traceable to the challenged conduct" and is "likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (internal quotation marks and citations omitted). Plaintiffs bear the burden of establishing these elements, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), and on a motion for a temporary restraining order, Plaintiffs "must make a clear showing of each element of standing," *LA All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (internal quotation marks and citations omitted).

Here, Plaintiffs have not shown with respect to several of the challenged provisions that their alleged injuries "fairly can be traced to the challenged action of the defendant," as opposed to "the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976). With respect to HRS § 134-A(a)(12), Plaintiffs have provided no allegations or evidence that any financial institution has authorized (or would authorize) carrying firearms on its premises. As a result, any injury Plaintiffs suffer from being unable to carry firearms in financial institutions is caused not by

3

any action of the State, but by financial institutions' decisions to exclude them—decisions that Plaintiffs acknowledge are permissible.[1]  *See* ECF No. 7-1 at 16 ("Plaintiffs here do not challenge that right of a private property owner.").

Likewise, with respect to HRS § 134-E, any injury Plaintiffs claim to suffer from not being allowed to carry firearms on private property without the owner's consent is caused by the owner's choice to withhold that consent.  The Act changes nothing about the rights of private owners to control their property: other than those places designated as sensitive in § 134-A, business owners who wish to allow firearms on their property may do so.  For similar reasons, a favorable

---

[1] When they filed their Motion, Plaintiffs failed to provide allegations or evidence that any restaurants serving alcohol had authorized or would authorize them to carry firearms on their premises.  For the first time with their Reply, Plaintiffs submitted declarations from such restaurants, along with supplemental declarations from Plaintiffs stating that they intended to visit these restaurants.  *See* ECF Nos. 61-4, 61-5.  That evidence and argument should not have been considered.  *See Quinones v. UnitedHealth Grp. Inc.*, No. CV 14-00497 LEK-RLP, 2017 WL 2802721, at *3 (D. Haw. June 28, 2017) ("Plaintiff may not raise new arguments in his Reply."), *aff'd*, 782 F. App'x 646 (9th Cir. 2019); LR7.2 ("Any argument raised for the first time in the reply shall be disregarded."); *NOSSK, Inc. v. Fitness Anywhere LLC*, No. 21-cv-08914-BLF, 2022 WL 1093662, at *8 n.2 (N.D. Cal. Apr. 12, 2022) ("Since [exhibits] constitute[d] new evidence introduced for the first time on reply that [Defendant] did not have an opportunity to respond to, the Court declines to consider these exhibits in support of [Plaintiff's] motion for preliminary injunction.").

decision from this Court with respect to HRS § 134-E cannot redress Plaintiffs'

claimed injuries.[2]

This Court erred in concluding that Plaintiffs had standing to bring each of

their challenges.[3]  The Court (at 26) relied on *O'Handley v. Weber*, 62 F.4th 1145

(9th Cir. 2023), in which the Ninth Circuit held that censorship of a Twitter user's

speech was fairly traceable to the actions of a government official who had flagged

the speech for Twitter's removal from the platform.  *See id.* at 1161-62.  But

*O'Handley* is distinguishable.  The plaintiff there alleged that Twitter had taken his

posts down at the request of the government official.  *See id.* at 1154.  Here, by

contrast, Plaintiffs do not allege that financial institutions or owners of non-

---

[2] Moreover, because Plaintiffs "fail[] to provide any statement . . . indicating that
[they] will not seek permission before carrying [on] private property," or even
allege that having to seek consent would be burdensome, they "fail[] to establish
injury-in-fact[.]"  *Frey v. Nigrelli*, No. 21-cv-05334 (NSR), 2023 WL 2473375, at
*9 (S.D.N.Y. Mar. 13, 2023).  Courts should "[t]ak[e] the record and [Plaintiffs']
arguments as [they] find them," "not manufacture arguments for [a party]," *Lopez
v. Candaele*, 630 F.3d 775, 794 (9th Cir. 2010), by implying arguments that
Plaintiffs do not make themselves.  *See* ECF No. 66 at 30.

[3]  Plaintiffs lack standing to challenge HRS § 134-A(a)(1).  As this Court
acknowledged, their challenge is "much narrower than initially raised in the TRO
motion," and is limited only to the two parking areas listed in their complaint and
"similar" areas, ECF No. 66 at 34-35, which the State explained at the TRO
hearing were not covered by HRS § 134-A(a)(1).  Plaintiffs therefore have not
shown "an intention to engage in a course of conduct . . . proscribed by a statute,"
nor a "realistic danger of sustaining a direct injury as a result of the statute's
operation or enforcement."  *Lopez*, 630 F.3d at 785 (citations omitted).

sensitive private property have chosen to prohibit them from carrying firearms
because of any request by the State.[4]

For the first time with their Reply brief, Plaintiffs submitted declarations
from business owners who claim that they would allow Plaintiffs to carry firearms
on their property in the absence of the default rule (ECF No. 61-3).  These
declarations are unavailing.  Each business owner has declared that: "If H.R.S.
§ 134-E were repealed or enjoined or otherwise no longer in effect, I would allow
members of the public who have concealed carry permits, *including the Plaintiffs*
in this case, to carry in my business and on my property."  *E.g.*, ECF No. 61-3 at 3
(emphasis added).  But HRS § 134-E simply requires that property owners "give[]
express authorization to carry a firearm"—which these business owners have now
provided through their declarations.

## B.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR CHALLENGE TO THE SENSITIVE-PLACE PROVISIONS

Even if Plaintiffs had standing, they would be unlikely to succeed on the
merits of their Second Amendment challenge to HRS §§ 134-A(a)(4),[5] (9), and

---

[4] In concluding that Plaintiffs have standing, this Court (at 28 n.8) also relied on
the district court's decision in *Koons v. Platkin*, No. 22-7464 (RMB/AMD), 2023
WL 3478604 (D.N.J. May 16, 2023). But the relevant portion of *Koons* has been
stayed by the Third Circuit pending appeal, meaning that the court has determined
that the plaintiffs there are unlikely to succeed on the merits of their claim.

[5]  The Court enjoined "the entirety of [§] 134-A(a)(4)," ECF No. 66 at 91, even
though Plaintiffs sought an injunction of that provision only "to the extent it bans
the carry of handguns in *restaurants* and their parking lots," ECF No. 7 at 2

(12).[6]  As the State explained in its Opposition, Plaintiffs have failed to show that the plain text of the Second Amendment covers the specific course of conduct in which they wish to engage. And in any event, the State has satisfied its burden under *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), of demonstrating that each of the challenged regulations is consistent with the Nation's historical tradition of firearms regulation.

The State incorporates by reference each argument made in its Opposition, and it will not repeat all of them here.  A few aspects of this Court's Order warrant discussion, however, as they bear on the State's likelihood of success.

First, the Court erred in concluding that "[t]he Second Amendment's plain text . . . naturally encompasses places that are generally held open to the public." ECF No. 66 at 41.  Even if the "definition of 'bear' naturally encompasses public carry," *id.* (quoting *Bruen*, 142 S. Ct. at 2134), and even if "it follows that there is nothing in the Second Amendment's plain text that makes a distinction between

---

(emphasis added); *see* ECF No. 7-1 at 21-22; ECF No. 61 at 11-12.  Enjoining enforcement of HRS § 134-A(a)(4) as to bars is unwarranted because that Plaintiffs did not seek that relief.

[6]  This Court also enjoined HRS § 134-A(a)(1) as to "parking areas owned, leased, or used by the State or a county which share the parking area with non-governmental entities, are not reserved for State or county employees, or do not exclusively serve the State or county building[.]"  ECF No. 66 at 91.  Issuing a TRO with respect to that provision is unwarranted because the State *disclaimed* Plaintiffs' incorrect interpretation of HRS § 134-A(a)(1) as regulating such parking lots.

public places," *id.*, nothing in the Second Amendment's plain text extends the scope of the right from public to private property.  As explained in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), which the State discussed in its Opposition (at 18-19), the scope of the Second Amendment right was understood at the Founding to be circumscribed by the rights of private property owners.  This Court reached a contrary conclusion by relying, in part (at 44-45), on recent district court decisions in *Antonyuk v. Hochul*, 1:22-cv-0986 (GTS/CFH), 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022), and *Koons v. Platkin*, No. 22-7464 (RMB/AMD), 2023 WL 3478604 (D.N.J. May 16, 2023).  But these decisions have been stayed pending appeal by the Second Circuit (stayed in full) and Third Circuit (stayed in part, as to most of the sensitive places at issue), meaning that those courts have determined that the plaintiffs are unlikely to succeed.  *See supra* n.4.  Furthermore, this Court acknowledged (at 45) that there is no Second Amendment right to carry on private property open to the public where permission has been revoked, meaning that sensitive-place restrictions can be constitutionally applied where a business owner has prohibited the carrying of firearms.  *See GeorgiaCarry.Org*, 687 F.3d at 1260-61 (rejecting facial challenge to prohibition on carrying firearms in houses of worship because ban could be

8

constitutionally applied where place of worship prohibited carrying firearms).[7]  At

a minimum, then, Plaintiffs' facial challenge to Act 52's sensitive-place provisions

fails because Plaintiffs have failed to show that the Act "is unconstitutional in all

its applications."  *California Rifle & Pistol Ass'n, Inc. v. City of Glendale*, No.

2:22-cv-07346-SB-JC, 2022 WL 18142541, at *6 (C.D. Cal. Dec. 5, 2022)

(cleaned up; citation omitted).

Relatedly, this Court erred in holding (at 54-56) that the Second

Amendment's plain text presumptively protects the right to carry on government

property when the government is acting as a proprietor.  As the State explained in

its Opposition (at 11 & n.17), "the government—like private property owners—has

the power to regulate conduct on its property."  *See United States v. Class*, 930

F.3d 460, 464 (D.C. Cir. 2019); *see also Bonidy v. U.S. Postal Serv.*, 790 F.3d

1121, 1126-27 (10th Cir. 2015) ("The government often has more flexibility to

regulate when it is acting as a proprietor . . . ."), *quoted with approval in Mahoney

v. Sessions*, 871 F.3d 873, 880 (9th Cir. 2017).  That power is not unlimited, but it

does exist, and this Court erred in concluding (at 55-56) that the government's role

as proprietor "in a post-*Bruen* world makes no difference" and "has no place under

---

[7] As discussed below, the Court's acknowledgement that there is no right to carry
on private property without permission also implies that HRS § 134-E is
constitutional because it does not burden conduct protected by the Second
Amendment's plain text.

the first step of the *Bruen* analysis." Indeed, *Class* was decided at the first step of

the then-governing Second Amendment test, which *Bruen* endorsed as "broadly

consistent with *Heller*." 142 S. Ct. at 2127. And the only post-*Bruen* decision of

which the State is aware that adopts a similar position to this Court is *Koons*, 2023

WL 3478604, at *51-54, which has been stayed in relevant part pending appeal by

the Third Circuit. *See supra* n.4.

Properly understood, the plain text of the Second Amendment does not

cover any of the conduct regulated by HRS §§ 134-A(a)(1), (4), (9), and (12). But

even if it did, the State amply demonstrated that each of these provisions is

consistent with the Nation's historical tradition of firearms regulation. Only by

incorrectly discounting the historical evidence proffered by the State did this Court

reach a contrary conclusion. The State will not attempt in this Motion to defend

each of the historical analogues that it identified in its Opposition, but it will

discuss several errors in this Court's application of the *Bruen* standard.

First, despite acknowledging that "[a]nalogical reasoning requires only that

the government identify a well-established and representative *analogue*, not a

historical *twin*," ECF No. 66 at 22 (quoting *Bruen*, 142 S. Ct. at 2133), this Court

essentially required the State to find a "dead ringer," *Bruen*, 142 S. Ct. at 2133, for

each of the challenged provisions. With respect to HRS § 134-A(a)(4), for

example, the Court deemed irrelevant 1700s-era laws that prohibited not just

selling alcohol *to* militia members, but also selling alcohol *near* militia members. The Court stated (at 47) that these laws were "unpersuasive in finding that there was a national historical tradition of prohibiting members of the public—rather than members of the militia—from public carrying in places serving alcohol," but there is no reason to believe that trained militia members would pose greater risks in proximity to alcohol than other members of the public.

Likewise, with respect to HRS § 134-A(a)(12), the Court discounted centuries of prohibitions on firearms in commercial centers. The Court reasoned (at 72-73) that financial institutions are not like historical commercial centers because they are not as congested as some of those centers, but congestion is not the only relevant point of similarity. As Professor Saul Cornell explained in his declaration supporting the State's opposition, "bans on arms in fairs and markets singled out these locations because they were sites of commerce, entertainment, and politics. Indeed, it was the very fact that individuals congregated in large numbers *and moved about freely, engaging in productive economic, cultural, and political activities* that was the reason arms were prohibited from these locations." Cornell Decl. ¶ 42.[8]

---

[8] The State notes, moreover, that although banks have existed since the Founding, they were understood at that time to be government instrumentalities. *See, e.g.*, Daniel J. Elazar, *Banking and Federalism in the Early American Republic*, 28 Huntington Libr. Q. 301, 303-04 (1965) ("the great majority of American banks" in the early Republic "were either state-owned joint stock companies in which the

Second, the Court artificially constrained the universe of historical

analogues on which the State was permitted to rely, in a manner that made it

impossible for the State to satisfy its burden under *Bruen*'s second step.  With

respect to HRS § 134-A(a)(4), for example, the Court disregarded (at 49-51) three

regulations that can appropriately be described as "historical twins," on the ground

that these regulations were enacted by a city and two territories, and this Court

understood *Bruen* "to dismiss any law enacted unless it was done in a state where a

significant percentage of the people . . . resided at the time that the Fourteenth

Amendment was enacted."  ECF No. 66 at 51.  Likewise, in the context of HRS

§ 134-A(a)(9), the Court dismissed local ordinances banning firearms in the

Nation's first modern parks because those jurisdictions covered "only about 4% of

this Nation,"[9] and because some ordinances were passed "from 1872 through

1886," which the Court deemed too late to shed light on the meaning of the

_____

state was a major shareholder or were controlled by the state through special
charter provisions," and "[t]he Bank of the United States was controlled in this
same manner by the federal government"); Lev Menand, *Why Supervise Banks?
The Foundations of the American Monetary Settlement*, 74 Vand. L. Rev. 951, 983
(2021) (the Bank of the United States (founded in 1791), the Bank of New York
(1784), and Massachusetts Bank (1784) were "parastatal monopolies, part-owned
by the government").  Thus, government buildings—described as a presumptively
"settled" sensitive location in *Bruen*—supply the relevant analogue.  *See* 142 S. Ct.
at 2133.

[9] The source cited by the Court (at 62 n.17) indicates that New York and
Pennsylvania had 21.6% of the Nation's population.

Fourteenth Amendment.  ECF No. 66 at 61-62.  *But see id.* at 66 n.20 (treating an 1870 enactment as "'during' the Fourteenth Amendment's ratification for the sake of argument.").[10]  The Court erred in relying on population estimates and in limiting the universe of permissible analogues to pre-1868 (or perhaps pre-1870) state laws.  It is true that *Bruen* rejected New York's reliance on territorial laws where those laws "contradict[ed] the overwhelming weight of other, more contemporaneous historical evidence," 142 S. Ct. at 2155 (cleaned up; citation omitted), and the Court noted, as a rhetorical point, that the territorial laws at issue "governed less than 1% of the American population," *id.*, but the Court did not thereby instruct judges to calculate percentages in order to determine whether historical laws were representative or well established.  And in this case, unlike in *Bruen*, there is no "contemporaneous historical evidence" that contradicts the laws the State has proffered.[11]

Finally, this Court erred in its description of the role that analogy plays in the *Bruen* analysis.  In its discussion of HRS § 134-A(a)(9), for example, the Court

---

[10] The Court discounted *Maryland Shall Issue, Inc. v. Montgomery Cnty.*, No. TDC-21-1736, 2023 WL 4373260 (D. Md. July 6, 2023), for relying on "only one local ordinance" and "only one state law" enacted before or during ratification of the Fourteenth Amendment.  ECF No. 66 at 66.  But *Maryland Shall Issue* also discussed an 1831 New Orleans ordinance, an 1852 New Mexico law, an 1870 Tennessee law, and an 1870 Texas law.  *See* 2023 WL 4373260, at *11.

[11] Understood in this way, the State maintains that the relevant passages in *Bruen* are less "confounding" than this Court suggested.  *See* ECF No. 66 at 51.

acknowledged that "children and families congregate at beaches and parks in Hawai'i; beaches and parks are integral and highly valued in Hawaiian culture; and beaches and parks are critical components of Hawaii's economy," but the Court reasoned that "these considerations by themselves do not matter under the *Bruen* analysis." ECF No. 66 at 56. The Court also concluded that "[t]he record is absent of analogies to historical 'sensitive places' for parks and beaches." *Id.* at 57. This is incorrect. As discussed above (and in its Opposition), the State *did* identify historical analogues (indeed, historical twins) for prohibitions on firearms in parks and beaches. But even if no such analogues existed, the State could look to the sensitive places identified in *Heller* and *Bruen* and justify HRS § 134-A(a)(9) as analogous to *those* places. Contrary to this Court's reasoning, it *does* "matter under the *Bruen* analysis" that "children and families congregate at beaches and parks in Hawai'i," because that makes beaches and parks analogous to schools, which are concededly sensitive. *Id*. at 56. *See* Thielen Decl. ¶ 6, ECF No. 55-33 (describing extensive use of Honolulu parks by children and for educational programs). Indeed, this Court recognized in its discussion of banks that "[p]olicy concerns might be relevant insofar as they help the government identify a well-established and representative historical analogue to the regulation at issue." ECF No. 66 at 69 (internal quotation marks and citation omitted).

14

## C. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR CHALLENGE TO THE DEFAULT RULE

For similar reasons, Plaintiffs—in addition to lacking standing—are unlikely to succeed on the merits of their Second Amendment challenge to HRS § 134-E.[12] As noted above, this Court acknowledged that "where a business revokes a licensee or invitee's permission to enter the business's property, the business is no longer a public place to that licensee or invitee," and "[t]he licensee or invitee's conduct would not be covered by the Second Amendment's plain text in such a scenario." ECF No. 66 at 45. Likewise, the Court explained that even for private property presumptively held open to the public, "[t]hat presumption can change, for instance, if an owner of the private property rescinds a general license or invitation to enter the property: such as limiting entrance to members or prohibiting certain attire." *Id.* at 76. It follows from these premises that when a private property owner withholds consent for individuals to carry firearms on his property, the Second Amendment's plain text does not cover the right to carry firearms on his property. Because all that HRS § 134-E does is prohibit individuals from carrying firearms on private property without consent, it does not burden conduct that is covered by the Second Amendment's plain text.

---

[12] Plaintiffs' compelled speech argument also fails, as this Court recognized. *See* ECF No. 66 at 81-82.

15

Even if the plain text of the Second Amendment did protect the right to carry firearms on private property without consent, the State has put forth more than enough historical analogues to justify HRS § 134-E.  This Court rejected all but one of those analogues on the ground that they "concerned private property like residential lands, which were not generally held open to the public."  ECF No. 66 at 79.  But the Court cited no evidence for that conclusion, aside from three entries in two twenty-first-century dictionaries.  *See id.*  In any event, as above, this Court erred by requiring the State to identify a "historical twin," as historical laws requiring permission to carry firearms on private property are clearly analogous to HRS § 134-E, regardless of whether those historical laws dealt with "enclosed" lands, "plantations," or other kinds of property.

## IV.   IRREPARABLE INJURY

The State "suffers . . . irreparable injury" whenever it is barred "from effectuating statutes enacted by representatives of its people."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State[.]").  After careful consideration of the Second Amendment's limits and the State's safety needs, the Legislature enacted a law protecting sensitive places where people are particularly susceptible to the risks of gun violence.  And the Legislature honored

16

private property rights by establishing that individuals cannot carry firearms onto private property without the owner's consent. This Court's Order prevents the democratic branches from exercising their judgment regarding how best to keep residents safe while respecting their rights. And the harm is especially profound here, in light of the "law enforcement and public safety interests" implicated by firearms and gun violence. *King*, 567 U.S. at 1303. By allowing loaded guns in places that serve alcohol, as well as banks, parks, and beaches, an injunction against the enforcement of Act 52 threatens public safety.

## V.   A STAY IS IN THE PUBLIC INTEREST

The public interest favors staying the Order. "There is an immeasurable societal benefit of maintaining the immediate status quo while the process of judicial review takes place." *Duncan v. Becerra*, No. 17-cv-1017-BEN-JLB, 2019 WL 1510340, at *2 (S.D. Cal. Apr. 4, 2019). Here, the immediate status quo is one in which the State retains its ability to enforce the challenged provisions, which were effective for over a month prior to this Court's Order. As set forth in the Opposition, the public interest favors enforcement of Act 52, not enjoining it.

As both the Second and Third Circuits recently found in similar challenges to similar laws, a stay pending appeal is warranted.

17

## VI.   ANY INJUNCTIVE RELIEF SHOULD BE NARROWED PENDING APPEAL

Although the Court's Order should be stayed in its entirety, at a minimum it should be narrowed to apply only to Plaintiffs.  "[I]njunctive relief must be tailored to remedy the specific harm alleged." *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (cleaned up; citation omitted).  Furthermore, as noted above and in the State's Opposition, Plaintiffs have failed to demonstrate that they are entitled to facial relief on any of their claims.

## VII.   IF THIS COURT DENIES A STAY PENDING APPEAL, IT SHOULD GRANT AN ADMINISTRATIVE STAY PENDING A MOTION FOR STAY PENDING APPEAL FILED IN THE NINTH CIRCUIT

If this Court denies a stay pending appeal, the State requests that the Court issue an administrative stay of its Order while the Ninth Circuit considers whether to grant a stay pending appeal.  Under Ninth Circuit law, an administrative or temporary stay is "intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits[.]" *Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019).  Granting an administrative or temporary stay while the State's motion for stay pending appeal is before the Ninth Circuit would maintain the status quo in this case and minimize disruption and confusion.

18

## VIII. CONCLUSION

For these reasons, the State respectfully requests that this Court stay its

Order pending appeal to the Ninth Circuit, or, in the alternative, enter a temporary

administrative stay to permit application to the Court of Appeals for a stay pending

appeal on an expedited basis.

DATED: Honolulu, Hawaiʻi, August 11, 2023.

*/s/ Ben Gifford*
_____

KALIKOʻONĀLANI D. FERNANDES
  Solicitor General
NICHOLAS M. MCLEAN
  First Deputy Solicitor General

NEAL K. KATYAL*
MARY B. MCCORD*
BEN GIFFORD*
RUPA BHATTACHARYYA*
DANA A. RAPHAEL*
  Special Deputy Attorneys General

*\* Pro Hac Vice*

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as the Attorney
General of the State of Hawaiʻi

19