Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| JASON WOLFORD, ALISON WOLFORD, ATOM KASPRZYCKI, HAWAII FIREARMS COALITION, | Civil No. 1:23-cv-00265-LEK-WRP |
| Plaintiffs, | OPPOSITION TO MOTION FOR STAY PENDING APPEAL AND, IN THE ALTERNATIVE, TEMPORARY ADMINISTRATIVE STAY; CERTIFICATE OF SERVICE |
| vs. | |
| ANNE E. LOPEZ, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF HAWAII, | |
| Defendant. | |

## <u>OPPOSITION TO MOTION FOR STAY PENDING APPEAL AND, IN THE ALTERNATIVE, TEMPORARY ADMINISTRATIVE STAY</u>

**<u>Contents</u>**

I.      **Introduction**.................................................................................1

II.     **The State Has Not Shown a Likelihood of Success on the Merits** ..........2

III.    **Standing**....................................................................................3

IV.    **This Court Did Not Abuse Its Discretion In Reviewing the Business Declarations**..............................................................................4

V.     **The State Has Not Shown a Strong Showing of Success on the Merits**..8

VI.    **The Second Amendment Presumptively Protects Plaintiffs' Conduct**.10

VII.   **Default Rule**............................................................................14

VIII.  **Proprietorship**........................................................................16

IX.    **Parks and Beaches**..................................................................17

X.     **Restaurants and Bars that Serve Alcohol**..................................18

XI.    **Banks**.....................................................................................19

XII.   **Parking Lot Interpretation**......................................................21

XIII.  **This Court Should Not Narrow the Scope of the Injunction** ...............22

XIV.  **Irreparable Harm**...................................................................23

XV.   **Public Interest/Balance of Equities**...........................................25

i

**XVI.   This Court Should Not Grant an Administrative Stay** .........................25

**XVII.  Conclusion** ................................................................................25

## Table of Authorities

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020) .................................................... 1

*Alaska v. Federal Subsistence Bd*., 544 F.3d 1089 (9th Cir. 2008) .......................... 21

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987) ....................................................... 22

*Christian v. Nigrelli*, No. 1:22-cv-695, 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022) ............................................................................................................................... 15

*Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ........................ 6

*Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 110 S. Ct. 2447 (1990) ................ 5

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................... 11, 12, 14

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) ................. 3, 23

*Espinoza v. Mont. Dep't of Rev.,* 140 S. Ct. 2246 (2020) ......................................... 13

*Frey v. Nigrelli*, No. 21-cv-05334 (NSR), 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023) ............................................................................................................................... 7

*Gamble v. United States*, 139 S. Ct. 1960 (2019) ..................................................... 13

*GE v. Joiner*, 522 U.S. 136, 118 S. Ct. 512 (1997) .................................................... 5

*Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974) ............................................. 1

*Hardaway v. Nigrelli*, No. 22-cv-771, 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) ............................................................................................................................ 9, 10

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) ……. 17

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ..................................................................22

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009)................................25

*Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023) .....................................14

*Koons v. Platkin*, No. 22-7464 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235

(D.N.J. May 16, 2023) .......................................................................................11, 15

*Long Island R. Co. v. International Ass'n of Machinists*, 874 F.2d 901 (2d Cir.

1989) .........................................................................................................................24

*Maya v. Centex Corp.*, 658 F.3d 1060, (9th Cir. 2011) ............................................3

*Milliken v. Bradley*, 433 U.S. 267, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977) ..........22

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).................... passim

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) ..........1, 2

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023)..................................................3

*Pharmacia Corp. v. Alcon Labs*., Inc., 201 F.Supp.2d 335 (D.N.J.2002) ..............24

*Presidio Historical Ass'n. v. Presidio Trust*, 811 F.3d 1154 (9th Cir. 2016) ..........22

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) ..........................................................13

*Regents of the Univ. of Cal. v. United States Dep't of Homeland Sec.*, 908 F.3d 476,

(9th Cir. 2018) .........................................................................................................23

*Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1998)........................24

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013).............................................25

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, (2006) .......4

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ................................................................21

*Teter v. Lopez*, No. 20-15948, 2023 U.S. App. LEXIS 20312 (9th Cir. Aug. 7, 2023) ............................................................................................................... 16, 19

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) ................................................................13

*United States v. Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870 (5th Cir. Aug. 9, 2023) ............................................................................................... 18, 19

*United States v. Kokinda*, 497 U.S. 720 (1990)…………………………………...17

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ........................................................................................................................7

*Virginia v. Moore*, 553 U.S. 164 (2008)................................................................13

*Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190 (D. Haw. Aug. 8, 2023) ............................................................................................7

*Worth v. Harrington,* No. 21-cv-1348, 2023 WL 2745673 (D. Minn. Mar. 31, 2023) ........................................................................................................................13

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021)....................................................22

*Yukutake v. Connors*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 181883 (D. Haw. Sep. 23, 2021)................................................................................................2

*Yukutake v. Connors*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 181883 (D. Haw. Sep. 23, 2021)................................................................................................2

*Yukutake v. Lopez*, No. 22-00323 JAO-KJM, 2023 U.S. Dist. LEXIS 5476 (D. Haw. Jan. 10, 2023) ................................................................................5

## Statutes

H.R.S. § 134-E ................................................................................ 2, 7, 8

H.R.S. § 134-51................................................................................5

H.R.S. § 134-A(a)(1)..........................................................................21

## Other Authorities

1 LAWS OF THE STATE OF NEW JERSEY 36 (Bloomfield ed., 1811) ..............9

1 LAWS OF THE STATE OF NEW YORK 176 (2d ed., Albany: Websters & Skinner 1807)................................................................................9

2 LAWS OF THE STATE OF DELAWARE 984 (Samuel & John Adams, eds., 1797) ................................................................................9

A DIGEST OF THE LAWS OF THE STATE OF GEORGIA, 1800 Ga. Laws 611 (Watkins ed.,1800)........................................................................9

ABRIDGEMENT OF THE PUBLIC PERMANENT LAWS OF VIRGINIA 42 (Davis ed., 1796)................................................................................9

*Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN (Oct. 1, 2022). .......................................................................12

Daniel J. Elazar, *Banking and Federalism in the Early American Republic*, 28
Huntington Libr. Q. 301 (1965)...........................................................................20

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine:*
*Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205,
(2018)...........................................................................................................9

Ian Ayres & Spurthi Jonnalagadda, *Guests with Guns: Public Support for "No*
*Carry" Defaults on Private Land*, 48 J L. MED. & ETHICS 183 (2020)...........16

Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the*
*Critical Period for Historical* .................................................................12

PENNSYLVANIA STATUTES AT LARGE, VOLUME X: 1779-81, 378 (Stanley
Ray ed., 1904)...........................................................................................9

THE PUBLIC LAWS OF THE STATE OF SOUTH CAROLINA 271 (Grimke,
ed. 1790) ...................................................................................................8

VOTES AND PROCEEDINGS OF THE HOUSE OF DELEGATES OF THE
STATE OF MARYLAND:  NOVEMBER SESSION 1791 (Green ed., 1795) ....9

### Constitutional Provisions

U.S. CONST. amend. II……………………………………………………passim

U.S. CONST. amend III……………………………………………...……11

U.S. CONST. amend. IV...........................................................................11

# I.   **Introduction**

Defendant Lopez's ("State" or "Hawaii") motion to stay should be denied. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)). The State has failed to do so. The State cannot suffer harm from an inability to enforce unconstitutional laws.  Even if this were not the case, the State could have requested an expedited briefing and hearing schedule and oppose the PI but has chosen not to. Furthermore, the State has not shown a likelihood of success on appeal. Temporary restraining orders ("TRO") are typically not appealable. The State has not made a showing that an appeal would fall within any exception to this rule.[1]

Even if the Ninth Circuit reaches the merits, the State has not shown that the Ninth Circuit will overturn this Court's well-reasoned opinion. "Because the Defendant has made a weak showing on the first two factors, the third and fourth factors are irrelevant." *Yukutake v. Connors*, No. 19-00578 JMS-RT, 2021 U.S.

---

[1] A TRO "should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing". *Granny Goose Foods, Inc. v. Bd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). Here, this Court properly granted a TRO on a law that had yet to go into effect at the time of the filing of the TRO which only lasts until a preliminary injunction can be heard.

Dist. LEXIS 181883, at *39 (D. Haw. Sep. 23, 2021). However, even if they were relevant, the State simply cannot show that it is in the public interest or equitable to allow it to continue to enforce unconstitutional laws. The State's reliance on the partial stay in the Third Circuit is misplaced, as it omits that the Third Circuit *denied* the stay motion as to a law identical to H.R.S. § 134-e insofar as it restricted carry on private property except with the owner's permission.

In the Ninth Circuit, "Courts consider the following factors when deciding whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Yukutake v. Connors*, No. 19-00578 JMS-RT, 2021 U.S. Dist. LEXIS 181883, at *9 (D. Haw. Sep. 23, 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)) (internal quotation marks omitted)). For the reasons laid out below, the State's motion should be denied.

## II.    <u>The State Has Not Shown a Likelihood of Success on the Merits</u>

In order to satisfy the standard for a motion to stay, a moving party must show a likelihood of success on the merits. Here, the State has not even shown that its proposed appeal will even be heard. "Ordinarily, a TRO is not an

appealable order." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018).  It is true that there is an exception to this rule "where a TRO has the same effect as a preliminary injunction, it is appealable" *Id*. However, here the State has made no argument that this is the case. Thus, the State has not even shown an appeal is procedurally proper.  Therefore, it has failed to show there is a likelihood of success on the merits. Assuming the Ninth Circuit reaches the merits, the State has not made a *strong showing* it will prevail on appeal.

### III.   <u>Standing</u>

Plaintiffs have standing as this Court already found. As that matter was recently addressed in the TRO motion, Plaintiffs will not duplicate those arguments. However, Plaintiffs maintain that they have standing, as this Court found, because the State is prohibiting them from carrying in the various challenged places.  The State claims that this Court's reliance on *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) was misplaced.  However, *O'Handley*'s reasoning is applicable here. "[T]he traceability requirement is less demanding than proximate causation, and thus the "causation chain does not fail solely because there are several links" or because a single third party's actions intervened.  *O'Handley v. Weber*, 62 F.4th 1145, 1161 (9th Cir. 2023) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation and internal

quotation marks omitted)).  Here, Plaintiffs' injury is traceable to the State because it is the entity that maintains a legal regime that makes it illegal to carry a handgun.

As this Court correctly found, there is no need to determine whether individual businesses would allow Plaintiffs to carry if the laws were enjoined. However, even if this were true, it is not necessary for Plaintiffs to provide "allegations or evidence that any financial institution has authorized (or would authorize) carrying firearms on its premises". State's Motion to Stay at 3. As alleged in the Complaint and reply, Kasprzycki owns the portion of the building his business is in. He would like to carry in the parking lot of his business, but he shares the parking lot with a bank. Complaint ¶ 61. Therefore, there can be no dispute that he has a right to challenge the bank restriction. As a tenant in common with the bank with an equal possessory interest in the parking lot, Kasprzycki does not need to seek permission from the bank. "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). Therefore, even under the State's standing theory, Plaintiffs have standing as to banks and other financial institutions. Furthermore, this Court did not abuse its discretion in accepting the business declarations.

**IV.**   **This Court Did Not Abuse Its Discretion In Reviewing the Business Declarations**

"[A]buse of discretion is the proper standard of review of a district court's

evidentiary rulings." *GE v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517 (1997)

That is the standard that will be used to review this Court's decision to review the

business declarations on appeal, should the current appeal be heard.  Under abuse

of discretion review, a trial court's decisions are only overturned by an appellate

court when they are "clearly erroneous". *Cooter & Gell v. Hartmarx Corp*., 496

U.S. 384, 401, 110 S. Ct. 2447, 2458 (1990).  The State has made no argument that

this Court's use of the declarations was clearly erroneous. And they cannot because

the Court properly admitted the declarations into the record. The declarations were

submitted as a direct response to a legal argument raised in Hawaii's opposition to

Plaintiff's TRO motion. This Court and others routinely allow litigants to submit

evidence to rebut newly made argument *See e.g.* "*Yukutake v. Lopez*, No. 22-00323

JAO-KJM, 2023 U.S. Dist. LEXIS 5476, at *20 (D. Haw. Jan. 10, 2023). ("[I]n

response to Defendant's specific argument in reply that Plaintiffs have not put forth

more recent examples of enforcement, Plaintiffs cite two recent examples of

prosecutions under HRS § 134-51's prohibition on billies."). *See also California*

*Rifle & Pistol Ass'n, Inc. v. City of Glendale,* No. 2:22-CV-07346-SB-JC, 2022 WL

18142541, at *3 (C.D. Cal. Dec. 5, 2022) ("Defendants object to these declarations

as evidence improperly raised for the first time in a reply brief. Dkt. No. 26.

Because Defendants challenged Plaintiffs' standing in their opposition, Plaintiffs

were permitted to submit rebuttal evidence in their reply. L.R. 7-10. Defendants' objection is overruled.") Most importantly, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). The State cites an example where a different court may have applied its discretion differently. It does not follow from that that this Court abused its discretion by accepting the business declarations. It was within this Court's discretion to accept the business declaration into the record and the State has not shown how that discretion was applied in a clearly erroneous manner. Thus, the State has not made a strong showing that this Court's decision to accept the business declarations will be overturned on appeal.

The State's remaining standing argument is similarly reviewed on abuse of discretion review. It is unnecessary for Plaintiffs to present evidence that they would not ask for consent to carry in private business in order to have standing. Moreover, even if they did and Plaintiffs had not provided evidence, Plaintiffs would still have standing. That is because the burden of being required to ask for consent is enough of a burden to confer standing to Plaintiffs. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009) ("Requiring a registered voter either to produce photo identification to vote in person or to cast

an absentee or provisional ballot is an injury sufficient for standing."). The court in *Frey v. Nigrelli*, No. 21-cv-05334 (NSR), 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023)'s analysis simply was wrong.  However, even if it was correct, Plaintiffs have alleged sufficient information in their declarations to show that they would not seek consent.  This Court found that "[i]ndividual Plaintiffs' declarations imply that before § 134-E became effective they would not seek explicit permission from those businesses." *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 U.S. Dist. LEXIS 138190, at *31-32 (D. Haw. Aug. 8, 2023).  Thus, this Court made a factual finding that Plaintiffs declarations show that they would not seek consent from a private business owner.  That factual finding is reviewed on abuse of discretion review. That finding is not clearly erroneous.  This is especially true at the preliminary injunction stage. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ("a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); And the State has made no argument that it was.  Thus, the State has not made a strong showing that this Court's standing ruling will be overturned on appeal.

Even the State had made a strong showing, the Declaration of Gregory L. Howeth; very clearly states "I have otherwise not given consent to the public to carry firearms on my property and/or business." *See* No. [61-4]. And Plaintiffs

have all alleged in their supplemental declaration that they would go armed to Mr.

Howeth's shop but for HRS §134-E. *See* Doc. No. [61-4]. Therefore, even if it

were necessary for Plaintiffs to have alleged they would not ask for consent, and it

were found they had not (despite this Court having found they had), Plaintiffs

would still have standing.  Finally, the State claims that the businesses have given

express consent to Plaintiffs in their declarations.  That just isn't true based on a

plain reading of the declarations. This Court was eminently correct in finding that

Plaintiffs have standing as to all the laws challenged.

## V.   <u>The State Has Not Shown a Strong Showing of Success on the Merits</u>

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) the

Supreme Court has endorsed only three sensitive places "where weapons were

altogether prohibited," namely "legislative assemblies, polling places, and

courthouses." *Id* at 2133. The Court stated explicitly that "courts can use analogies

to *those* historical regulations of 'sensitive places' to determine that modern

regulations prohibiting the carry of firearms in new and analogous sensitive places

are constitutionally permissible." *Id.* (emphasis added). The foremost factor that is

the linchpin between these few locations is the long tradition of the government

exclusively providing comprehensive security, *see, e.g.* THE PUBLIC LAWS OF

THE STATE OF SOUTH CAROLINA 271 (Grimke, ed. 1790) ("The said sheriffs

shall by themselves, or their lawful deputies respectively, attend all the courts hereby appointed, or directed to be held, within their respective districts."),[2] because, for example, government officials are "at acute personal risk of being targets of assassination," David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205, 290 (2018); *see also Hardaway v. Nigrelli*, No. 22-cv-771, 2022 WL 16646220, at *14 (W.D.N.Y. Nov. 3, 2022). At the Founding, comprehensive security meant officials who were armed and able to control every point of access. Today, it means security akin to that provided before entering courthouses or the TSA-secured areas of an airport, i.e., armed government guards and metal detectors at a minimum at every point of entry. Security Administration

---

[2] Other examples of Founding Era regulations in these places: VOTES AND PROCEEDINGS OF THE HOUSE OF DELEGATES OF THE STATE OF MARYLAND: NOVEMBER SESSION 1791, at *2 (Green ed., 1795) (appointing sergeant at arms and door-keeper for state legislature); PENNSYLVANIA STATUTES AT LARGE, VOLUME X: 1779-81, 378 (Stanley Ray ed., 1904) ("sergeant-at-arms" and "door-keeper" for legislature); 1 LAWS OF THE STATE OF NEW YORK 176 (2d ed., Albany: Websters & Skinner 1807) (requiring during court "all justices of the peace, coroners, bailiffs, and constables within their respective counties, that they be then and there in their own persons… . And the said respective sheriffs and their officers shall then and there attend in their own proper persons."); ABRIDGEMENT OF THE PUBLIC PERMANENT LAWS OF VIRGINIA 42 (Davis ed., 1796) (court's "serjeant at arms"); A DIGEST OF THE LAWS OF THE STATE OF GEORGIA, 1800 Ga. Laws 611 (Watkins ed.,1800) ("[T]he sheriff of each county or his deputy, is required to attend at such elections, for the purpose of enforcing the orders of the presiding magistrates in preserving good order."); 1 LAWS OF THE STATE OF NEW JERSEY 36 (Bloomfield ed., 1811) (polling places); 2 LAWS OF THE STATE OF DELAWARE 984 (Samuel & John Adams, eds., 1797) (polling places).

(TSA) officers, air marshals, police officers, metal detectors, and luggage scanners all check people and their baggage for weapons and dangerous devices, like explosives."); *Hardaway*, 2022 WL 16646220, at *14 (explaining sensitive places are "typically secured locations"). That the government can prohibit firearms in these sensitive places makes sense. The historic central purpose of the Second Amendment is ensuring Americans can be "armed and ready" for "ordinary self-defense needs." *Bruen*, 142 S. Ct. at 2150. But when the government secures a location and protects Americans, there is less of a need for ordinary, law-abiding Americans to be ready to defend themselves. Governments may bar the carrying of firearms in only "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2138 (emphasis added). The exception cannot become the rule.

## VI.    The Second Amendment Presumptively Protects Plaintiffs' Conduct

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. If the plaintiffs' proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct" and the burden falls on the State to prove its modern restriction is consistent with this Nation's historical tradition of firearm regulation. *Id.* at 2126. In this case, the textual inquiry is straightforward. The Supreme Court has defined all of the Second Amendment's key terms. "The

people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). "Nothing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134—or for that matter, any distinction between locations at all. That makes the Second Amendment unlike other Amendments. *See e.g.,* U.S. CONST. amend. III; U.S. CONST. amend. IV. And it means that any locational restrictions on Second Amendment rights must come from history, not from the plain text.

The Supreme Court's binding determination of the meaning of these words and phrases definitively resolves the question of whether Plaintiffs' proposed conduct is presumptively protected by the Second Amendment. Plaintiffs and their members are Americans who seek to carry bearable arms for self-defense. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. "The right to armed self-defense follows the individual everywhere he or she lawfully goes." *Koons v. Platkin*, No. 22-7464 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235, at *128 (D.N.J. May 16, 2023). Accordingly, "the burden falls on [the State] to show that [the challenged ban] is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2135. The State is simply wrong in arguing none of the

11

provisions of SB 1230 burden the Second Amendment. And as the submitted map
of Maui County demonstrates, SB 1230 bans carry in roughly 96.4% of the
publicly accessible land in Maui County. *See* Doc. No [61-2]. While that figure
includes parts of SB 1230 that are not challenged in this lawsuit, it is doubtful that
the State would concede any of SB 1230 burdens Second Amendment conduct.  It
simply can't be that the Second Amendment right extends outside the home and
virtually all the publicly accessible land is excluded and that still does not burden
Second Amendment conduct. First, the relevant time period for the historical
analogue must be the Founding, centering on 1791. *Bruen*, 142 S. Ct. at 2135–36;
*see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen
World, the Critical Period for Historical Analogues Is when the Second
Amendment Was Ratified in 1791, and not 1868*, SSRN (Oct. 1, 2022),
https://bit.ly/3CMSKjw.[3] That is because "'[c]onstitutional rights are enshrined
with the scope they were understood to have when the people adopted them.'"
*Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–35). Although the Court
in *Bruen* noted an academic debate surrounding whether courts should look to
1868 and Reconstruction (when the Fourteenth Amendment was adopted), the

---

[3] As Smith explains, *"*[n]o Supreme Court case has ever looked to 1868 as
the principal period for determining the meaning of an individual right in the Bill
of Rights. If periods after 1791 are consulted at all, it is *only* to confirm that
subsequent authorities remained *consistent with the public understanding in 1791*".

Court found no need to address the point as the result with respect to carry was the same. *Id.* at 2138 ("[T]he public understanding of the right to keep and bear arms in both 1791 and 1868 was, *for all relevant purposes*, the same with respect to public carry." (emphasis added)). But the analysis of the Court was focused on 1791. *See Worth v. Harrington,* No. 21-cv-1348, 2023 WL 2745673, at *11 (D. Minn. Mar. 31, 2023) (noting the "rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters"). The emphasis on Founding era evidence is fully in accord with past Supreme Court precedent. For example, in *Espinoza v. Mont. Dep't of Rev.*, the Court held that "more than 30" provisions of state law enacted "in the second half of the 19th  Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding era practice. 140 S. Ct. 2246, 2258–59 (2020); *see also Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020); *Timbs v. Indiana*, 139 S. Ct. 682, 687–88 (2019); *Gamble v. United States*, 139 S. Ct. 1960, 1975–76 (2019); *Virginia v. Moore*, 553 U.S. 164, 168 (2008). Second, historical analogues must be "well-established" and "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of

13

the population or only persist for a few years are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155. *Bruen* categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are *most unlikely* to reflect 'the origins and continuing significance of the Second Amendment'" *Id.* at 2154 (quoting *Heller*, 554 U.S. at 614) (emphasis added). Third, the historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Id.* at 2132. Therefore, this Court did not artificially constrain its analysis despite what the State argues. Rather it faithfully followed *Bruen* and properly enjoined the laws at issue in this case.

## VII.   Default Rule

The State's reliance on the Third Circuit's stay order is deeply flawed. The Third Circuit expressly did not enjoin New Jersey's Default Rule. *See Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023). Thus, the Third Circuit's opinion supports this Court *not* staying the TRO at least as to the Default Rule. And Hawaii otherwise simply has not made a strong showing that it shall prevail on appeal. Plaintiffs are not challenging property owners' right to exclude firearms owners, so the State's rhetoric regarding the solicitude of the right to exclude is wholly beside the point. What is at issue is whether the *State* can change the historical

presumption that people can carry firearms on private property open to the public. The answer is no because history is entirely on Plaintiffs' side. The Anti-Carry Default is the *exact opposite* of this Nation's traditional regulatory approach, which has entrusted "private property owners" with principal responsibility to exercise the "right to exclude others from their property" throughout American history. *Christian v. Nigrelli*, No. 1:22-cv-695, 2022 WL 17100631, at *9 (W.D.N.Y. Nov. 22, 2022). The historical default rule has been that "carrying on private property" is "generally permitted absent *the owner*'s prohibition." *Id.* (emphasis added). This concept is basic to the law of trespass. "[T]he well-developed concept of implied license, which operates to grant permission to enter another's premises according to custom or other indicia of consent" creates a presumption that people can carry on private property. *Koons v. Platkin*, No. 22-7464 (RMB/AMD), 2023 U.S. Dist. LEXIS 85235, at *181 (D.N.J. May 16, 2023) Accordingly, the traditional rule has been that, unless the owner affirmatively "withdraw[s] consent," the right to carry for self-defense thus extends to private property open to the public. *Id*. at 128.

Even the academic proponents behind the Anti-Carry Default have conceded that it is a novel and significant departure from this Nation's history of firearm regulation. In their book expanding on anti-carry default rules, the proponents stated that "[a]n implied condition of every invitation [onto another's property] is that the invitee is welcome to bring a firearm." *Id*. at 124 n.35. In fact, as of 2020,

"*no state* ha[d] adopted generalized 'no carry' defaults for retail establishments."

Ian Ayres & Spurthi Jonnalagadda, *Guests with Guns: Public Support for "No*

*Carry" Defaults on Private Land*, 48 J L. MED. & ETHICS 183 (2020) (emphasis

added). In the Second Amendment analysis, the fact a law is unprecedented is

nearly dispositive that it is unconstitutional. The State's historical evidence below

comprised of hunting regulations from the Founding and hunting regulations from

Reconstruction. Neither set of enactments are sufficient analogues because they do

not burden the right to self-defense for similar reasons ("why") or in a similar

manner ("how") as the Anti-Carry Default. "As *Bruen* put it, the "how" of the

proffered state statutes is different—they regulate different conduct." *Teter v.*

*Lopez*, No. 20-15948, 2023 U.S. App. LEXIS 20312, at *25 (9th Cir. Aug. 7,

2023). Hawaii has not made a strong showing of success on appeal, and cannot

overturn the now *four* district courts that have ruled such default rules

unconstitutional, without any reaching the opposite conclusion.[4]

## VIII.  Proprietorship

---

[4] Besides this Court, these are: *Antonyuk*, 2022 WL 16744700, at *79;
*Christian v. Nigrelli,* No. 22-CV-695 (JLS), 2022 U.S. Dist. LEXIS 211652 at *9
(W.D.N.Y. Nov. 22, 2022); *Koons*, 2023 WL 3478604, at *67.

The State attempts to take a shortcut through this historical inquiry by asserting that the Legislature can restrict firearms at places where the Government is the proprietor. But the State fails to explain how its atextual government-as-proprietor exception is consistent with the first principles of the Second Amendment, namely that it is history and analogies to historical regulations alone that demonstrate the constitutionality of modern firearms restrictions. Moreover, as with other rights, the State does not have a blank check to restrict Plaintiffs' Second Amendment rights under the guise of "proprietorship." *See United States v. Kokinda*, 497 U.S. 720, 725 (1990); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992). Instead, the State is limited by the relevant constitutional provision and implementing case law. Both here and below, the State presented *zero* historical evidence of "proprietorship" serving as a basis for the *government* to exclude firearms in a manner consistent with the Second Amendment. Under *Bruen*, that is the end of the matter.

## IX. Parks and Beaches

The State has not made a strong showing it will reverse this Court's well-reasoned opinion on parks and beaches.  The State's legal theory would make an exception that would swallow the rule that carry is typically to be allowed.  As an initial matter, there is no historical tradition of disallowing the carry of firearms where children congregate.  Making a Brightline rule that carry can be banned

17

anywhere children might congregate would allow the government to ban carry

everywhere. Paradoxically, children do not congregate in most of the places

covered by Hawaii law. Many of Hawaii's beaches and parks are remote locations

that receive very little traffic such as Waihou Spring Trail and Polipoli Spring State

Park which Plaintiff Kasprzycki frequents regularly. *See* Doc. No [61-5]. The

comparison to schools the State insists on also misses a critical point: when

children are at school, their teachers and other school staff are acting *in loco*

*parentis*. Part of their job is to care for their students as a parent would, including

keeping them safe. A park or beach has no such responsible adults, besides the

parents of the children themselves who have a right to carry in part to defend their

children. This is a critical difference in "how" the restrictions operate under *Bruen*.

## X.   <u>Restaurants and Bars that Serve Alcohol</u>

This Court was correct to not allow the State to rely on colonial militia laws.

regulating the use of alcohol while on militia duty. "Founding-era statutes

concerning guns and alcohol were few. They were also limited in scope and

duration. The laws that did exist had two primary concerns: (1) the misuse of

weapons while intoxicated and (2) the discipline of state militias." *United States v.*

*Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870, at *14 (5th Cir. Aug. 9,

2023). The State argues that "there is no reason to believe that trained militia

members would pose greater risks in proximity to alcohol than other members of

the public". Motion at 10. Whether or not that is true is beside the point.  The

purpose of these laws was to maintain military discipline.  It was not to ensure

public safety. And of course, the historical law did not prohibit non-servicemen

from peaceably carrying their arms in bars, pubs, or taverns. Thus, the how and

why were different. "At the Founding, as today, restrictions on the liberties of

servicemen tell us little about the limits acceptable for the general public." *Id* at

*16. "Just as there was no historical justification for disarming a citizen of sound

mind, there is no tradition that supports disarming a sober citizen who is not

currently under an impairing influence." *Id* at *22. What remains are a handful of

outlier municipal and territorial ordinances. "[O]ne solitary statute is not enough to

demonstrate a *tradition* of an arms regulation."  *Teter v. Lopez*, No. 20-15948,

2023 U.S. App. LEXIS 20312, at *25-26 (9th Cir. Aug. 7, 2023).  Similarly, the

handful of ordinances produced is insufficient to produce a historical tradition.

## XI.   Banks

The State claims that banks at the time of the Founding were government

instrumentalities. Even if this were true, that is insufficient to uphold a flat ban on

carrying at private banks in the modern era.   As shown above, most government

buildings did not ban the carrying of firearms in the relevant historical period.  The

State is required to show a historical tradition of banning carry in banks.  That, it

has not done.  More to the point, even the State's own sources show that some

banks were privately owned. *See* Daniel J. Elazar, *Banking and Federalism in the Early American Republic*, 28 Huntington Libr. Q. 301, 303-04 (1965) ("the great majority of American banks" in the early Republic "were either state-owned joint stock companies in which the state was a major shareholder or were controlled by the state through special charter provisions,").   Moreover, for those where the state had an ownership interest, this does not support any tradition of the government being able to prohibit carry in those locations. A state-owned or controlled entity is, by definition, a separate legal personality from the government. Its buildings are not government buildings. Hawaii's argument that carry can be banned in private banks because some banks were historically controlled by the government holds no water. And its attempt to analogize to other places is invalid because banks existed in the 18th century, so analogical reasoning is not permitted. *Bruen*, 142 S. Ct. at 2131. But even if they could be considered, Hawaii's attempts to analogize to fairs or markets similarly fail. Hawaii even cites historical laws that supposedly banned carry in fairs and markets, including a Virginia law from 1786.  This very law was discussed in *Bruen*. *See Bruen* 142 S. Ct. at 2145 (emphasis added). Indeed, New York's lawyers were taken to task by Justice Alito at *Bruen*'s oral argument for attempting to mislead on this point as to a similar North Carolina law from 1814.[5]

---

[5] *See* Transcript of Oral Argument, *New York State Rifle & Pistol Association Inc. v. Bruen* (20-843). Oyez. Retrieved at <https://www.oyez.org/cases/2021/20-843> (as of August 11, 2023) ("I'm not accusing you personally of anything. But,

## XII.   <u>Parking Lot Interpretation</u>

This Court correctly found that Hawaii's interpretation of its parking lot ban was incorrect. "Section 134-A(a)(1) as written does not stand for what the State now claims it does." *Wolford v. Lopez*, LEXIS 138190, at *36 This interpretation has been produced solely for purposes of this litigation.  The Attorney General's office has not published an official opinion endorsing this position. It is extremely telling that Hawaii did not raise this interpretation in their opposition to the motion for a TRO. Rather they waited until oral argument to offer their novel interpretation of state law. Hawaii's filing is nothing more than a transparent attempt to avoid liability. The Supreme Court has "warn[ed] against accepting as 'authoritative' an Attorney General's interpretation of state law." *Stenberg v. Carhart*, 530 U.S. 914, 940 (2000). Indeed, this circuit has refused to accord deference to more limited "litigation positions" in other contexts. *Alaska v. Federal Subsistence Bd*., 544 F.3d 1089, 1095 (9th Cir. 2008) (holding that the court owed "no deference" to an agency's non-binding "litigation position" interpretation that was "developed during the course of the present case."); *Presidio Historical Ass'n.*

---

on page 23, you say that in founding-era America, legal reference guides advised local officials to "arrest all such persons as in your sight shall ride or go armed." And this is a citation to John Haywood, A Manual of the Laws of North Carolina, 1814. So I looked at this manual, and what it actually says is "you shall arrest all such persons as in your sight shall ride or go armed offensively." And somehow that word "offensively" got dropped…").

*v. Presidio Trust*, 811 F.3d 1154, 1166 (9th Cir. 2016) (rejecting any "special deference" to "a convenient litigating position" where it was proffered "the first time on appeal"). The Attorney General's position taken in this litigation is even less entitled to deference here as it was transparently issued for the purpose of this litigation. "An interpretation that is a "convenient litigating position" or a "*post hoc* rationalizatio[n]" does not merit deference. *Id.* (internal quotation marks and citation omitted). "The general rule, then, is not to give deference to agency interpretations advanced for the first time in legal briefs." *Id.* at 2417 n.6 (citation omitted). *Young v. Hawaii*, 992 F.3d 765, 870 (9th Cir. 2021) (R. Nelson, Dissenting) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019)). Here, because Hawaii advanced their current interpretation of the challenged laws for purposes of this litigation and because it conflicts with a plain reading of the statute, this Court properly rejected it.

### XIII. <u>This Court Should Not Narrow the Scope of the Injunction</u>

"[T]he scope of [a] remedy is determined by the nature and extent of the . . . violation." *Milliken v. Bradley*, 433 U.S. 267, 270, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977). An injunction may extend "benefit or protection" to nonparties "if such breadth is necessary to give prevailing parties the relief to which they are entitled." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987). Here, Hawaii law is unconstitutional as it is generally applied. If it is unconstitutional to Plaintiffs,

then it is unconstitutional to all other law-abiding citizens with concealed carry

permits. And it is the most practical manner to give Plaintiffs relief because

otherwise Plaintiffs would have to try to explain to police officers that they have a

special exemption to a generally applicable law. The relief granted is the most

effective way to give Plaintiffs relief. "Such relief is commonplace in APA cases,

promotes uniformity in immigration enforcement, and is necessary to provide the

plaintiffs here with complete redress." *Regents of the Univ. of Cal. v. United States*

*Dep't of Homeland Sec.*, 908 F.3d 476, 512 (9th Cir. 2018)."Further, the

Government "fail[ed] to explain how the district court could have crafted a

narrower [remedy]" that would have provided complete relief to the

Organizations." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir.

2018). Plaintiff Hawaii Firearms Coalition is also a named plaintiff in this matter.

And Hawaii Firearms Coalition seeks relief for all its members. The State's request

to narrow the injunction to the three named Plaintiffs would deny Plaintiff Hawaii

Firearms Coalition the request sought and granted in the TRO.

## XIV.  **Irreparable Harm**

The state has demonstrated a lack of urgency by not moving towards its

preliminary injunction opposition. This Court has already provided a mechanism

for the State to end the temporary restraining order. In its TRO order, this Court

stated "these rulings could be changed at the preliminary injunction stage because

the State may be able to proffer adequate evidence to meet its burden as to any of the challenges." *Wolford v. Lopez*, LEXIS 138190, at *93-94. Rather than immediately working towards developing the historical record sufficient to follow this Court's instructions, the State instead focuses its efforts on the current motion. That shows a lack of urgency which the Ninth Circuit has shown is sufficient to deny a preliminary injunction. *Pharmacia Corp. v. Alcon Labs*., Inc., 201 F.Supp.2d 335, 383 (D.N.J.2002) (delay in seeking preliminary injunction "knocks the bottom out of any claim of immediate and irreparable harm"). This Court should find that the State not promptly opposing Plaintiffs' preliminary injunction hollows any claim of irreparable harm in this matter. *See Long Island R. Co. v. International Ass'n of Machinists*, 874 F.2d 901, 905 (2d Cir. 1989) ("the matter of the [TROs] could be reviewed after decision on the motions for preliminary injunctions."). In stark contrast to the State's position, Plaintiffs will suffer true irreparable harm if this motion is granted. "[T]he irreparability of harm may not be casually suspended pending appeal." *Rodriguez by Rodriguez v. DeBuono*, 175 F.3d 227, 234-35 (2d Cir. 1998). "[T]he grant of a stay of a preliminary injunction pending appeal will almost always be logically inconsistent with a prior finding of irreparable harm…." *Id*. Because the record here shows not irreparable harm but instead a bid for early appellate review, the State's motion should be denied.

## XV.   Public Interest/Balance of Equities

The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). The State also did not even attempt to rebut the statistical evidence the Court relied on showing Americans with CCW permits are overwhelmingly law-abiding.

## This Court Should Not Grant an Administrative Stay

This Court should not grant an administrative stay. At the time of the filing of this lawsuit, the status quo was for Plaintiffs to be able to carry in all the challenged locations.  Thus, denying an administrative stay would maintain the status quo as of the time of the filing of the lawsuit. Moreover, a stay is a form of equitable relief. Plaintiffs have an interest in being able to defend themselves which highly outweighs any potential interest the State may have in an administrative stay.

## XVI.  Conclusion

The motion to stay should be denied.

Dated: August 25, 2023.

Respectfully submitted,


/s/ *Kevin O'Grady*

Kevin Gerard O'Grady

Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com


/s/ *Alan Beck*

Alan Alexander Beck

Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com
Counsel for Plaintiffs