ANNE E. LOPEZ (7609)
  Attorney General of the State of Hawai'i
KALIKO'ONĀLANI D. FERNANDES (9964)
  Solicitor General
NICHOLAS M. MCLEAN (10676)
  First Deputy Solicitor General
Department of the Attorney General
  State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Tel.: (808) 586-1360
Email: kaliko.d.fernandes@hawaii.gov

NEAL K. KATYAL*
DANA A. RAPHAEL*
  Special Deputy Attorneys General
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
Tel.: (202) 637-5600
Email: neal.katyal@hoganlovells.com

MARY B. MCCORD*
RUPA BHATTACHARYYA*
  Special Deputy Attorneys General
Institute for Constitutional
  Advocacy & Protection
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, DC 20001
Tel.: (202) 661-6607
Email: mbm7@georgetown.edu
*Pro Hac Vice

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as
the Attorney General of the State of Hawai'i

(*Additional Counsel on Next Page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JASON WOLFORD; ALISON WOLFORD; ATOM KASPRZYCKI; HAWAII FIREARMS COALITION, | Civil No. 1:23-cv-00265-LEK-WRP |
| Plaintiffs, | **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING APPEAL AND, IN THE ALTERNATIVE, TEMPORARY ADMINISTRATIVE STAY; CERTIFICATE OF COMPLIANCE** |
| v. | |

ANNE E. LOPEZ, in her official
capacity as the Attorney General of the
State of Hawaiʻi,

                Defendant.

**WITH WORD LIMITATIONS;
CERTIFICATE OF SERVICE**

<u>District Judge</u>:
Hon. Leslie E. Kobayashi

<u>Magistrate Judge</u>:
Hon. Wes Reber Porter

*Continued from previous page*

BEN GIFFORD*
  Special Deputy Attorney General
Institute for Constitutional
  Advocacy & Protection
Georgetown University Law Center
PO Box 211178
Brooklyn, NY 11221
Tel.: (202) 662-9835
Email: bg720@georgetown.edu

*\*Pro Hac Vice*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................1

II.   THE STATE IS LIKELY TO SUCCEED ON THE MERITS .......................1

    A.   THIS COURT'S ORDER IS APPEALABLE. ....................................1

    B.   PLAINTIFFS LACK STANDING TO CHALLENGE
        HRS §§ 134-A(a)(1), 134-A(a)(12), AND 134-E. ...............................2

    C.   THE SENSITIVE-PLACE PROVISIONS
        CHALLENGED BY PLAINTIFFS ARE
        CONSTITUTIONAL. ...........................................................5

    D.   THE DEFAULT RULE IS CONSTITUTIONAL. ............................11

III.   IRREPARABLE INJURY .........................................................13

IV.   A STAY IS IN THE PUBLIC INTEREST ......................................14

V.   ANY INJUNCTIVE RELIEF SHOULD BE NARROWED
    PENDING APPEAL ...............................................................15

VI.   CONCLUSION .....................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Perez*, 138 S. Ct. 2305 (2018) ............................................................ 2, 13

*Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 16744700
(N.D.N.Y. Nov. 7, 2022)............................................................ 8, 11, 13

*Antonyuk v. Hochul*, No. 22-2908 (2d Cir. Dec. 7, 2022) ......................................13

*Bonidy v. U.S. Postal Service*, 790 F.3d 1121 (10th Cir. 2015) ............................3, 9

*Christian v. Nigrelli*, No. 22-2987 (2d Cir. Dec. 12, 2022)....................................13

*Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631 (W.D.N.Y. Nov.
22, 2022) ............................................................................13

*Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ......................5

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................................5

*Duncan v. Becerra*, No. 17-cv-1017-BEN-JLB, 2019 WL 1510340 (S.D. Cal. Apr.
4, 2019) ............................................................................14

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) ..................1, 2

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996)..........16

*Hardaway v. Nigrelli*, No. 22-2933 (2d Cir. Dec. 7, 2022)......................................7

*Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220 (W.D.N.Y. Nov.
3, 2022) ............................................................................7

*Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023)......................................7

*Koons v. Platkin*, No. CV 22-7464 (RMB/AMD), 2023 WL 3478604 (D.N.J. May
16, 2023) ............................................................................7, 8

*L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011)......................16

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)....................................................3

*Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ................13

*McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012) ............................... 15, 16

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ............................5

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................14

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ...................................4

*Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc) ...............15

*Regents of the University of California v. U.S. Department of Homeland Security*, 908 F.3d 476 (9th Cir. 2018).................................................................16

*United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019).................................... 3, 7, 9

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) (per curiam)........................2

**Statutes**

5 U.S.C. § 706(2) ..................................................................................16

HRS § 134-A(a)(1)..............................................................................  2, 3, 9

HRS § 134-A(a)(12)............................................................................. 3, 10

HRS § 134-A(a)(4)....................................................................................9

HRS § 134-A(a)(8)...................................................................................10

HRS § 134-A(a)(9).............................................................................. 9, 10

HRS § 134-E ...................................................................................... 3, 4, 11

**Other Authorities**

Carina Bentata Gryting & Mark Anthony Frassetto, NYSRPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C.L. Rev. E-Supplement I.-60 (2022) ...........................6

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205 (2018) .. ...............................................................................................................6

Declaration of Hendrik Hartog, *Koons v. Platkin*, No. CV 22-7464 (RMB/AMD) (D.N.J. Feb. 13, 2023), ECF No. 84 .................................................................12

John J. Donohue et al., *Why Does Right-to-Carry Cause Violent Crime to Increase?* (Nat'l Bureau of Econ. Rsch., Working Paper No. 30190, June 2023), https://perma.cc/QD3C-4DBF ............................................................................15

*More Than 2,200 Non-Self Defense Deaths Involving Concealed Carry Killers Since 2007, Latest Violence Policy Center Research Shows*, Violence Pol'y Ctr. (Apr. 21, 2022), https://perma.cc/MXW4-AWYD.............................................15

I.      INTRODUCTION

This Court's Order prohibits the State from enforcing numerous provisions of an important public safety law.  As the State explained in its Motion, ECF No. 67-1, a stay pending appeal is warranted because the State is likely to succeed on the merits; it is irreparably harmed by its inability to enforce duly enacted public safety statutes; the issuance of a stay will not injure Plaintiffs; and a stay is in the public interest.  None of the arguments raised in Plaintiffs' Opposition, ECF No. 78, counsels against the entry of a stay.  At a minimum, this Court should enter a temporary administrative stay while the State renews its request for emergency relief in the Ninth Circuit.

II.     THE STATE IS LIKELY TO SUCCEED ON THE MERITS

        A.      THIS COURT'S ORDER IS APPEALABLE.

Plaintiffs argue that this Court's Order is not appealable.  *See* ECF No. 78 at 1-3.  As Plaintiffs recognize, however, "where a TRO has the same effect as a preliminary injunction, it is appealable."  *Id.* at 3 (quoting *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018)).  And as the State explained in its emergency stay motion before the Ninth Circuit, a TRO "possesses the qualities of a preliminary injunction" when it was "strongly challenged in adversarial proceedings before the district court" and when "it has or will remain in force for longer than the fourteen-day period identified in Federal Rule of Civil Procedure 65(b)."  *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017) (per

1

curiam) (internal quotation marks omitted).  Here, "[t]he parties vigorously contested the legal basis for the TRO in written briefs and oral arguments," *id.*; *see* ECF Nos. 7-1, 55, 61, 62, and more than fourteen days have elapsed since the Order was entered.  Indeed, "[t]he district court's order has no expiration date." *Washington*, 847 F.3d at 1158; *see* ECF No. 66 at 90-91.  Furthermore, where, as here, "the Government argues in this court that emergency relief is necessary to support [its] interests," it is appropriate to "treat the district court's order as an appealable preliminary injunction."  *E. Bay Sanctuary Covenant*, 932 F.3d at 763 (citing *Washington*, 847 F.3d at 1158).  This Court's Order is therefore appealable. *See Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) ("[T]he label attached to an order is not dispositive. . . .  [W]here an order has the practical effect of granting or denying an injunction, it should be treated as such for purposes of appellate jurisdiction." (internal quotation marks omitted)).

### B.  PLAINTIFFS LACK STANDING TO CHALLENGE HRS §§ 134-A(a)(1), 134-A(a)(12), AND 134-E.

As the State argued at the TRO hearing and in its Stay Motion, Plaintiffs lack standing to challenge HRS § 134-A(a)(1) because the parking lots in which they wish to carry firearms are not covered by that provision.  *See* Tr. 17-18 (July 28, 2023); ECF No. 67-1 at 5 n.3.  Plaintiffs therefore have not shown "an intention to engage in a course of conduct . . . proscribed by a statute," or a "realistic danger of sustaining a direct injury as a result of the statute's operation or

enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (internal quotation marks omitted).  Plaintiffs argue that the State's interpretation of HRS § 134-A(a)(1) "has been produced solely for purposes of this litigation," ECF No. 78 at 21, but the State explained at the TRO hearing, *see* Tr. 17-18 (July 28, 2023), that its position is based on legislative intent, constitutional avoidance, and the rule of lenity, as well as the persuasive reasoning of the D.C. Circuit's decision in *United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019), and the Tenth Circuit's decision in *Bonidy v. U.S. Postal Service*, 790 F.3d 1121 (10th Cir. 2015).

Plaintiffs also lack standing to challenge HRS § 134-A(a)(12) because they have not identified any financial institutions that would allow them to carry firearms on their property.  *See* ECF No. 67-1 at 3-4.  Plaintiff Kasprzycki argues that he has standing to challenge HRS § 134-A(a)(12) because his business shares a parking lot with a bank.  *See* ECF No. 78 at 4.  But as explained immediately above and at the TRO hearing, *see* Tr. 17-18 (July 28, 2023), the prohibition on carrying firearms in parking areas adjacent to sensitive places (including banks) applies only to parking areas that exclusively serve those places—not to shared parking areas like the one in which Plaintiff Kasprzycki wishes to carry.

Finally, Plaintiffs lack standing to challenge HRS § 134-E because any injury they suffer from not being able to carry firearms on non-sensitive private property without the owner's consent is traceable only to the owner's choice to

withhold that consent, and it is redressable only by the owner's decision to provide that consent.  Plaintiffs quote abstract language from *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), but the actual reasoning of that case is plainly distinguishable, as the State explained in its Motion, *see* ECF No. 67-1 at 5-6. Plaintiffs now argue that the declarations submitted by owners of non-sensitive businesses—which say that "[i]f H.R.S. § 134-E . . . were repealed, enjoined or otherwise no longer in effect, I would allow members of the public, *including the Plaintiffs in this case*, to carry handguns in my business and on my property," *see, e.g.*, ECF No. 61-3 at 29 (emphasis added)—do not provide Plaintiffs with consent to carry in those businesses.  *See* ECF No. 78 at 7-8.  As explained in the State's Motion, however, *see* ECF No. 67-1 at 6, these declarations do in fact provide the "express authorization" required by HRS § 134-E.  Plaintiffs' contrary position appears to be that the declarant business owners will give others permission to carry firearms on their property only if they are not *required* to give permission in order for others to carry firearms on their property.  If that is the case, then any injury suffered by Plaintiffs is still the result of the business owners' decision to withhold consent (albeit in a manner approaching gamesmanship), rather than the result of state action.[1]

---

[1] The State renews its argument that the Court should not have considered the declarations submitted with Plaintiffs' reply.  *See* ECF No. 67-1 at 4 n.1.  The State also renews its argument that Plaintiffs lack standing to challenge HRS § 134-E

## C.   THE SENSITIVE-PLACE PROVISIONS CHALLENGED BY PLAINTIFFS ARE CONSTITUTIONAL.

Even if Plaintiffs had standing, their challenges to Act 52's sensitive-place provisions would fail.

Plaintiffs make several sweeping arguments in their Opposition.  As in their TRO briefing, *see* ECF No. 7-1 at 13; ECF No. 61 at 9-10, Plaintiffs suggest that schools and government buildings are not sensitive places, *see* ECF No. 78 at 8, even though *Bruen* and *Heller* explicitly recognized that they are, *see N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022) (approvingly citing "*Heller*'s discussion of 'longstanding' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings'" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008))); *see also* ECF No. 66 at 56-57 (this Court's Order, describing *Bruen* as "recognizing undisputed lawfulness of prohibitions in places such as legislatures, polling places, courthouse[s], schools,

---

because they have failed to show either that they would not ask permission before carrying on private property or that asking for permission would be burdensome. *See id.* at 5 n.2.  Plaintiffs argue that "the burden of being required to ask for consent is enough of a burden to confer standing," ECF No. 78 at 6, but the case that they cite for that proposition, *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), dealt with the distinct situation in which a plaintiff brings a denial-of-equal-treatment claim, *id.* at 1351-52.  This case does not involve the denial of equal treatment.  Furthermore, Plaintiffs never alleged in their complaint or stated in the declarations accompanying their motion for a TRO that having to seek consent would burden them, and they should not be permitted to fill those gaps with statements from counsel in a brief.

and government buildings").  More radically, Plaintiffs argue for the first time in

their Opposition that a place is not sensitive unless the government provides

"security akin to that provided before entering courthouses or the TSA-secured

areas of an airport, i.e., armed government guards and metal detectors at a

minimum at every point of entry."  ECF No. 78 at 9.  This theory, raised for the

first time in Plaintiffs' Opposition, has no basis in history.  *See, e.g.*, Cornell Decl.

¶ 42, ECF No. 55-2 (explaining that "[t]he sensitive places doctrine did not, as

some gun rights advocates have erroneously suggested, depend on the fact that

government could provide comprehensive security, such as modern court houses

which have metal detectors and armed guards"); Carina Bentata Gryting & Mark

Anthony Frassetto, NYSRPA v. Bruen *and the Future of the Sensitive Places*

*Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C.L.

Rev. E-Supplement I.-60, I.-62 (2022) ("[T]he 'metal detector and security guard'

principle for identifying sensitive places is inconsistent with the original public

understanding of the Second Amendment, both at its ratification and at its

incorporation via the Fourteenth Amendment.").  Plaintiffs' argument to the

contrary depends on a historically inaccurate assertion in a single law review

article, *see* ECF No. 78 at 9 (citing David B. Kopel & Joseph G.S. Greenlee, *The*

*"Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13

Charleston L. Rev. 205, 290 (2018)), ipse dixit, *see id.* (claiming, without support,

that "[a]t the Founding, comprehensive security meant officials who were armed

and able to control every point of access"), and two district court decisions that

have been stayed in relevant part by courts of appeals, *see id.* at 9-10 (quoting

*Koons v. Platkin*, No. CV 22-7464 (RMB/AMD), 2023 WL 3478604, at *90

(D.N.J. May 16, 2023), *stayed in relevant part*, No. 23-1900 (3d Cir. June 20,

2023); *Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220, at *14

(W.D.N.Y. Nov. 3, 2022), *stayed in relevant part*, No. 22-2933 (2d Cir. Dec. 7,

2022)).[2]  To be sure, *some* sensitive places have historically provided government

security.  *See* ECF No. 78 at 8-9 & n.2.  But many others did not.  Notably,

"[m]any 'schools' and 'government buildings'—the paradigmatic 'sensitive

places' identified in *Heller* . . . —are open to the public, without any form of

special security or screening."  *Class*, 930 F.3d at 465.  In light of this, Plaintiffs

---

[2] Plaintiffs argue that "[t]he State's reliance on the partial stay in the Third Circuit is misplaced, as it omits that the Third Circuit *denied* the stay motion as to a law identical to H.R.S. § 134-e insofar as it restricted carry on private property except with the owner's permission."  ECF No. 78 at 2.  But the State omitted nothing. *See, e.g.*, ECF No. 67-1 at 1 (noting that "the Second and Third Circuits have recently stayed district court orders enjoining similar laws *pertaining to sensitive places*" (emphasis added)); *id.* (describing the Third Circuit's order in *Koons* as "staying [the district court's] order *in part*" (emphasis added)); *id.* at 8 (describing the district court's order in *Koons* as "stayed in part, as to most of the sensitive places at issue").  It is Plaintiffs whose reliance is misplaced, as they continue to cite passages from district court decisions that have been deemed likely incorrect by two different courts of appeals.

cannot possibly establish that the provision of such security is a prerequisite to a location's status as sensitive.[3]

In addition to these errors, Plaintiffs renew their mistaken arguments that they have met their burden under *Bruen*'s plain text inquiry, *see* ECF No. 78 at 10-12; that 1791 is the only relevant time period for evaluating historical analogues, *see id.* at 12-13; and that *Bruen* requires courts to interpret the Constitution by calculating the percentage of the population to which historical laws applied, *see id.* at 13-14.  Plaintiffs also renew their argument, which this Court endorsed, that the government's role as a proprietor is irrelevant to the Second Amendment following *Bruen*.  *See id.* at 16-17; ECF No. 66 at 55-56.  The State has already explained why each of these arguments is wrong, and it will not repeat those explanations at length here.  *See, e.g.*, ECF No. 55 at 7-8 (sensitive-place restrictions fall outside of the scope of the Second Amendment); *id.* at 4-6 & n.7 (courts can consider analogues from 1868, and even from later time periods); *id.* at 6 n.8 (*Bruen* does not require courts to count States or calculate population percentages); *id.* at 11 (courts, including the Supreme Court, have long recognized

---

[3] Both *Koons*, 2023 WL 3478604, at *82, and *Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 16744700, at *65 (N.D.N.Y. Nov. 7, 2022)—on which Plaintiffs heavily rely—rejected challenges to laws designating playgrounds as sensitive places.  The State is unaware of many (if any) playgrounds that provide comprehensive government security.

that the government enjoys increased regulatory flexibility when acting as a proprietor).  The State is likely to succeed on appeal with respect to Plaintiffs' misguided contentions.

The State is also likely to succeed on appeal with respect to Plaintiffs' challenges to each of the enjoined sensitive-place provisions.  As discussed above and in the State's Motion, *see supra* pp. 2-3; ECF No. 67-1 at 7 n.6, HRS § 134-A(a)(1) prohibits firearms only in parking areas that exclusively serve government buildings and that are therefore sensitive to the same extent as the government buildings themselves.  *See Class*, 930 F.3d at 464; *Bonidy*, 790 F.3d at 1125, 1126-27.  And each of the remaining provisions has ample historical support.  *See* ECF No. 55 at 8-10 (bars and restaurants); *id.* at 14-16 (parks and beaches); *id.* at 17-18 (banks and financial institutions).

Plaintiffs do not meaningfully respond to the arguments raised in the State's Motion.  With respect to bars and restaurants, *see* HRS § 134-A(a)(4), Plaintiffs ignore the Reconstruction Era laws cited by the State, *see* ECF No. 78 at 19, and they assert, without support, that the purpose of the Founding Era laws "was not to ensure public safety," *id.*[4]  Moving to parks and beaches, *see* HRS § 134-A(a)(9),

---

[4] Plaintiffs have no response to the State's argument that this Court erred by enjoining HRS § 134-A(a)(4) as applied to bars, when Plaintiffs challenged the provision only as applied to restaurants.  *See* ECF No. 67-1 at 6 n.5.

Plaintiffs fail to engage with the State's substantive criticisms of this Court's decision—including that the Court appears to have enjoined that provision based in part on a mathematical error, *see* ECF. No. 67-1 at 12-13 & n. 9—and they instead make an argument, inconsistent with *Heller* and *Bruen*, that "there is no historical tradition of disallowing the carry of firearms where children congregate." ECF No. 78 at 17.[5]  Finally, with respect to banks, *see* HRS § 134-A(a)(12), Plaintiffs suggest that even government buildings are not necessarily sensitive—contrary to *Heller* and *Bruen*—and they baselessly accuse the State of trying to mislead the Court by relying on Founding Era analogues that restricted firearms in sensitive commercial centers.  *See* ECF No. 78 at 19-20 & n.5.[6]

---

[5] Plaintiffs appear to concede in this portion of their argument that schools are sensitive places, *see* ECF No. 78 at 18, contrary to the position they take earlier in their Opposition that only legislative assemblies, polling places, and courthouses are sensitive, *see id.* at 8.  Plaintiffs attempt to distinguish schools from other places where children gather on the ground that "when children are at school, their teachers and other school staff are acting *in loco parentis*," and "[p]art of their job is to care for their students as a parent would, including keeping them safe."  *Id.* at 18.  The State has a strong interest, however, in keeping children safe wherever they congregate, whether at schools, summer camps, child care facilities, playgrounds, beaches, or parks, *see* HRS §§ 134-A(a)(8), (9).

[6] As the State explained at the TRO hearing, even though some Founding Era laws that restricted firearms in fairs and markets contained a terror requirement, "it nevertheless is significant that those laws[,] holding the terror requirement to the side[,] isolated fairs and markets as unique places."  Tr. 20 (July 28, 2023).  Indeed, the district court's decision in *Antonyuk*, on which Plaintiffs rely, also found the focus on fairs and markets to be significant, notwithstanding any terror

### D.     THE DEFAULT RULE IS CONSTITUTIONAL.

Plaintiffs' challenge to the default rule is also likely to fail on appeal.  As explained above, Plaintiffs lack standing to challenge HRS § 134-E, and as discussed in the State's earlier filings, Plaintiffs' challenge is unlikely to succeed under either the textual or historical prongs of the *Bruen* test.  *See* ECF No. 55 at 18-21; ECF No. 67-1 at 15-16.[7]  This Court correctly noted that, "where a business revokes a licensee or invitee's permission to enter the business's property, the business is no longer a public place to that licensee or invitee," and "[t]he licensee or invitee's conduct would not be covered by the Second Amendment's plain text in such a scenario."  ECF No. 66 at 45.  The logical conclusion from that is the Second Amendment's plain text likewise fails to cover an individual's conduct where a business withholds consent under HRS § 134-E.

The Court also erred in dismissing the State's historical analogues on the ground that they "concerned private property like residential lands, which were not generally held open to the public."  ECF No. 66 at 79.  As Professor Hendrik Hartog, an expert for the State of New Jersey, explained in a declaration filed in *Koons v. Platkin*, No. CV 22-7464 (RMB/AMD) (D.N.J. Feb. 13, 2023), ECF

---

requirement that these early laws may have had.  *See* 2022 WL 16744700, at *37 n.66.

[7] Plaintiffs' First Amendment argument is also meritless, as this Court correctly held.  *See* ECF No. 66 at 81-82.

No. 84 (Hartog Decl.), the 1771 New Jersey law cited by the State in this litigation[8] "extended to all varieties of real property, including the typical 'businesses' of the times," Hartog Decl. ¶ 32; *id.* ¶ 34 ("Thus, under the 1771 law, if one entered a blacksmith's shop, one needed the permission of the blacksmith or his agents if one meant to enter the space armed.").  Likewise, although the 1722 New Jersey law cited by the State in this litigation applied to "Improved or Inclosed Lands in any Plantation,"[9] Professor Hartog explained in his *Koons* declaration that: "The language of 'improved or inclosed' in the 1722 Act was not a limitation of the provision to fenced-in land.  Rather, it would have marked two ways an owner would have given notice of his possession of the property at issue.  Fencing-in was one way to give such notice of possession, but there were others, such as recording in county deed books and paying of taxes."  Hartog Decl. ¶ 36.  This Court thus should not have concluded, based on contemporary dictionary definitions of "enclose," "land," and "plantation," that the State's analogues "concerned private property like residential lands, which were not generally held open to the public." ECF No. 66 at 79.[10]

---

[8] Declaration of Nicholas M. McLean Ex. 42, ECF No. 55-75.

[9] Declaration of Nicholas M. McLean Ex. 40, ECF No. 55-73.

[10] In their discussion of the default rule, Plaintiffs again fault the State for purportedly relying on the Third Circuit's stay order in *Koons*.  *See* ECF No. 78 at 14.  As noted above, *see supra* note 2, the State has not relied on *Koons* in

## III.   IRREPARABLE INJURY

As explained in the Motion, the State "suffers . . . irreparable injury"
whenever it is barred "from effectuating statutes enacted by representatives of its
people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in
chambers) (internal quotation marks omitted); *see also Abbott v. Perez*, 138 S. Ct.
2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly
inflicts irreparable harm on the State . . . ."). The harm from a sovereign entity's
inability to enforce its laws is especially profound here, in light of the "law
enforcement and public safety interests" implicated by firearms and gun violence.
*King*, 567 U.S. at 1303.

Plaintiffs argue in their Opposition that "[t]his Court should find that the
State not promptly opposing Plaintiffs' preliminary injunction hollows any claim
of irreparable harm in this matter." ECF No. 78 at 24. But the State has moved
with urgency at each step of this litigation, including by promptly moving this

---

connection with the default rule. To the contrary, it is Plaintiffs who rely on
improper sources, *see* ECF No. 78 at 15-16 & n.4, as their discussion of the default
rule draws heavily from *Antonyuk* and *Christian v. Nigrelli*, No. 22-CV-695 (JLS),
2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022)—both of which have been stayed
in relevant part pending appeal by the Second Circuit, *see* No. 22-2908 (2d Cir.
Dec. 7, 2022); No. 22-2987 (2d Cir. Dec. 12, 2022).

Court and the Ninth Circuit for a stay of this Court's TRO order[11] pending appeal.
*See* ECF No. 67-1; No. 23-16094 (9th Cir.), Dkt. 3.

## IV.   A STAY IS IN THE PUBLIC INTEREST

As explained in the State's Motion, "[t]here is an immeasurable societal
benefit of maintaining the immediate status quo while the process of judicial
review takes place." *Duncan v. Becerra*, No. 17-cv-1017-BEN-JLB, 2019 WL
1510340, at *2 (S.D. Cal. Apr. 4, 2019); *see* ECF No. 67-1 at 17.  Plaintiffs argue
that the status quo should be measured "[a]t the time of the filing of this lawsuit."
ECF No. 78 at 25.  But a stay "suspends judicial alteration of the status quo," *Nken
v. Holder*, 556 U.S. 418, 429 (2009) (cleaned up), and the "judicial alteration" here
was this Court's Order enjoining enforcement of the challenged provisions, which
had taken effect over a month prior.  Plaintiffs also argue that the State has failed
to "rebut the statistical evidence the Court relied on showing Americans with CCW
permits are overwhelmingly law-abiding."  ECF No. 78 at 25.  But Plaintiffs'
purported evidence—which was raised for the first time in their reply brief, *see*
ECF No. 61 at 15—is irrelevant.  As a preliminary matter, concealed carry permit
holders have been responsible for thousands of deaths nationwide over the past

---

[11] The Court's Order made clear that "Plaintiffs' request for a preliminary
injunction will be subsequently and separately briefed, heard, and ruled on."  ECF
No. 66 at 2 n.2.

decade and a half.  *See More Than 2,200 Non-Self Defense Deaths Involving*

*Concealed Carry Killers Since 2007, Latest Violence Policy Center Research*

*Shows*, Violence Pol'y Ctr. (Apr. 21, 2022), https://perma.cc/MXW4-AWYD; *see*

*also Peruta v. County of San Diego*, 824 F.3d 919, 943 (9th Cir. 2016) (en banc)

(Graber, J., concurring) (observing that "examples abound of 'law-abiding

citizens' . . . who place the public safety in jeopardy," and discussing several high-

profile examples where "shooters all were legally entitled to carry their concealed

firearms, which they used to kill others").  Furthermore, recent studies suggest that

widespread concealed carrying increases crime through a variety of mechanisms,

including not just violence by permit holders, but also decreased law enforcement

effectiveness and increased gun theft.  *See* John J. Donohue et al., *Why Does Right-*

*to-Carry Cause Violent Crime to Increase?* 2-3 (Nat'l Bureau of Econ. Rsch.,

Working Paper No. 30190, June 2023), https://perma.cc/QD3C-4DBF.  Mitigating

some of these harms by limiting the carrying of guns in sensitive locations is in the

public interest.

## V.    ANY INJUNCTIVE RELIEF SHOULD BE NARROWED PENDING APPEAL

It is well settled that "injunctive relief should be no more burdensome to the

defendant than necessary to provide complete relief *to the plaintiffs*."  *McCormack*

*v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (emphasis added) (internal

quotation marks omitted).  "This rule applies with special force where," as here,

"there is no class certification." *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011); *accord Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification . . . ."). "A district court abuses its discretion by issuing an overbroad injunction," and "[a]t least one Supreme Court decision suggests that federal courts should only enjoin enforcement of criminal statutes against the plaintiffs before the court." *McCormack*, 694 F.3d at 1019 (internal quotation marks omitted).

Plaintiffs quote *Regents of the University of California v. U.S. Department of Homeland Security*, 908 F.3d 476, 512 (9th Cir. 2018), for the proposition that nationwide injunctions are "commonplace in APA cases." ECF No. 78 at 23. But this is not an APA case. *See* 5 U.S.C. § 706(2) (expressly authorizing courts to "hold unlawful and set aside agency action"). Plaintiffs also argue that a statewide injunction is necessary to vindicate Plaintiff Hawaii Firearms Coalition's rights. *See* ECF No. 78 at 23. But the Coalition did not move for a TRO or PI, *see* ECF No. 7 at 2, and it identifies no members aside from Plaintiffs who have stated that they intend to carry firearms in any of the locations covered by Act 52, *see* ECF No. 1-8.

## VI.    CONCLUSION

The State respectfully requests that this Court stay its Order pending appeal.

In the alternative, the State renews its request for a temporary administrative stay

while the State renews its request for emergency relief in the Ninth Circuit.  *See*

ECF No. 67-1 at 18.

DATED: Honolulu, Hawaiʻi, September 1, 2023.

/s/ Ben Gifford

KALIKOʻONĀLANI D. FERNANDES
  Solicitor General
NICHOLAS M. MCLEAN
  First Deputy Solicitor General

NEAL K. KATYAL*
MARY B. MCCORD*
BEN GIFFORD*
RUPA BHATTACHARYYA*
DANA A. RAPHAEL*
  Special Deputy Attorneys General

* *Pro Hac Vice*

Attorneys for Defendant ANNE E. LOPEZ, in her official capacity as the Attorney General of the State of Hawaiʻi

18